# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

SUVERINO FRITH, SAVANNAH KINZER,
CEDRICK JUAREZ, FAITH WALSH,
MACKENZIE SHANAHAN, COREY SAMUEL,
ABDULAI BARRY, LINDSAY VUONG
SAMANTHA BERIMBAU, CAMILLE TUCKER-
TOLBERT, ANA BELÉN DEL RIO-RAMIREZ,
LYLAH STYLES, KAYLA GREENE, SHARIE
ROBINSON, individually and on behalf of all
others similarly situated,

        Plaintiffs,

v.

WHOLE FOODS MARKET, INC.

        Defendant

Case No. 20-cv-11358

# PLAINTIFFS' EMERGENCY MOTION
# FOR A PRELIMINARY INJUNCTION

## I.    INTRODUCTION

Plaintiffs – current and former employees of Defendant Whole Foods Market, Inc. ("Whole Foods") – hereby seek an emergency preliminary injunction enjoining Whole Foods from terminating or otherwise continuing to discipline employees for wearing Black Lives Matter masks or related apparel at work.  As described in the Class Action Complaint being concurrently filed, Whole Foods is violating Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, by selectively disciplining employees for wearing Black Lives Matter masks and messaging.[1]  Its policy constitutes discrimination against Black employees on the basis of race, discrimination against other employees for associating with and supporting their Black co-workers, and retaliation against employees for opposing this discrimination in the workplace.

Immediate preliminary injunctive relief is urgently needed, as Whole Foods employees are now facing imminent termination for continuing to wear Black Lives Matter masks and opposing Whole Foods' discriminatory policy to not allow them to wear the masks.  Indeed, one of the lead organizers of the protest, Plaintiff Savannah Kinzer, was terminated just this weekend.  Particularly during the ongoing COVID-19 pandemic, employees cannot afford to lose their jobs, but neither should they be required to shelve their rights when they enter the workplace.  As shown in the affidavits submitted here, Whole Foods has not enforced its dress code policy that it now claims justifies its actions, and it has allowed employees to wear other messages, including political messages and support for LGBTQ+ employees, without repercussion.  Only when employees began organizing to wear Black Lives Matter masks in the workplace did Whole Foods begin to enforce its nominal dress code policy in earnest.

Daily protests have been occurring outside Whole Foods stores in Cambridge, Massachusetts, and elsewhere around the country, as community members, customers, and elected officials have rallied in support of the Whole Foods employees who have

---

[1]     Plaintiffs have brought federal claims under Title VII but may amend the complaint to add state law claims as well.

1

called on their employer to stop its discriminatory practice of prohibiting them from wearing Black Lives Matter masks at work - although the company has publicly professed to support the movement.

The Court should enter an immediate preliminary injunction.  As set forth below, Plaintiffs readily meet the standard for such an injunction.  They are likely to succeed on the merits of their claim; they and the class they seek to represent face irreparable harm if they are to lose their jobs now in the midst of a pandemic, or if in order to keep their jobs, they are restricted from engaging in protected activity (namely supporting Black employees and protesting a discriminatory and retaliatory policy in the workplace)[2]; the balance of harms weighs in favor of granting the injunction; and an injunction is in the public interest, as it is _not_ in the public interest to allow Whole Foods to selectively target messaging in support of its Black employees.

Indeed, the urgency of enjoining Whole Foods' discriminatory and retaliatory practice is evident.  Following the death of George Floyd and ensuing protests, Black Lives Matter has become arguably the largest civil rights movement in United States history.[3]  Whole Foods will not be harmed by allowing its employees to show support for a movement that the company (and its parent company Amazon and owner Jeff Bezos) have claimed to support.  Instead, employees will be harmed, and the public interest will be harmed, if this discrimination and retaliation is allowed to continue during the lengthy period of time that it takes for this lawsuit to run its course in federal court.

Plaintiffs respectfully request that the Court schedule this matter for immediate hearing and grant their request for a preliminary injunction.

---

[2]     An award of monetary damages in a couple of years will be unable to remedy the harm to Plaintiffs if made to endure months of unemployment, and an award of monetary damages years down the line will not remedy Whole Foods' chilling of speech now.  And, in any event, Whole Foods' violation of its employees' rights under Title VII inherently inflicts irreparable harm, as Congress has specifically provided for employees to seek an injunction enjoining conduct that is discriminatory or retaliatory.

[3]     Larry Buchanan, Quoctrung Bui & Jugal Patel, _Black Lives Matter May Be the Largest Movement In History_, N.Y. Times, July 3, 2020, https://www.nytimes.com/interactive/2020/07/03/us/george-floyd-protests-crowd-size.html.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Due to the onset of the global coronavirus pandemic, grocery workers (like many other workers around the country) are now required to wear masks to work.  Following the death of George Floyd and demonstrations this spring around the country protesting police violence and other discrimination against Blacks, more people have been showing their support for the Black Lives Matter movement.  Recently, in a show of solidarity, Whole Foods employees in a number of stores around the country began wearing masks with the message Black Lives Matter.[4]  They have done this to protest racism and police violence against Blacks and to show support for Black employees.[5]

In response, Whole Foods began disciplining employees for wearing Black Lives Matter masks and other apparel.  Employees have been sent home without pay, given disciplinary points, placed on a "corrective action pathway", required to retrain, and many now risk imminent termination (as confirmed by the recent termination of Plaintiff Savannah Kinzer, due to discipline she received for wearing a Black Lives Matter mask).[6]  The discipline also impacts those employees who witness it and whose speech is chilled as a result.  See Robinson Aff. ¶¶ 6-7.

---

[4]     Whole Food workers are not alone; employees across the country have been wearing Black Lives Matter masks to work in order to express support for Black employees. Kate Taylor & Hayley Peterson, *Workers Speak Out Against Black Lives Matter Face Mask Bans, as Companies Like Starbucks, Taco Bell, and Whole Foods Grapple with Viral Backlash*, Business Insider, July 12, 2020, https://www.msn.com/en-us/money/companies/workers-speak-out-against-black-lives-matter-face-mask-bans-as-companies-like-starbucks-taco-bell-and-whole-foods-grapple-with-viral-backlash/ar-BB16DWsc .

