# EXHIBIT 23



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 218
Washington, D.C. 20036-4505
202-804-7000

July 14, 2020

<u>Black Lives Matter and the Hatch Act</u>

**I.   INTRODUCTION**

Beginning in late May 2020, protesters began organizing large demonstrations across the United States. The immediate precipitating event was the videotaped police killing of George Floyd, a black man. However, the demonstrations are largely focused on the issue of racism in America more broadly and not limited to Mr. Floyd's death alone. The phrase "Black Lives Matter" (BLM) is frequently used by protesters and associated with the demonstrations. Additionally, BLM-related organizations have supported and/or organized demonstrations.

In response, numerous federal employees have asked OSC whether BLM or related materials raise any Hatch Act concerns when used or displayed while on duty or in the federal workplace. The questions raise two distinct but related issues. The first is whether using BLM terminology is inherently political activity. And the second is whether the Black Lives Matter Global Network (BLMGN)—the owner of www.blacklivesmatter.com and arguably the most prominent BLM-related organization—is a partisan political group. As further described below, using BLM terminology is not inherently political activity and BLMGN is not currently a partisan political group.[1] Accordingly, the Hatch Act generally allows employees to engage in BLM-related activity while on duty or in the workplace. But, as described below, employees are still prohibited from combining BLM-related activity with "political activity" while on duty or in the workplace and from engaging in partisan political fundraising in connection with BLM-related organizations. "Political activity" is an activity directed toward the success or failure of a political party, candidate for partisan political office, or partisan political group.[2]

**II.   BACKGROUND OF BLM**

As a social movement, BLM gained prominence following a series of high-profile killings of black Americans in 2013 and 2014 and, in particular, the acquittal of George Zimmerman for the killing of Trayvon Martin. The movement appears to have begun organically on social media. The phrase "Black Lives Matter" then became a rallying cry for

---

[1] This memorandum analyzes BLMGN based upon its activities at the time of writing. If BLMGN's activities change in the future, then OSC would need to reevaluate the group based upon those changed circumstances.
[2] 5 C.F.R. § 734.101.

**U.S. Office of Special Counsel**
Page 2

protesters and organizations seeking to raise awareness of, and respond to, issues associated with racism in the United States.[3]

BLM is thus an umbrella term for a constellation of ideas, objectives, and groups.  There is no "leader" of the BLM movement.  Rather, there are numerous organizations that use BLM terminology to varying degrees, including some whose names include the phrase "Black Lives Matter."  Of these, the most prominent is the BLMGN.

BLMGN is a chapter-based organization made up of more than 40 chapters worldwide.  BLMGN's stated goals are to "eradicate white supremacy and build local power to intervene in violence inflicted on Black communities by the state and vigilantes."[4]  In furtherance of these goals it organizes programs around black arts and culture, protests to achieve policy change, and provides toolkits and other resources for discussing and responding to racism.

BLMGN has not previously been involved in partisan political activity.  During the 2016 presidential election cycle, BLMGN representatives considered endorsing a presidential candidate and reportedly met with candidates from both the Democratic and Republican parties.[5]  But ultimately BLMGN opted not to endorse any candidate or political party, and in fact expressly disavowed a Democratic Party statement of support.[6]  In the current election cycle, BLMGN has begun a campaign titled #WhatMatters2020 that aims to increase turnout among BLMGN supporters in the 2020 election.  The #WhatMatters2020 campaign does not identify any particular politicians or political parties.  Rather, it aims to register potential voters and educate voters about issues such as racial injustice, police brutality, education, healthcare, and environmental conditions.

BLMGN's website is almost entirely focused on issue advocacy.[7]  The website has online petitions related to police reform[8] and COVID-19;[9] descriptions of its immigration reform-related campaigns;[10] and videos about BLMGN chapter initiatives.[11]  The only express reference

---

[3] *See generally* Monica Anderson, *The hashtag #BlackLivesMatter emerges:  Social activism on Twitter*, Pew Research Center, Aug. 15, 2016, https://www.pewresearch.org/internet/2016/08/15/the-hashtag-blacklivesmatter-emerges-social-activism-on-twitter/.
[4] Black Lives Matter, https://blacklivesmatter.com/about/ (last visited June 25, 2020).
[5] Taylor Lewis, *Black Lives Matter Activists Will Not Endorse a 2016 Presidential Candidate*, Essence, Sept. 22, 2015, https://www.essence.com/news/black-lives-matter-activists-will-not-endorse-2016-presidential-candidate/ (noting that BLMGN met with presidential candidates Hillary Clinton, Bernie Sanders, and Jeb Bush).
[6] Lauren Gambino, *Black Lives Matter network disavows political ties after DNC backs movement*, The Guardian, Aug. 31, 2015, https://www.theguardian.com/us-news/2015/aug/31/black-lives-matter-democratic-national-committee (After the Democratic National Committee adopted a resolution claiming solidarity with BLM, BLMGN issued a statement saying "We do not now, nor have we ever, endorsed or affiliated with the Democratic Party, or with any party . . . .  The Democratic Party, like the Republican and all political parties, have historically attempted to control or contain black people's efforts to liberate ourselves.  True change requires real struggle, and that struggle will be in the streets and led by the people, not by a political party.").
[7] The websites of the BLMGN chapters that OSC reviewed also contain no evidence of partisan political activity.  *See, e.g.*, Black Lives Matter Chicago https://www.blacklivesmatterchicago.com/about-us/ (last visited June 24, 2020); Black Lives Matter DMV http://www.blacklivesmatterdmv.org/about/ (last visited June 24, 2020).
[8] https://blacklivesmatter.com/defundthepolice/.
[9] https://blacklivesmatter.com/petitions/.
[10] https://blacklivesmatter.com/global-actions/.
[11] https://blacklivesmatter.com/activist-shorts/blm-chicago/; https://blacklivesmatter.com/whatmatters/.