[5]     See Affidavit of Suverino Frith ¶¶ 6-7, 16-18 (Ex. 1); Affidavit of Savannah Kinzer ¶¶  8-11 (Ex. 2); Affidavit of Mackenzie Shanahan ¶¶ 7-10 (Ex. 3); Affidavit of Cedrick Juarez ¶¶ 15-17 (Ex. 4); Affidavit of Abdulai Barry ¶¶ 7-8 (Ex. 5); Affidavit of Lindsay Vuong ¶¶ 6-7 (Ex. 6); Affidavit of Samantha Berimbau ¶¶  6-7 (Ex. 7); Affidavit of Camille Tucker-Tolbert ¶¶ 6-10 (Ex. 8); Affidavit of Ana Belen Del-Rio Ramirez ¶¶ 6, 10 (Ex. 9); Affidavit of Lylah Styles ¶¶ 6-9 (Ex. 10); Affidavit of Kayla Greene ¶¶ 6-7 (Ex. 11); Affidavit of Sharie Robinson ¶ 6 (Ex. 12).

[6]     Frith Aff. ¶ 6-9, 14-18; Kinzer Aff. ¶¶ 8-12, 27-30; Affidavit of Faith Walsh ¶¶ 6-9 (Ex. 13); Shanahan Aff. ¶ 8-11; Juarez Aff. ¶¶ 14-17; Berimbau Aff. ¶¶ 6-7; Vuong Aff. ¶¶ 6-7;  Barry Aff.

Whole Foods is disciplining its employees for wearing Black Lives Matter masks and messaging under the guise of enforcing its dress code, which nominally prohibits employees from wearing apparel with visible slogans, messages, logos, or advertising that are not company-related.[7]  Yet, prior to employees wearing the Black Lives Matter masks, Whole Foods previously allowed (and in some instances has continued to allow) employees to wear a variety of other messaging and imaging on their masks.[8]  And prior to employees starting to wear the Black Lives Matter masks, Whole Foods had generally not enforced its dress code.  In fact, nearly every named plaintiff in this case has previously violated the dress code in a variety of ways without facing serious repercussion or discipline; at most, they were simply reminded of the guidelines.[9]  Whole Foods has also allowed its employees to wear various symbols of LGBTQ+ support, such as Pride flags and pins, without facing discipline.  Kinzer Aff. ¶ 18; Juarez Aff. ¶ 11.  Employees have also, without repercussion, worn political messages, such as "Lock Him Up."  Kinzer Aff. ¶ 18.[10]

---

¶ 8; Del-Rio Ramirez Aff. ¶¶ 10, 19-20; Tucker-Tolbert Aff. ¶¶ 8-10; Styles Aff. ¶¶ 7-9; Greene Aff. ¶¶ 7-9.

[7]     Frith Aff. ¶¶ 7, 11; Kinzer Aff. ¶¶ 9, 14; Walsh Aff. ¶¶ 6-9; Shanahan Aff. ¶ 14; Juarez Aff. ¶ 9; Berimbau Aff. ¶ 9; Vuong Aff. ¶¶ 7, 10;  Barry Aff. ¶¶ 8, 12; Del-Rio Ramirez Aff. ¶ 12; Tucker-Tolbert Aff. ¶¶ 6-7, 16; Styles Aff. ¶¶ 6, 14; Greene Aff. ¶¶ 6-7, 12.

[8]     Kinzer Aff. ¶ 18; Juarez Aff. ¶ 11; Styles Aff. ¶ 15; Robinson Aff. ¶¶ 12-13.

[9]     Frith Aff. ¶ 12; Shanahan Aff. ¶ 15 (attesting to wearing pins that say "You are safe" and "Elevate your energy", and a cat pin and a smiley face pin, without any consequences); Walsh Aff. ¶ 12 (attesting to wearing emoji pins for month prior to Black Lives Matter protest without any comment); Kinzer Aff. ¶ 17 and Tucker-Tolbert Aff. ¶ 17 (both attesting to having previously worn ripped jeans but not been disciplined and not sent home); Juarez Aff. ¶¶ 10 (attesting to wearing various local sports team logo and gear without being disciplined); Del-Rio Ramirez Aff. ¶ 13 (attesting to wearing Doc Marten's two to three times a week, which violates Whole Foods shoe policy, and never being spoken to); Greene Aff. ¶ 13 (attesting to wearing a fanny pack with the "Vans" logo and a tee-shirt with the title "Beavis and Butthead" and not being disciplined).

[10]    See also Kinzer Aff. ¶ 16, 18 (attesting to wearing "Soup is Good" mask without discipline); Juarez Aff. ¶¶ 10-11 (attesting to having worn Patriots logo and Pride flag without discipline); Styles Aff. ¶ 15 (attesting to coworker wearing a Sponge Bob mask without being sent home); Robinson Aff. ¶¶ 12-13 (attesting to witnessing a coworker wear a Patriots logo

In short, Whole Foods has made a decision not to allow its employees to wear Black Lives Matter masks under the pretext that it violates the dress code.  Indeed, Plaintiffs have been told by their store managers that store-level management has no discretion over the decision to discipline them.  Kinzer Aff. ¶ 13; Del-Rio Ramirez Aff. ¶ 9.[11]  The discipline has been harsh.

For example, at the River Street and Fresh Pond locations in Cambridge, Massachusetts, Whole Foods has been sending home employees who show up to work wearing a Black Lives Matter mask.[12]  The employees receive disciplinary "points" and are sent home without pay for wearing the mask.  These points are part of a progressive discipline policy, and employees are subject to termination once they accumulate a certain amount of points.[13]  These fears are not speculative.  Just this weekend, on July 18, 2020, the employee who originally organized workers at the River Street, Cambridge, Massachusetts, location, to wear the masks (and has led protests opposing Whole Foods' policy of not allowing employees to wear the masks), Plaintiff Savannah Kinzer, was terminated after accumulating disciplinary points for wearing her Black Lives Matter mask (and after informing her manager that she had filed an EEOC and

---

mask, without consequence, after her daughter was sent home for wearing an "I Can't Breathe" mask).

[11]    A Whole Spokesperson acknowledged that the decision not to allow employees to wear Black Lives Matter applies across locations.  *See* Nicole Karlis, *Whole Foods is Quietly Telling Workers Not to Show Black Lives Matter Support at Work*, June 27, 2020, https://www.salon.com/2020/06/27/whole-foods-is-quietly-telling-workers-not-to-show-black-lives-matter-support-at-work/ (Ex. 14).