U.S. Office of Special Counsel
Page 3

to political parties that we can find is the statement "We are [moving forward towards justice] through our continued fight against elected officials, be it Democrat or Republican, who don't share a vision that is radical and intersectional."[12] BLMGN's website does not contain any candidate endorsements, any descriptions of its partisan political activity, or requests that visitors engage in partisan political activity.

### III. ANALYSIS

As relevant here, the Hatch Act prohibits employees from engaging in political activity while on duty or in the federal workplace.[13] "Political activity" is activity directed toward the success or failure of a political party, partisan political group, or candidate for partisan political office.[14] A "partisan political group," in turn, is a group that (1) is affiliated with a political party or candidate for partisan political office, (2) is organized for a partisan purpose, or (3) engages in partisan political activity.[15] The Hatch Act does not prohibit employees from engaging in issue-based advocacy, such as activity in relation to an issue not specifically identified with a political party or partisan political group.[16] Because using BLM terminology is not inherently political activity, and because BLMGN is not a partisan political group, the Hatch Act has only limited application to BLM-related activity.

*1. Using BLM terminology in the workplace is not inherently political activity.*

The Hatch Act generally prohibits employees from using or displaying political party and partisan campaign slogans. For example, employees may not use President Trump's campaign slogan, "Make America Great Again," in their email signatures while President Trump is a candidate for reelection. Employees would have similarly violated the Hatch Act by referencing Hillary Clinton's campaign slogan, "Forward Together," in the workplace during the 2016 election campaign.

Unlike campaign slogans, phrases related to issues—even politically charged issues—generally do not meet the definition of political activity. For example, the Tea Party movement rose to prominence during the Obama Administration in large part as a response to federal taxing and spending policies. Because of this issue-focused origin, OSC could not conclude that the movement itself was inherently partisan as opposed to issue-based. Accordingly, OSC repeatedly found that mere use of the phrase "Tea Party" by federal employees while on duty or in the workplace was not prohibited by the Hatch Act.

Although OSC deemed the Tea Party movement as not inherently partisan, OSC was also asked to evaluate whether certain Tea Party-affiliated groups met the definition of a partisan political group. OSC examined those groups on a case-by-case basis and determined that at least one was a partisan political group.[17] Thus, a distinction arose between on-duty employees

---

[12] https://blacklivesmatter.com/six-years-strong/.
[13] *See* 5 U.S.C. § 7324(a)(1)-(2).
[14] 5 C.F.R. § 734.101.
[15] *Id.*
[16] *See* 5 C.F.R. § 734.203.
[17] The Florida Tea Party, a registered state political party in Florida.

promoting or opposing the Tea Party movement writ large—which OSC deemed permissible under the Hatch Act—and promoting or opposing individual Tea Party-affiliated organizations, which OSC deemed problematic if the organization in question was a partisan political group.

The Tea Party provides a close analogy for BLM.  Like the Tea Party, BLM is a blanket term for a leaderless movement that apparently arose in response to social concerns.  Also like the Tea Party, the BLM movement comprises numerous individuals and groups, any one of which can claim affiliation with BLM without having to be formally accepted into the movement.  And to the extent that either movement's motivating principles can be definitively established, it appears that they both were or are focused primarily on raising awareness of, and achieving policy changes for, their issues of concern.  Thus, expressing support for or opposition to BLM as a movement is not "activity directed toward the success or failure of a political party, partisan political group, or candidate for partisan political office."  Such expressions are therefore allowed by the Hatch Act.[18]

*2. BLMGN is not a partisan political group.*

An organization is a partisan political group if it (1) is affiliated with a political party or candidate for partisan political office, (2) is organized for a partisan purpose, or (3) that engages in partisan political activity.  OSC has found no evidence to suggest that BLMGN is affiliated with a political party or candidate for partisan political office or that it is organized for a partisan purpose, *i.e.*, for the purpose of supporting or opposing a political party or a party's candidates for office.  The relevant question then becomes whether BLMGN is a partisan political group because it engages in partisan political activity.