[12]    See generally Katie Johnston, *Whole Foods workers sent home for wearing Black Lives Matter masks*, Boston Globe (June 25, 2020), https://www.bostonglobe.com/2020/06/25/business/whole-foods-workers-sent-home-wearing-black-lives-matter-masks/ (Ex. 15).

[13]    See, e.g., Juarez Aff. ¶¶ 13-17.  Plaintiffs Frith, Juarez, Walsh, and Shanahan, who work at the River Street location in Cambridge, are all at risk of imminent termination due to their accumulation of "points" for wearing their Black Lives Matter masks. Frith Aff. ¶ 18 (six "points" left before termination); Juarez Aff. ¶ 17 (four "points" left before termination); Walsh Aff. ¶ 9 (attesting to receiving a "verbal warning" for her accumulation of points due to wearing the mask); Shanahan Aff. ¶ 11 (same).

NLRB charge regarding the issue).  Kinzer Aff. ¶ 27-30.  Her manager did not allow her to say good-bye to her coworkers and had her escorted out of the store. Id.

Around the country, Whole Foods is sending its employees home without pay, assigning disciplinary points, writing up its employees, and placing employees on "corrective action" pathways for wearing Black Lives Matter masks and messaging.[14] These employees have not been engaging in harmful or disruptive conduct (such as fighting with customers) and indeed have been complimented for their job performance otherwise; supervisors have even lamented potentially losing good employees.[15]

Whole Foods employees are wearing Black Lives Matter messaging to protest racism and to show support for Black employees.[16]  Whole Foods' discipline of employees for wearing the Black Lives Matter masks has made Black employees feel discriminated against, since the company is selectively targeting the message while it has allowed other dress code infractions without serious (if any) consequences.[17] Likewise, non-Black employees are banding together with their Black coworkers, wearing the Black Lives Matter masks to express support for their Black coworkers.[18]

Employees anticipated that Whole Foods would support their wearing the Black Lives Matter masks, given the company's public statements of support for Black Lives Matter.  See Robinson Aff. ¶ 11.[19]  However, after Whole Foods responded to

---

[14]    Juarez Aff. ¶¶ 14-17; Berimbau Aff.  ¶¶ 6-7; Vuong Aff. ¶¶ 6-7; Barry Aff. ¶ 8; Del-Rio-Ramirez Aff. ¶¶ 6, 10; Styles Aff. ¶¶ 7-9; Greene Aff. ¶¶ 7-9; Tucker-Tolbert Aff. ¶¶ 8-10.

[15]    Juarez Aff. ¶ 18; Barry Aff. ¶¶ 9-10; Greene Aff. ¶ 15.

[16]    Frith Aff. ¶¶ 5, 6; Kinzer Aff. ¶Aff. ¶ 9, 14; Walsh Aff. ¶¶ 5-6; Shanahan Aff. ¶ 6-7; Juarez Aff. ¶ 9; Del-Rio Ramirez Aff. ¶ 12; Tucker-Tolbert Aff. ¶¶ 6-7, 16; Styles Aff. ¶¶ 6, 14; Greene Aff.  ¶¶ 6-7, 12.

[17]    Frith Aff. ¶ 8; Barry Aff. ¶ 14; Tucker-Tolbert Aff. ¶ 19; Styles Aff. ¶ 19; Robinson Aff. ¶ 9.

[18]    Kinzer Aff.  ¶ 24; Juarez Aff. ¶¶ 6, 19; Berimbau Aff. ¶ 12; Vuong Aff. ¶ 12; Del-Rio Ramirez Aff. ¶¶ 7, 15.

[19]    Frith Aff. ¶ 10; Kinzer Aff. ¶ 14; Walsh Aff. ¶ 10; Shanahan Aff. ¶ 12; Barry Aff. ¶ 11; Berimbau Aff. ¶ 8; Vuong Aff. ¶ 8; Del-Rio Ramirez Aff. ¶ 11; Tucker-Tolbert Aff. ¶ 15; Styles Aff. ¶ 13; Greene Aff.  ¶ 11.

employees wearing the masks by imposing discipline, the employees' protest shifted to opposing what they saw as Whole Foods' discriminatory policy of not allowing the masks to be worn.  The employees continued to wear the masks to support their Black co-workers, oppose racism in the workplace, and oppose what they reasonably saw as a discriminatory and retaliatory policy by Whole Foods.[20]  Indeed, a number of employees began wearing the Black Lives Matter masks specifically to protest the discipline against their coworkers, which they saw as discriminatory and retaliatory.[21] Employees want to continue to wear the mask but are facing an imminent threat of termination if they do so.[22]  They should not be required to choose between their jobs (their current livelihood) and being able to engage in protected activity in the workplace.

## III.   ARGUMENT

This Court has the authority to issue a preliminary injunction under Fed. R. Civ. P. 65(a) and (b) and, for the reasons set forth below, this Court should grant the request.[23]  In order to prevail on a motion for a preliminary injunction, Plaintiffs must establish: (1) that they are likely to succeed on merits of their claim; (2) that they will

---

[20]   Frith Aff. ¶¶ 6-9, 14-18; Walsh Aff. ¶¶ 6-9; Shanahan Aff. ¶ 8-11; Juarez Aff. ¶¶ 14-17; Berimbau Aff. ¶¶ 6-7; Vuong Aff. ¶¶ 6-7; Barry Aff. ¶ 8; Del-Rio Ramirez Aff. ¶¶ 10, 19-20; Tucker-Tolbert Aff. ¶¶ 8-10; Styles Aff. ¶¶ 7-9.

[21]   See Kinzer Aff. ¶ 5-6; Berimbau Aff. ¶ 5; Vuong Aff. ¶¶ 7, 10; Barry Aff. ¶¶ 8, 12.