Not all organizations that engage in any political activity are partisan political groups.[19]  Accordingly, OSC will consider several factors when determining whether an organization is a partisan political group because of its political activity.  These factors include, but are not limited to, the following:  the organization's stated purpose, as reflected in its bylaws or charter, on its website, and in its other public materials; whether the organization expends its resources on political activity; whether the organization prominently advertises its political activity; the relationship between the organization and its affiliates, if any, that engage in political activity, such as whether they share a website, staff, or office space; and whether the organization has indicated on any government filings that it engages in political activity.

Based upon the foregoing factors, BLMGN is not a partisan political group.  Its stated purposes relate to effecting policy changes to benefit the black community.  It does not appear that the group expends any of its resources on partisan political activity.  To the extent that it is publicly involved in the 2020 elections, its goals appear to center on voter registration and

---

[18] OSC similarly advises that employees do not violate the Hatch Act by saying "Build the Wall" or talking about "conservative values" or "liberal values" while in the workplace. All three are considered issue-based statements. But such statements could easily cross the line to prohibited political activity if connected to a political party or candidate (*e.g.*, "if you share my conservative/liberal values, you should vote for Republican/Democratic candidates in 2020").

[19] *See generally* OSC's advisory dated July 10, 2020 (analyzing when groups are partisan political groups under each of the three regulatory criteria).

**U.S. Office of Special Counsel**
Page 5

education.  BLMGN has not endorsed any individual candidates or, more broadly, those of any particular party.  And OSC is unaware of any BLMGN affiliates that engage in political activity or of any government filings in which BLMGN has indicated that it engages in political activity.

It has been said that some portion of contributions to BLMGN may be directed to partisan political groups via the ActBlue fundraising network.  BLMGN does use ActBlue Charities to process donations.  But there is no evidence to suggest that donations to BLMGN via the ActBlue Charities website are used to fund any organizations besides BLMGN.[20]

Like any number of prominent politically active organizations—such as the National Rifle Association and Planned Parenthood—BLMGN is popularly associated more frequently with one political party versus another.  But that does not make it a "partisan political group" for purposes of the Hatch Act.  Considering that BLMGN is overwhelmingly focused on policy issues, not on promoting or opposing political parties or candidates for partisan political office, it is not a partisan political group at this time.

      3.   *The Hatch Act implications of these determinations.*

The Hatch Act imposes limited restrictions on employee conduct related to issue-based advocacy and organizations.  Specifically, employees who are on duty or in the workplace may not associate their issue-based advocacy with the success or failure of a political party, a partisan political group, or a candidate for partisan political office.  Employees also may not knowingly solicit, accept, or receive political contributions, *i.e.*, contributions made for the purpose of promoting or opposing a political party, a partisan political group, or a candidate for partisan political office, even if such conduct is done on behalf of an issue-based organization.  In other words, while purely issue-based conduct is not prohibited by the Hatch Act, if an employee's issue-based conduct includes some element of political activity or political fundraising then the relevant Hatch Act prohibitions will apply.

As applied to BLM, this means that an employee is not prohibited by the Hatch Act from expressing support for, or opposition to, the BLM movement while on duty or in the workplace.  But the employee may not say, for example, "if you believe that Black Lives Matter, then you should vote for/against X in November."  Similarly, if BLMGN were to host a fundraiser to support a candidate for partisan political office, then the Hatch Act would prohibit an employee from advertising, promoting, or inviting others to attend that fundraiser.[21]  But because BLMGN is not itself a partisan political group, the Hatch Act would not prohibit the employee from inviting others to a fundraiser that benefited solely BLMGN.

---

[20] *See generally* Eliana Block, *No, donations to Black Lives Matter do not go to the DNC*, WUSA9, June 22, 2020, https://www.wusa9.com/article/news/verify/verify-donations-to-black-lives-matter-do-not-go-to-the-dnc/65-ecd22d31-d5ed-44f7-adc2-b04a31fed591.  If simply using ActBlue Charities to process donations made an organization a partisan political group, then OSC would have to conclude that myriad 501(c)(3) tax-exempt organizations, including food banks and United Way chapters, are partisan political groups.  Because some 501(c)(3) organizations that use ActBlue Charities also participate in the Combined Federal Campaign (CFC), one of the many consequences of such a conclusion would be the possibility that certain CFC fundraising is prohibited by the Hatch Act.

[21] Note that if BLMGN hosted a single fundraiser for a candidate for partisan political office, that alone would likely not be sufficient to reclassify BLMGN as a partisan political group.

**U.S. Office of Special Counsel**
Page 6

### IV. CONCLUSION

BLM is a "hot-button" issue and both politically and culturally salient. But BLM terminology is issue-based, not a campaign slogan. Therefore, using BLM terminology, without more, is not political activity. BLMGN does not meet any of the criteria for classification as a partisan political group. Therefore, BLMGN is not a partisan political group, and employees are not prohibited from wearing or displaying BLMGN paraphernalia in the workplace.

Please note that this advisory only relates to the Hatch Act and does not address any other laws, rules, or regulations that may apply to expressions of support for, or opposition to, BLM while on duty or in the workplace. If you have questions about any other such laws, rules, or regulations, we recommend that you consult with an agency ethics official.