[22]   Frith Aff. ¶¶ 6-9, 14-18; Walsh Aff. ¶¶ 6-9; Shanahan Aff. ¶ 8-11; Juarez Aff.  ¶¶ 14-17; Berimbau Aff. ¶¶ 6-7; Vuong Aff. ¶¶ 6-7; Barry Aff. ¶ 8; Styles Aff. ¶¶ 7-9; Greene Aff. ¶¶ 7-9; Robinson Aff. ¶¶ 6-7.  Plaintiffs Tucker-Tolbert and Del Rio-Ramirez wanted to wear the masks but left their jobs because they felt discriminated against for not being allowed to wear them. Tucker-Tolbert Aff. ¶¶ 8-10; Del-Rio-Ramirez Aff. ¶¶ 18-20.

[23]   Several plaintiffs have filed class charges of discrimination with the EEOC and have requested right to sue letters.  See, e.g., Kinzer EEOC charge (Ex. 16); EEOC acknowledgment of filing (Ex. 17). Courts are empowered to issue preliminary injunctive relief under Title VII before the EEOC issues a right to sue letter.  Bailey v. Delta Air Lines, Inc., 722 F.2d 942, 944 (1st Cir. 1983); Hochstadt v. Worcester Foundation for Experimental Biology, 545 F.2d 222, 225 n.1 (1st Cir. 1976); Less v. Berkshire Housing Service, 2000 WL 1615740 at *4 (D. Mass. Sept. 8, 2000).

suffer irreparable injury in absence of a preliminary injunction; (3) that such injury outweighs any harm to the defendants; and (4) that the injunction will not harm public interest. Lanier Prof'l Serv., Inc., 192 F.3d at 3 (1st Cir. 1999).  As set forth below, Plaintiffs meet these requirements.

### A. Plaintiffs Are Likely to Succeed on the Merits

Plaintiffs are likely to succeed on the merits of both on their claim for race discrimination and for retaliation.

### 1. Unlawful Race Discrimination

Title VII prohibits employers from discriminating against any individual "because of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  Whole Foods' decision to discipline its workers for wearing Black Lives Matter masks and messaging is race discrimination because it is selectively enforcing its dress code in a way that discriminates against Black employees advocating for themselves and non-Black employees associated with them and expressing support for their Black coworkers.

To establish an unlawful employment practice, an employee need only show that race "was a motivating factor for any employment practice, even though other factors also motivated the practice."  42 U.S.C. § 2000e-2(m); Bostock v. Clayton County, Georgia, 140 S. Ct. 1731, 1739-40 (June 15, 2020) (discussing Title VII language and the "more forgiving standard" of the motivating factor test).  As set forth below, Plaintiffs have a strong likelihood of showing each element of their prima facie case under Title VII, as well as that Whole Foods' justification for its policy and actions is pretextual.[24]

---

[24]     Title VII Plaintiffs may establish a prima facie case of discrimination under the McDonnell Douglas framework by showing: (1) that they are members of a protected class; (2) that they are qualified for the employment held; (3) that the employer took an adverse action against them; and, (4) that the position remained open or was filled by a person with similar qualifications. See Conward v. Cambridge School Committee, 141 F. 3d 12, 19 (1st Cir. 1999).  The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action, and, if the employer satisfies this burden, the burden shifts back to the employee to show that the employer's proffered reason is pretext.  Id.

**First**, the Whole Foods employees on whose behalf this action has been filed (employees who have been, or want to, wear Black Lives Matter masks and other apparel to work) are all members of a protected class.  The Black employees clearly fall within a protected class.  Likewise, the non-Black employees are being discriminated against by Whole Foods based on their association with their Black co-workers, which also constitutes unlawful discrimination under Title VII.  See Persson v. Boston University, 2019 WL 917205 at *11 (D. Mass. Feb. 25, 2019) (recognizing associational discrimination "wherein an employee is discriminated against for his or her association with a person of a protected class" as a violation of Title VII) (citing Zarda v. Alttiude Express, Inc., 883 F.3d 100, 124–25 (2d. Cir. 2018)).[25]  Similarly, Title VII protects individuals from discrimination "because of their advocacy on behalf of protected class members."  Barrett, 556 F.3d at 513 (citing Johnson v. University of Cincinnati, 556 F. 3d 561, 575 (6th Cir. 2000)).  Here, Whole Foods has disciplined non-Black employees on the basis of their association with, and advocacy for, their Black co-workers.[26]

**Second**, the Whole Foods employees on whose behalf this action has been filed are otherwise qualified for their positions.  Indeed, Whole Foods has made clear that it is disciplining Plaintiffs only for wearing Black Lives Matter masks, rather than for any concerns regarding their performance.  A number of Plaintiffs have been otherwise complimented for their job performance[27]; others have demonstrated that they are well qualified to work at Whole Foods by the fact that they have worked for the company for

---

[25]     As courts have recognized, the key inquiry in an associational discrimination claim is whether the plaintiff was discriminated against at work is "because she associated with members of a protected class." Barrett v. Whirlpool Corp., 556 F.3d 502, 512–13 (6th Cir. 2009). The "degree of the association is irrelevant." Id. at 510, 512-13 (recognizing claim of associational discrimination based on White plaintiffs being friendly to Black co-workers); see also Drake v. Minnesota Min. & Mfg. Co., 134 F.3d 878, 884 (7th Cir. 1998) (also recognizing claim of associational discrimination).

[26]     Kinzer Aff. ¶ 24; Juarez Aff. ¶¶ 6, 19; Berimbau Aff. ¶ 12; Vuong Aff. ¶ 12; Del-Rio Ramirez Aff. ¶¶ 7, 15.

[27]     Juarez Aff. ¶ 18; Barry Aff. ¶¶ 9-10; Greene Aff. ¶ 15.

*years*[28]; while others were recently hired (in the past four months), demonstrating that they were recently determined to be qualified for the position.[29]

**Third**, Whole Foods employees who have chosen to wear Black Lives Matter masks at work have suffered, or will imminently suffer, adverse employment actions. Many Whole Foods employees who have worn the Black Lives Matter masks or other apparel to work have been sent home by Whole Foods without pay.  Being sent home without pay clearly constitutes an adverse employment action within the meaning of Title IV.[30]  In addition, the employees risk suffering further harms at the hands of Whole Foods, should they choose to continue to wear Black Lives Matter masks to work. Whole Foods has made clear that it will continue to send workers home for wearing any Black Lives Matter messaging.[31]   The employees also face the risk of imminent termination, due to their accumulation of discipline, such as "points", when they wear the Black Lives Matter masks. See supra p. 5 & note 13.  This fear has been confirmed by Plaintiff Kinzer's termination this Saturday due to her accumulation of points for wearing the Black Lives Matter mask. Kinzer Aff. ¶¶ 25-29.

**Fourth**, and finally, the discipline and possible termination is not due to the Plaintiffs' positions becoming no longer necessary.  Indeed, the need for Whole Foods

---

[28]     Frith Aff. ¶ 2; Shanahan Aff. ¶ 2; Berimbau Aff. ¶ 2; Barry Aff. ¶ 2; Vuong Aff. ¶ 2; Del-Rio Ramirez Aff. ¶ 2; Walsh Aff. ¶ 2.

[29]     Kinzer Aff. ¶ 2; Greene Aff. ¶ 2; Styles Aff. ¶ 2; Tucker-Tolbert Aff. ¶¶ 2, 12.

[30]     See Kilgore v. FedEx Freight, 2020 WL 2219052 at *4 (N.D. Ill. May 7, 2020) (being "relieved of duty" without pay was adverse employment action for race-discrimination claim under Title VII and § 1981); Fleet v. CSX Intermodal, Inc., 2017 WL 6520535 at *4 n.33 (E.D. PA Dec. 20, 2017) ("Being sent home from work without pay is a material change to the terms and conditions of employment."); Davis v. Mothers Work, Inc., 2005 WL 1863211 at *11 n.8 (E.D. PA Aug. 4, 2005) (Being sent home from work without pay is "sufficient to state a discrimination claim because [Plaintiff] allegedly lost wages as a result…").

[31]     See, e.g., supra note 11 (Ex. 14) (public statement affirming this plan); Del-Rio Ramirez Aff. ¶¶ 18-20 (describing her decision to leave before her scheduled end date, because she was informed that she would simply continue to be sent home every day in the interim, if she continued to show up to work in a Black Lives Matter mask).

workers has sky-rocketed in light of the pandemic, with a number of the plaintiffs having only recently been hired.[32]

**Shifting the burden**, Whole Foods will need to offer a legitimate, non-discriminatory reason for its adverse employment action, and, if it satisfies this burden, the burden shifts back to the plaintiffs to show that the employer's proffered reason is pretext. Conward, 171 F.3d at 19. Plaintiffs can show that the offered reason is pretext in a number of ways by showing "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 55–56 (1st Cir. 2000) (internal citations omitted).

Whole Foods will claim that it was merely enforcing a nominally non-discriminatory dress code policy. However, this explanation is plainly pretext. Testimony from Plaintiffs across stores locations confirms that, prior to the groundswell of employee support for Black Lives Matter, Whole Foods has _not_ strictly enforced its dress code policy. For example, despite the dress code nominally prohibiting employees from wearing any non-company logos or messages, Whole Foods employees have frequently worn – without facing discipline - Pride flags and pins to show support for their LGTBQ+ coworkers, as well as other messages and logos, as described above.[33] It was only when employees began wearing Black Lives Matter masks that Whole Foods began more strictly enforcing its dress code policy.

In other words, Whole Foods has _selectively_ enforced its dress code policy to prohibit Black Lives Matter masks and has singled out for disfavored treatment advocacy and expression led by and in support of its Black employees. The discrepancy between Whole Foods accepting and encouraging advocacy by and in support of its LGBTQ+ employees with the manner in which Whole Foods is harshly

---

[32]     Kinzer Aff. ¶ 2; Tucker-Tolbert Aff. ¶ 2; Styles Aff. ¶¶ 2-3; Greene Aff. ¶¶ 2-3.

[33]     Kinzer Aff. ¶ 16, 18; Juarez Aff. ¶Aff. ¶ 10-11; Styles Aff. ¶ 15; Robinson Aff. ¶¶ 12-13.

disciplining its employees showing support at work for Black Lives Matter makes it all too evident that Whole Foods' response is based on race.  Whole Foods cannot subject similar advocacy by and in support of its Black employees to discipline without running afoul of federal (and state) discrimination law.  Such selective enforcement necessarily evinces a hostile view of such advocacy which is based on—or, at the least, motivated by—the race of the employees leading such advocacy or on whose behalf such advocacy is carried out.

Whole Foods may argue that this selective enforcement is not discriminatory because it has disciplined Black and non-Black employees alike for wearing Black Lives Matter masks.  This argument is unavailing.  The same logic would dictate that because an employer fires both members of an interracial relationship, neither firing was in fact unlawfully discriminatory. That is plainly wrong.[34]  Associational and advocacy-based Title VII claims make clear that an employer's animus towards one group can form the basis of its unlawful treatment of other employees associating with or advocating for members of the protected class.  See Barrett, 556 F.3d at 512–13.  The animus Whole Foods has displayed towards advocacy led by and in support of its Black employees infects Whole Foods' treatment of other employees who associate with and advocate for their Black coworkers.

Whole Foods may also argue that the Black Lives Matter masks (or other apparel) will provoke hostile customer reactions and assert that this is a legitimate basis for enforcing its policy.  But the facts dispel this assertion.[35]  Moreover, the suggestion

---

[34]     As the Supreme Court recently noted in Bostock, 140 S. Ct. at 1741, "[n]or is it a defense for an employer to say it discriminates against both men and women because of sex."

[35]     Whole Foods is actually alienating its customers with the disciplinary policy; customers are boycotting stores and protesting the disciplinary policy.  See, e.g., *Customers, Employees Boycott Cambridge Whole Foods Over BLM Mask Ban*, July 12, 2020, https://www.msn.com/en-us/news/us/customers-employees-boycott-cambridge-whole-foods-over-blm-mask-ban/ar-BB16CL3V?ocid=uxcntrlbingtab (Ex. 18); Abigail Feldman, *Boycott Continues Against Cambridge Whole Foods that Sent Employees Home for Black Lives Matter Masks*, Boston Globe July 5, 2020, https://www.bostonglobe.com/2020/07/05/metro/boycott-continues-against-cambridge-whole-foods-that-sent-employees-home-black-lives-matter-masks/ (Ex. 19); Joshua Rhett Miller, *Call for Whole Foods Boycott Grow After Employees Wearing BLM Masks Are Sent*

proves that Whole Foods is impermissibly acting on the basis of race: its concern that Black Lives Matter worn by and in support of Black employees will prove less tolerable than symbols worn by and in support of LGBTQ+ employees, evidences that Whole Foods actions are, at bottom, based on race.  In any event, it is "widely accepted that a company's desire to cater to the perceived racial preferences of its customers is not a defense for treating employers differently based on race."[36]

### 2.  **Unlawful Retaliation**

In addition to violating Title VII's prohibition on discrimination on the basis of race, Whole Foods has also violated the Title VII by retaliating against its employees for opposing a practice made unlawful under Title VII.  42 U.S.C. § 2000e-3(a).

Title VII's opposition clause sweeps "broadly and protects an employee for more informally opposing an employment activity that might violate Title VII." Ray v. Ropes & Gray, LLP, 799 F.3d 99, 108 (1st Cir. 2015).  The "success of a retaliation claim does not require that the conduct plaintiff opposed was in fact a Title VII violation."  Petitti v. New England Tel. & Tel. Co., 909 F. 2d 28, 33 (1st Cir. 1990) (internal citations omitted).  It is sufficient that the employee "had a good faith, reasonable belief that the underlying challenged actions of the employer violated the law."  Fantini v. Salem State College, 557 F.3d 22, 32 (1st Cir. 2009) (internal citations omitted). Plaintiffs may establish a prima facie case of retaliation by showing that: (1) they engaged in protected conduct; (2) they were subjected to an adverse employment action; and (3) the adverse employment action is causally linked to the protected conduct.  Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 94 (1st Cir. 2018).  Here, Plaintiffs have also clearly met their burden to establish a prima facie case of retaliation.

---

Home, NY Post, July 6, 2020, https://nypost.com/2020/07/06/protesters-boycott-whole-foods-over-black-lives-matter-mask-policy/ (Ex. 20).

[36]    Chaney v. Plainfield Healthcare Center, 612 F.3d 908, 913 (7th Cir. 2010); see also *Significant EEOC Race/Color Cases*, EEOC, https://tinyurl.com/y5zk5eqh (detailing similar customer preference cases brought by the EEOC).

**First**, Whole Food employees wearing Black Lives Matter masks have engaged in protected activity by continuing to wear the messaging in the face of (and indeed, in many instances, in response to the) discriminatory discipline inflicted by Whole Foods. The opposition clause of Title VII has an expansive definition, and "[w]hen an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." Crawford v. Metropolitan Government of Nashville and Davidson County, Tenn., 555 U.S. 271, 276 (2009) (internal citations omitted).  An employee's complaint to an employer about discrimination against their coworkers constitutes protected opposition. See Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996).  Protected opposition activity also encompasses protesting allegedly unlawful actions, even by "picketing and boycotting an employer." Ray, 799 F. 3d at 107–08.

Here, Whole Foods employees have clearly engaged in protected activity, both in supporting Black employees, as well as in opposing Whole Foods' discriminatory enforcement of its dress code policy, which they could reasonably perceive was unlawful under Title VII.  Plaintiffs and numerous other Whole Foods employees have organized to wear and continue wearing Black Lives Matter masks both to support their Black co-workers and also in protest of their reasonable belief that Whole Foods has engaged in discriminatory conduct through its selective enforcement of its dress code policy.  Many Plaintiffs and other Whole Foods employees have staged protests outside of Whole Foods stores to oppose Whole Foods' discriminatory policy.[37]

**Second**, Whole Foods employees have clearly suffered adverse employment actions, as described supra in relation to Plaintiffs' discrimination claim, in that they

---

[37]    See supra note 35; see also Fernando Martinez, *Whole Foods Employee Told Not to Wear 'Controversial' Black Lives Matter Mask, Protest Scheduled*, SFGate, July 17, 2020, https://www.sfgate.com/news/article/Whole-Foods-Gilman-Berkeley-employee-BLM-mask-15416626.php (Ex. 21); Frances Dinkelspiel, *Hundreds in Berkeley Protest Whole Foods' Ban on Wearing Branded ;Black Lives Matter'*, Berkeleyside Nosh, July 17, 2020, https://www.berkeleyside.com/2020/07/17/berkeley-ca-whole-foods-black-lives-matter-protest (Ex. 22) (describing protest of 200).

have been sent home without pay, disciplined, written up, and even terminated because of their engaging in protected activity.  Further, adverse action in the Title VII retaliation context "is more expansive than in the discrimination context" and includes conduct that "could deter a reasonable person from complaining about discrimination and could encompass conduct entirely unrelated to the workplace."  Shervin v. Partners Healthcare System, Inc., 804 F.3d 23, 48 (1st Cir. 2015) (citing Burling N. & Santa Fey Ry. Co. v. White, 548 U.S. 53, 64 (2006)).  Thus, Whole Foods' repeated discipline of its employees, which clearly places them at risk of termination if they continue to engage in protected activity, is also sufficient to show that they have suffered adverse employment action.  See Billings v. Town of Grafton, 515 F. 3d 39, 54–55 (1st Cir. 2008) (an employee who knows they "risk[] a formal investigation and reprimand—including threat of further, more serious discipline" for engaging in protected conduct "might well choose not to proceed" with the protected activity).

**Third**, there is little question that that there is a causal connection between Whole Foods employees' protected activity and the adverse actions Whole Foods continues to take against them.  Namely, after Whole Foods' began selectively enforcing its dress code to ban Black Lives Matter masks, a number of Whole Foods employees, including Plaintiffs, organized explicitly in opposition to this discriminatory policy by wearing Black Lives Matter masks to their shifts.  See, e.g., Kinzer Aff. ¶¶ 5-8; Barry Aff. ¶ 5.  Whole Foods has directly responded by subjecting employees who engage in this opposition activity to discipline, sending these employees home without pay, and even terminating one of the plaintiffs, Savannah Kinzer, who has been a leader in organizing employees to protest the Black Lives Matter mask ban.

As discussed in connection with Plaintiffs' discrimination claim, Whole Foods' assertion that it is merely enforcing a neutral dress code policy is pretextual.  It is clear that Whole Foods is disciplining its employees, not only based on their advocacy for Black employees, but also for their protected opposition to what they reasonably

perceive to be Whole Foods' discriminatory policy of prohibiting them from wearing Black Lives Matter masks.

## IV. Plaintiffs Have Shown that Whole Foods Employees Who Want to Wear Black Lives Matter Masks Face Irreparable Harm in the Absence of a Preliminary Injunction

Irreparable harm is typically found when there exists no adequate remedy at law. Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004). "With respect to some statutory injunction provisions, however, courts have found that when Congress decides to make available the remedy of injunction for violations of a statute's substantive provisions, irreparable injury is presumed to flow from such violations." United States v. Massachusetts Water Resources Authority, 256 F.3d 36, 50 n. 15 (1st Cir. 2001).[38]

As an initial matter, because Congress has decided to make injunctive relief available to private litigants to enjoin employers' violation of the Title VII rights, the Court should begin with the presumption that irreparable injury to the employees flows from Whole Foods' unlawful conduct. See 42 U.S.C. §2000e-5(g)(1).[39]

---

[38]    See also Atchison, T. & S.F. Ry. Co. v. Lennen, 640 F.2d 255, 258–59 (10th Cir.1981) ("it is not necessary that the [Plaintiff] Railroads show that they will suffer irreparable harm if the injunction is denied. When the evidence shows that the defendants are engaged in, or about to be engaged in, the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable harm to the plaintiffs need not be shown."); State Comm'n on Human Relations v. Talbot County Detention Ctr., 370 Md. 115, at 127-28 (Md. Ct. App. 2002) ("When injunctive relief is provided by statute, however, a court's decision to issue injunctive relief is no longer rooted in traditional principles of equity; rather, it is based upon the statutory guidelines.") (collecting cases).

[39]    The provision provides that; "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. §2000e-5(g)(1).

Further, courts have recognized that employees' failure to receive pay that is due can comprise "irreparable injury" in extreme circumstances.[40]  That principle applies here, where Whole Food employees would be irreparably harmed by being deprived of their current livelihood while made to await resolution of this action, which could take years if litigated to its conclusion.  A number of these employees would be unable to afford rent and risk eviction if imminently terminated; a number are students who rely on their income from Whole Foods to pay their loans and afford basic necessities throughout the school year.[41]  Monetary damages years down the road would be little comfort.

Particularly in the midst of an unprecedented global pandemic, immediate termination would leave employees stranded.  This pandemic has resulted in unemployment levels not seen since the Great Depression; workers will face significant challenges in finding other employment.[42]  And many Plaintiffs have already been irreparably harmed, as they have been unlawfully disciplined and sent home without pay

---

[40]     For example, in Aguilar v. BaineService Systems, Inc., 538 F. Supp. 581, 584 (S.D.N.Y. 1982), the court found a showing of irreparable harm under Rule 65 due to lost wages when the plaintiffs would lose their sole source of income absent an injunction. See also Roland Machinery Co. v. Dresser Industries, Inc., 749 F. 2d 380, 386 (7th Cir. 1984) (finding irreparable harm when plaintiff proved a damage award seriously deficient, as it "may come too late to save plaintiff's business. He may go broke while waiting, or may have to shut down his business"); Donohue v. Mangano, 886 F. Supp. 2d 126, 153-54 (E.D.N.Y. 2012) ("'For a poor man ... to lose part of his salary often means his family will go without the essentials.'") (quoting Sniadach v. Family Finance Corp. of Bay View, 395 U.S. 337, 342 n. 9, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (quoting statement of Congressman Gonzales, 114 Cong. Rec. 1833)).

[41]     Frith Aff. ¶ 22 (discussing harm to family if he cannot contribute to bills and how he will not be able to pay down student loan interest (which cannot be remedied later)); Kinzer Aff. ¶ 30 (describing how she is afraid she will be unable to pay rent due to her termination); Walsh Aff. ¶ 17; Shanahan Aff. ¶ 21; Berimbau Aff. ¶ 14 (describing using Whole Foods earnings to pay for groceries throughout the school year); Juarez Aff. ¶ 22 (afraid to lose job for fear of not affording rent); Barry Aff. ¶ 16 (afraid will be unable to pay for school, bills, and assist in buying family groceries); Styles Aff. ¶ 21 (fearing losing her apartment and car); Greene Aff. ¶ 19 (fearing having to drop out of cosmetology school, which she is currently putting herself through); Robinson Aff. ¶ 7 (needing to pay her mortgage and cover her son's medical expenses).

[42]     Paul Hannon, *Unemployment Expected to Reach Highest Level Since Great Depression*, Wall Street Journal (July 7, 2020), https://www.wsj.com/articles/unemployment-expected-to-reach-highest-level-since-great-depression-11594112400 (reporting that unemployment will not return to pre-pandemic levels until 2022, at the earliest).

(and should not be subjected to additional irreparable harm).[43]  Plaintiff Kinzer has already been terminated and risks being unable to pay rent; Plaintiffs seek her immediate reinstatement.

Moreover, Whole Foods' ongoing retaliatory actions have had and will continue to have a significant chilling effect on its employees' protected conduct, which constitutes irreparable harm.  Allowing an employer to retaliate against its employees "can have a deleterious effect on the exercise of these rights by others." Garcia v. Lawn, 805 F.2d 1400, 1405 (9th Cir. 1986).  Retaliatory discharges carry "the distinct risk that other employees may be deterred from protecting their rights under the Act or from providing testimony for the plaintiff in her effort to protect her own rights" and such "risks may be found to constitute irreparable injury."  Holt v. Continental Group, Inc., 708 F.2d 87, 91 (2d Cir. 1983).  Whole Foods' retaliatory actions have chilled employees from engaging in protected conduct, by making clear that employees risk termination if they continue to wear Black Lives Matter messaging.  Whole Foods discipline of its employees who wear Black Lives Matter messaging has been widely reported, making it almost certain that other employees at store locations across the country have been chilled from engaging in similar protected opposition activity.

In sum, Plaintiffs and other employees wearing Black Lives Matter masks to work at Whole Foods have been and will continue to be irreparably harmed in the absence of an injunction.

## V.     The Balance of Hardships Tips Sharply in Plaintiffs' Favor

Plaintiffs submit that the balance of hardships tips sharply in their favor.[44]  Again,

---

[43]     Frith Aff. ¶¶ 6-9, 14-18; Kinzer Aff. ¶¶ 9-12; Walsh Aff. ¶Aff. ¶ 6-9; Shanahan Aff. ¶ 8-11; Juarez Aff. ¶¶ 14-17; Berimbau Aff. ¶¶ 6-7; Vuong Aff. ¶¶ 6-7; Barry Aff. ¶ 8; Styles Aff. ¶¶ 7-9; Greene Aff. ¶¶ 7-9.

[44]     For this factor, the court considers "the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld." Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991).  "[I]n the context of statutory injunctions, the court's freedom to make an independent assessment of the equities and the public interest is circumscribed to the extent that Congress has already made such assessments with respect to the type of case before the court." Massachusetts Water Resources Authority, 256 F.3d at 47.

Congress has already made an assessment that the balance of equities when an employer violates Title VII favors the issuance of an injunction.  Absent a preliminary injunction, Whole Foods employees who want to show their support for Black Lives Matter risk termination and continued loss of wages during a global pandemic, which none can afford, unless they accept ongoing discriminatory and retaliatory action by Whole Foods by acquiescing to the ban on Black Lives Matter messaging.

In contrast, Whole Foods is a multi-billion-dollar company (purchased by Amazon for $13.7 billion in 2018)[45] that will not suffer harm if it is enjoined from discriminating and retaliating against its employees.  It can afford to allow its employees to express support for Black lives mattering in the workplace. Indeed, Starbucks, a nationwide chain of similar scale, recently reversed a similar discriminatory ban on Black Lives Matter apparel and is now providing Black Lives Matter shirts for its employees to wear if they choose and has not reported any harm it has suffered as a result.[46]

## VI.   An Injunction is in the Public Interest

Finally, enjoining Whole Foods' conduct is in the public interest.  Enjoining unlawful conduct "vindicate[s] the public interest [by] preventing these kinds of unlawful practices in the future." E.E.O.C. v. Conn-X, LLC, 2012 WL 456870 at *2 (D. Md. Feb. 9, 2012).  Further, issuing an injunction will serve the public interest by ensuring that "irreparable harm to the public interest in enforcing the law" is not caused by Whole Foods' ongoing retaliatory conduct "deterring others from filing charges", Garcia, 805 F.2d at 1405, or engaging in protected activity.

---

[45]      *Whole Foods Market*, Forbes, updated May 24, 2017, https://www.forbes.com/companies/whole-foods-market/#a7c230f34dfa; *Amazon's Soaring Goodwill Balance shows How Whole Foods Buy Was a Long-Term Bet*, Feb. 6, 2019, https://www.cnbc.com/2018/02/06/amazon-10-billion-goodwill-balance-shows-whole-foods-strategy.html.

[46]      Heather Murphy, *Starbucks Will Allow Employees to Wear Black Lives Matter Apparel*, New York Times (June 12, 2020), https://www.nytimes.com/2020/06/12/business/starbucks-blm-ban-reversed.html; *Standing Together Against Racial Injustice*, Starbucks Stories & News, June 12, 2020, https://stories.starbucks.com/stories/2020/standing-together-against-racial-injustice/?utm_source=twitter&utm_medium=social&utm_campaign=blacklivesmatter&utm_term=post&utm_content=marketing-social.

Whole Foods' discriminatory and retaliatory policy is curbing employee speech, which cannot be remedied later.  While this case is not a First Amendment case, it invokes similar public interest concerns (particularly given the size of Whole Foods and its parent company Amazon).[47]  Indeed, the federal government has recently decided its employees are allowed to wear messaging for "Black Lives Matter."[48]  If Whole Foods is allowed to continue engaging in its unlawful discriminatory and retaliatory conduct, it will establish harmful precedent, as other employers will then assume they are entitled to as well, carte blanche, trample on employees' rights to assert that Black lives matter and that Black employees be treated fairly and with dignity and that all employees be afforded the right to work in a workplace free from discrimination and retaliation.

## VII.   CONCLUSION

For the reasons discussed above, this Court should immediately enter an injunction enjoining Whole Foods from continuing its policy of prohibiting employees from wearing Black Lives Matter masks at work.  The discipline already imposed on employees for wearing the masks or related apparel should be expunged, Plaintiff Savannah Kinzer should be reinstated to her job, and Plaintiffs Tucker-Tolbert and Del Rio-Ramirez should be permitted to return to their jobs if they choose to.  The Court's granting of an immediate injunction is essential to avoiding further imminent harm to Whole Foods workers across the country who should not have to choose between their jobs and their rights under the law.

---

[47]   While this action does not raise a First Amendment claim, courts have recognized that the standards for establishing deterrence of speech in Title VII retaliation claims and Free Speech actions are "consonant."  See Couch v. Bd. Of Turstees of Memorial Hosp. of Carbon Cty, 587 F.3d 1223, 1238 (10th Cir. 2009) (quoting Akins Fulton Cty, Ga., 430 F.3d 1293, 1300-01 & n. 2 (11th Cir. 2005)).

[48]   See Black Lives Matter and the Hatch Act, U.S. Office of Special Counsel, at *6 (dated July 14, 2020) https://federalnewsnetwork.com/wp-content/uploads/2020/07/071420_osc_blm_hatchact_FNN.pdf (Ex. 23).

Dated: July 20, 2020

Respectfully submitted,

SUVERINO FRITH, SAVANNAH KINZER,
CEDRICK JUAREZ, FAITH WALSH,
MACKENZIE SHANAHAN, COREY SAMUEL,
ABDULAI BARRY, LINDSAY VUONG,
SAMANTHA BERIMBAU, CAMILLE TUCKER-
TOLBERT, ANA BELÉN DEL RIO-RAMIREZ,
LYLAH STYLES, KAYLA GREENE, and
SHARIE ROBINSON, individually and on
behalf of all others similarly situated,

By their attorneys,

/s/ Shannon Liss-Riordan_____
Shannon Liss-Riordan, BBO #640716
Anastasia Doherty, BBO #705288
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com, adoherty@llrlaw.com

## **CERTIFICATE OF SERVICE**

I, Shannon Liss-Riordan, hereby certify that a copy of this document will be imminently served on Defendant Whole Foods Market, Inc., concurrently with service of the complaint summons, as filed on July 20, 2020.

*/s/ Shannon Liss-Riordan*
Shannon Liss-Riordan, Esq.