**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SUVERINO FRITH, SAVANNAH KINZER, CEDRICK JUAREZ, FAITH WALSH, MACKENZIE SHANAHAN, COREY SAMUEL, ABDULAI BARRY, LINDSAY VUONG, SAMANTHA BERIMBAU, CAMILLE TUCKER-TOLBERT, ANA BELÉN DEL RIO-RAMIREZ, LYLAH STYLES, KAYLA GREENE, SHARIE ROBINSON, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br> v.<br><br> WHOLE FOODS MARKET, INC.,<br><br>                Defendant. | CIVIL ACTION NO. 1:20-cv-11358-ADB |

**DEFENDANT'S OPPOSITION**
**TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   FACTUAL BACKGROUND ........................................................................... 3

    A.    Defendant Whole Foods Market ......................................................... 3

        1.    Whole Foods' Dress Code Policy And Face Mask Requirement. ............ 3

        2.    Whole Foods' Enforcement Of Its Dress Code Policy And Corrective Discipline Procedures. ......................................................... 4

    B.    Plaintiffs' Wearing Of Noncompliant Face Masks To Work And Refusals To Cure Dress Code Violations. ........................................................... 5

III.  ARGUMENT ................................................................................................... 7

    A.    Plaintiffs Are Not Entitled To Any Relief On A Classwide Basis. ....................... 7

    B.    Plaintiffs Cannot Meet Their Extraordinary Burden For Injunctive Relief. .......... 8

    C.    Plaintiffs Have Failed To Demonstrate That They Are Likely To Succeed On The Merits Of Their Race-Based Discrimination And Retaliation Claims. ......................................................................................... 8

        1.    Plaintiffs Do Not Have Standing To Pursue Their Claims Before Exhausting Their Pre-Filing Requirements With The EEOC. ................... 9

        2.    Plaintiffs Cannot State A Prima Facie Case Of Race Discrimination. ................................................................................ 10

            a.    Title VII's Employment Discrimination Laws Do Not Apply To Plaintiffs' Claims. ...................................................... 11

            b.    Plaintiffs Were Not Treated Less Favorably Than Employees Outside Their Protected Group. ............................... 11

        3.    Plaintiffs Cannot State A Prima Facie Case Of Retaliation. ................... 12

            a.    Whole Foods Has A Broad Degree Of Control Over Its Employees' Words And Conduct In The Workplace. ................ 12

            b.    Plaintiffs' Knowing Violations Of Whole Foods Policy Is Not Protected Activity Under Title VII. ..................................... 13

        4.    Whole Foods Had Legitimate, Nondiscriminatory Reasons For Its Actions. ................................................................................... 14

        5.    Plaintiffs Cannot Show Evidence Of Pretext. .......................................... 15

        6.    Plaintiffs Cannot Establish Disparate Impact Based On Their Race. ....... 16

    D.    Plaintiffs Cannot Show Irreparable Injury. .......................................... 17

        1.    Income And Job Loss Do Not Constitute Irreparable Injury. ................... 17

## TABLE OF CONTENTS
(continued)

Page

2.    A Hypothetical "Chilling Effect" On Other Individuals Is
      Insufficient To Show Irreparable Injury In Retaliation Claims. ............. 18

E.    The Balance Of Equities And Public Interest Weigh In Whole Foods'
      Favor. ............................................................................................................... 19

IV.   CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey v. Delta Air Lines, Inc.*,
  722 F.2d 942 (1st Cir. 1983) .................................................................................9

*Bhatti v. Trustees of Bos. Univ.*,
  659 F.3d 64 (1st Cir. 2011) .................................................................................10

*Bostock v. Clayton County*,
  140 S. Ct. 1731 (2020) ...............................................................................1, 11, 12, 15

*Brown v. Tr. of Boston Univ.*,
  891 F.2d 337 (1st Cir. 1989) ...............................................................................7, 8

*Cherkaoui v. City of Quincy*,
  877 F.3d 14 (1st Cir. 2017) ...........................................................................9, 12, 15

*DeNovellis v. Shalala*,
  135 F.3d 58 (1st Cir. 1998) .............................................................................18, 19

*Espinal v. Nat. Grid NE Holdings*,
  693 F.3d 31 (1st Cir. 2012) ...............................................................................3, 16

*Esso Standard Oil Co. v. Monroig-Zayas*,
  445 F.3d 13 (1st Cir. 2006) .................................................................................8

*Garcetti v. Ceballos*,
  547 U.S. 410 (2006) .........................................................................................13

*Gregory v. YWCA Haverhill, Inc.*,
  No. CIV. 13-11342-FDS, 2014 WL 3798893 (D. Mass. July 30, 2014) ................................10

*Harper v. Melendez*,
  2019 WL 6307201 (D. Mass. Nov. 22, 2019) .......................................................10

*Hazel v. U.S. Postmaster Gen.*,
  7 F.3d 1 (1st Cir. 1993) .................................................................................13, 14

*Hochstadt v. Worcester Found. For Experimental Biology, Inc.*,
  425 F. Supp. 318 (D. Mass. Jan. 5, 1976), *aff'd sub nom*, 545 F.2d 222 (1st
  Cir. 1976) ...............................................................................................10, 14

*Jorge v. Rumsfeld*,
  404 F.3d 556 (1st Cir. 2005) ...........................................................................9, 10

*Luceus v. Rhode Island*,
    923 F.3d 255 (1st Cir. 2019)........................................................................................16, 17

*Mathis v. Wachovia*,
    509 F. Supp. 2d 1125 (N.D. Fla. 2007)................................................................................12

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973).................................................................................................................9

*N.L.R.B. v. Express Publ'g Co.*,
    312 U.S. 426 (1941).................................................................................................................8

*Peoples Fed. Sav. Bank v. People's United Bank*,
    672 F.3d 1 (1st Cir. 2012).....................................................................................................1, 8

*Rosario-Urdaz v. Rivera-Hernandez*,
    350 F.3d 219 (1st Cir. 2003)..................................................................................................17

*S. States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*,
    No. CV 06-10034-NMG, 2006 WL 8458453 (D. Mass. Mar. 24, 2006) ............................7, 8

*Salamo Martinez v. Celulares Telefonica, Inc.*,
    272 F. Supp. 2d 144 (D.P.R. 2003).......................................................................................12

*Sampson v. Murray*,
    415 U.S. 61 (1974)...........................................................................................................17, 18

*Soldevila v. Sec'y of Agric.*,
    512 F.2d 427 (1st Cir. 1975)..................................................................................................18

*Thornton v. United Parcel Serv., Inc.*,
    587 F.3d 27 (1st Cir. 2009)......................................................................................................9

*Tobin v. Liberty Mut. Ins. Co.*,
    433 F.3d 100 (1st Cir. 2005)..................................................................................................15

*Unt v. Aerospace Corp.*,
    765 F.2d 1440 (9th Cir. 1985) ...............................................................................................14

*Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*,
    645 F.3d 26 (1st Cir. 2011)......................................................................................................8

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)........................................................................................................8, 18, 19

*Yarde v. Good Samaritan Hosp.*,
    360 F. Supp. 2d 552 (S.D.N.Y. 2005)...................................................................................12

**Statutes**

42 U.S.C. § 2000e-2(a) ...............................................................................................................11

42 U.S.C. § 2000e-5(f)(2) ...........................................................................................................10

**Other Authorities**

Enforcement Guidance on Retaliation and Related Issues, EEOC (Aug. 25, 2016),
    https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-
    related-issues..............................................................................................................................13

*What We Believe*, Black Lives Matter, https://blacklivesmatter.com/what-we-
    believe/ (last accessed Aug. 4, 2020)........................................................................................6

## I.   <u>INTRODUCTION</u>

There is no basis for a Title VII claim in this case, let alone an emergency preliminary injunction – "an ***extraordinary and drastic remedy*** that is never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8-9 (1st Cir. 2012) (emphasis added). Plaintiffs are not victims of employment discrimination or retaliation, and their claims do not implicate Title VII.

Plaintiffs are current and former Whole Foods employees.[1]  Defendant Whole Foods Market, Inc. ("Whole Foods" or "the Company") maintains a longstanding policy that prohibits employees from wearing clothing, hats, or masks with slogans or messages.  Plaintiffs contend that the enforcement of this policy violates Title VII because it prevents them from wearing safety face masks with the slogan "Black Lives Matter."

Critically, however, Plaintiffs are not challenging employment decisions made based on their race.   On the contrary, Plaintiffs – who are of various racial backgrounds – ask this Court to enjoin the application of a facially neutral dress code so that they can wear masks advocating for a particular form of social justice.  Their reliance on Title VII is wholly misplaced.  Title VII protects against discrimination on the basis of an employee's race, but it does not guarantee a platform for socially-conscious speech on racial issues.  As the Supreme Court emphasized less than two months ago, the question to test any race discrimination claim is "*but for* their race," would the adverse action would have happened.  *See Bostock v. Clayton County*, 140 S. Ct. 1731, 1739 (2020) ("[Title VII] prohibits employers from taking certain actions 'because of' sex [or

---

[1] After Plaintiffs filed their motion for a preliminary injunction and the Court issued a scheduling order, Plaintiffs amended their Complaint.  New plaintiffs joined the case and another defendant (Amazon.com Inc.) was added.  However, Plaintiffs did not seek to amend their motion to address the new allegations and parties.  Accordingly, Whole Foods' response addresses only the pending motion, rather than any new allegations in the Amended Complaint.

race] . . . [which] incorporates the 'simple' and 'traditional' standard of but-for causation.").

The question posed in this case is not whether Whole Foods supports the Black Lives Matter movement; it does, as Plaintiffs have noted.  It is whether the policy is enforced against a person based on that person's race.  Here, even Plaintiffs admit that Whole Foods equally enforced its policy regardless of an employee's race.  Accordingly, Plaintiffs' claims fail.

While Whole Foods does not need a justification for its facially neutral policy applied to all employees equally, there are many reasons why Whole Foods insists on its adherence. Presumably, some Whole Foods employees support Black Lives Matter, but some may wish to wear masks or clothing with contrary messages, such as All Lives Matter or Blue Lives Matter, which could be viewed by some customers as offensive.  Such competing messages may be for debate in public settings, but may not be on clothing that employees wear while they are working in Whole Foods stores – and that is the crux of the problem.  If Plaintiffs succeed in expanding Title VII from an employment discrimination law into a platform for public speech about broader social issues, Whole Foods would be unable to block messages on clothing articulating widely divergent views, some of which could be offensive to other employees or customers.

Plaintiffs' proposed preliminary injunction – covering more than 500 stores nationwide and about 95,000 employees – would prevent Whole Foods from enforcing a nondiscriminatory and non-retaliatory policy that is supported by legitimate business reasons and which does not implicate Title VII.  Moreover, even if there were some legal basis for the requested relief, it is premature in this case.  While Plaintiffs contend that the policy is enforced inconsistently, Whole Foods disagrees and has presented evidence to the contrary.  Without discovery or an opportunity to question declarants in live testimony (virtually or otherwise), this Court will be unable to evaluate the factual basis for competing positions.  Instead, it is being asked to sit as a

"super-personnel department" to evaluate the wisdom and application of a business policy, in direct contravention of long-standing First Circuit precedent. *See Espinal v. Nat. Grid NE Holdings*, 693 F.3d 31, 35 (1st Cir. 2012)

Plaintiffs cannot establish either a likelihood of success on the merits or, on the record presented, a significant risk of irreparable injury; either of which standing alone is sufficient to warrant a denial of Plaintiffs' motion. Accordingly, the Court should deny the Motion for a Preliminary Injunction in its entirety.

## II.     FACTUAL BACKGROUND

### A.     Defendant Whole Foods Market

Whole Foods is a leading chain of natural and organic food supermarkets, and operates approximately 500 retail stores throughout the United States. Whole Foods has implemented certain minimum, national policies for all of its employees, who are called "Team Members," with addendum policies as may be applicable region-by-region. Smith Decl. ¶¶ 3-4.

#### 1.     Whole Foods' Dress Code Policy And Face Mask Requirement.

Whole Foods does not require its Team Members to wear a specific uniform. *Id.* ¶ 3, Ex. 1. Like many employers, however, Whole Foods has a dress code policy with which Team Members must comply. *Id.* The National Dress Code Policy provides, among other things, that employees' dress at work must comply with the following:

- All employees must wear a Whole-Foods provided apron or jacket over their clothing, as required by their individual team.
- All employees must wear shirts or tops from Whole Foods, its family brands, its vendors/suppliers, or industry-related organizations. Alternatively, employees may wear other shirts or tops **"without any visible slogan, message, logo or advertising on them."**
- Where hats are required, employees must wear only Whole Foods store hats.

*Id.* (emphasis added). The Dress Code Policy is a long-standing feature of Whole Foods' workplace and sets the minimum standards for all stores. *Id.* ¶ 5. However, each Whole Foods

Region has its own dress code policy and guidelines that may vary based on its particular business judgment and needs.  *Id.* ¶¶ 3-4.

To address the COVID-19 pandemic and ensure the health and safety of Team Members and customers, Whole Foods implemented mandatory face mask standard operating procedures, requiring all Team Members to wear a safety face mask throughout the entirety of their shift.  *Id.* ¶ 9.  The standard operating procedures require, as an extension of the Dress Code Policy, that if Team Members opt to bring their own face masks, the masks must adhere to the Dress Code Policy, including its prohibition on "**slogans, logos, or messaging**."  *Id.* ¶ 9 (emphasis added); *see also* Duncan Decl. ¶ 5.

While the National Dress Code Policy applies to all stores and Team Members, Regional and Store Leadership have some discretion to allow for limited store-sponsored events.  Smith Decl. ¶¶ 13-14; Brown Decl. ¶¶ 16-17.  Such limited, case-specific exceptions to the Dress Code Policy typically have included Company or store-sponsored promotional initiatives.  *Id.*  For example, in years past, Whole Foods has allowed Team Members to purchase and wear Whole Foods-branded Pride-themed apparel during Pride Week in June.  Sousa Decl. ¶ 11.  Furthermore, in an effort to build employee morale, some stores have allowed sports jerseys during the limited timeframe of a playoff week.  *Id.* ¶ 12.

> **2.**     **Whole Foods' Enforcement Of Its Dress Code Policy And Corrective Discipline Procedures.**

Whole Foods trains and works with Store Leadership to ensure that they consistently and uniformly enforce the Dress Code Policy and properly address any violations, including by giving Team Members an opportunity to cure violations.  Brown Decl. ¶¶ 10-12.  When store leaders are aware of a violation, they are instructed to notify the Team Member that they are out of compliance, and they work with the Team Member to provide solutions for compliance.  *Id.* ¶

12.  These may include allowing the Team Member to change into spare approved apparel that stores keep on hand for their use (including shirts, hats, and face masks) or allowing the Team Member to go home, change, and return to finish their shift.  *Id.*

Most Team Members immediately take action to comply with the Dress Code Policy when notified of their non-compliance, thus resolving the issue.  *E.g.*, Sousa Decl. ¶ 10.  Team Members who take the necessary steps to correct a dress code violation and comply with the Dress Code Policy do not receive disciplinary action.  *Id.* ¶¶ 7, 10.  However, Team Members who refuse to change their attire may be subject to discipline.  *Id.* ¶ 7.

**B.    Plaintiffs' Wearing Of Noncompliant Face Masks To Work And Refusals To Cure Dress Code Violations.**

The fourteen original Plaintiffs in this action are current and former employees of Whole Foods who worked at five different stores in Massachusetts, California, Washington, and New Hampshire.  Plaintiffs are from a variety of racial backgrounds.  Plaintiffs Kinzer, Berimbau, Shanahan, and Walsh self-identify as White; Plaintiffs Frith, Barry, Tucker-Tolbert, Styles, Greene, and Robinson self-identify as Black; Plaintiffs Juarez and Del Rio Ramirez self-identify as Latinx; and Plaintiff Vuong self-identifies as Asian.[2]  Plaintiffs do not contend that Whole Foods applied its Dress Code Policy against them because of their race, or that Whole Foods applied the policy differently against employees of different races.

Rather, Plaintiffs allege that they have been disciplined for wearing Black Lives Matter face masks ("BLM masks") to work.  The Black Lives Matter Global Network, which owns the website www.blacklivesmatter.com and is the most prominent Black Lives Matter–related organization, states on its website:

---

[2] *See* Dkt. 3-1 ¶ 2; 3-2 ¶ 3; 3-3 ¶ 2; 3-4 ¶ 3; 3-5 ¶ 2; 3-6 ¶ 2; 3-7 ¶ 2; 3-8 ¶ 2; 3-9 ¶ 2; 3-10 ¶ 2; 3-11 ¶ 2; 3-12 ¶ 2; 3-13 ¶ 2.

> Black Lives Matter began as a call to action in response to state-sanctioned
> violence and anti-Black racism. Our intention from the very beginning was to
> connect Black people from all over the world who have a shared desire for justice
> to act together in their communities. The impetus for that commitment was, and
> still is, the rampant and deliberate violence inflicted on us by the state.[3]

The Black Lives Matter Global Network further defines its goals as inclusive of political, societal, and systematic institutional change intended to fight against anti-Black violence.[4]

Plaintiffs wore BLM masks to work to support the BLM movement and were told that the masks violated the Dress Code Policy.[5]  Plaintiffs were told to wear masks that would comply with the Dress Code Policy and would be disciplined if they refused to comply with the Policy.[6] When they chose not to change into compliant masks, they could also choose to leave during their shift and receive disciplinary action for attendance violations.[7]  Plaintiffs who wore BLM masks to multiple shifts and chose to end their shifts early, instead of changing into compliant masks, continued to receive disciplinary action, including the accumulation of attendance violations.[8]  Plaintiff Kinzer was terminated from her employment due to her absences and a no call/no show violation, including instances unrelated to her refusal to wear a mask that complied with the Dress Code Policy.  *See* Dkt. 3-2 ¶¶ 25, 27; Duncan Decl. ¶¶ 12, 14.  Plaintiffs Tucker-Tolbert and Del Rio-Ramirez voluntarily resigned.  Dkt. 3-8 ¶ 11; 3-9 ¶ 18; Fox Decl. ¶ 11, Ex. 1.  The remaining Plaintiffs are current employees.

Plaintiffs admit that they willfully violated the Dress Code Policy by wearing masks with

---

[3] *What We Believe*, Black Lives Matter, https://blacklivesmatter.com/what-we-believe/ (last accessed Aug. 4, 2020).
[4] *Id.* (discussing, *e.g.*, a mission to "eradicate white supremacy and build local power to intervene in violence inflicted on Black communities by the state and vigilantes").
[5] *See* Dkt. 3-1 ¶¶ 6-7; 3-2 ¶¶ 8-9; 3-3 ¶¶ 8-9; 3-4 ¶¶ 6, 9; 3-5 ¶¶ 7-8; 3-6 ¶¶ 6-7, 20; 3-7 ¶¶ 6, 9; 3-8 ¶¶ 5-7; 3-9 ¶¶ 8-9; 3-10 ¶¶ 5-6, 8; 3-11 ¶¶ 5-6; 3-12 ¶¶ 5, 10; 3-13 ¶ 6.
[6] *See* Dkt. 3-3 ¶ 9; 3-5 ¶ 8; 3-7 ¶ 6; 3-9 ¶ 10; 3-10 ¶¶ 6-7; 3-11 ¶ 6; 3-13 ¶ 7.
[7] *See* Dkt. 3-1 ¶ 7; 3-2 ¶¶ 9-10; 3-3 ¶ 9; 3-4 ¶ 15; 3-5 ¶ 8; 3-6 ¶ 7; 3-7 ¶ 7; 3-8 ¶ 9; 3-9 ¶ 10; 3-10 ¶¶ 7-8; 3-11 ¶ 7; 3-13 ¶ 7.
[8] *See* Dkt. 3-1 ¶¶ 14, 16-17; 3-2 ¶¶ 11-12, 20, 22, 25; 3-3 ¶¶ 10-11; 3-4 ¶¶ 15-16; 3-8 ¶ 9; 3-9 ¶ 19; 3-10 ¶¶ 9, 17; 3-13 ¶¶ 7-9.

printed messages on them.  They do not deny that they were notified of their dress code violations and given an opportunity to switch to compliant masks.  All of the Plaintiffs, regardless of their race, reported receiving the same type of response and corrective action to their decisions to wear a BLM mask to work.  No one even claims that "but for their race," they would not have been disciplined.  Rather, the disciplinary action that Plaintiffs received is solely the result of Whole Foods' enforcement of its Dress Code Policy.  Whole Foods has not disciplined Team Members because of their support for Black Lives Matter, and none of the Plaintiffs received discipline for supporting Black Lives Matter outside of work or for reasons that do not otherwise violate company dress code policies.  *See, e.g.*, Brown Decl. ¶ 15; Williford Decl. ¶ 9.  Whole Foods also has prevented other Team Members from wearing non-compliant masks with other types of messages or slogans.  *See, e.g.*, Duncan Decl. ¶ 9; Zito Decl. ¶ 7; Devito Decl. ¶¶ 12-13.

## III.   ARGUMENT

### A.   Plaintiffs Are Not Entitled To Any Relief On A Classwide Basis.

As a preliminary matter, there is no basis to grant Plaintiffs the requested relief on a classwide basis.  Plaintiffs seek an order "enjoin[ing] and restrain[ing]" Whole Foods "from failing to comply with Title VII . . . by selectively disciplining employees for wearing Black Lives Matter masks and messaging."  Dkt. 10.  First, an injunction seeking classwide relief, such as the one requested here, is inappropriate where there is no properly certified class.  *Brown v. Tr. of Boston Univ.*, 891 F.2d 337, 361 (1st Cir. 1989) (vacating injunction against discrimination that extended beyond plaintiff because it was overbroad); *see also S. States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*, No. CV 06-10034-NMG, 2006 WL 8458453, at *2 (D. Mass. Mar. 24, 2006) (denying classwide injunctive relief covering all putative class members because there was no certified class).  Plaintiffs do not represent any certified class,

and, as such, classwide injunctive relief is inappropriate.  Second, the relief Plaintiffs request "is tantamount to an injunction to 'obey the statute,' which the Supreme Court rejected as too broad."  *Brown*, 891 F.2d at 361 (citing *N.L.R.B. v. Express Publ'g Co.*, 312 U.S. 426 (1941)).

**B.      Plaintiffs Cannot Meet Their Extraordinary Burden For Injunctive Relief.**

Plaintiffs ask this Court to issue an emergency preliminary injunction that would: (1) prevent Whole Foods from enforcing its long-standing and lawful employee policies at its stores nationwide; (2) reinstate Kinzer, whom Whole Foods terminated for violating the attendance policy; and (3) "permit" two plaintiffs who resigned voluntarily to return to their jobs.

As the First Circuit has stated, "[a] preliminary injunction is an ***extraordinary and drastic remedy*** that is never awarded as of right."  *Peoples Fed. Sav. Bank*, 672 F.3d at 8-9 (emphasis added).  A plaintiff seeking preliminary injunctive relief "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The likelihood of success and irreparable harm factors weigh most heavily in the analysis.  *See Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006); *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011).  As demonstrated below, Plaintiffs have not established any of the four prerequisites for preliminary injunctive relief, let alone all of them.  Therefore, their Motion for a Preliminary Injunction must be denied.

**C.      Plaintiffs Have Failed To Demonstrate That They Are Likely To Succeed On The Merits Of Their Race-Based Discrimination And Retaliation Claims.**

Plaintiffs have failed to establish a likelihood of success on the merits of their race discrimination and retaliation claims under Title VII.  *First*, Plaintiffs failed to exhaust their administrative remedies with the Equal Employment Opportunity Commission ("EEOC") as they

are required to do before bringing Title VII claims in court, and, accordingly, they have no standing to pursue their claims.  *Second*, Plaintiffs cannot demonstrate a likelihood of success on the merits.  Where, as here, there is no direct evidence of discrimination on account of the race of the plaintiff employees, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See Cherkaoui v. City of Quincy*, 877 F.3d 14, 28 (1st Cir. 2017).  Plaintiffs will not be able to establish a *prima facie* case of discrimination or retaliation, and will not be able to show substantial evidence of pretext to overcome Whole Foods' articulated legitimate, nondiscriminatory reasons for consistently enforcing the Company's Dress Code Policy.

### 1. Plaintiffs Do Not Have Standing To Pursue Their Claims Before Exhausting Their Pre-Filing Requirements With The EEOC.

To have standing to bring a Title VII claim, Plaintiffs must satisfy two key components of administrative exhaustion: (1) the timely filing of a charge with the EEOC, *and* (2) the receipt of a right-to-sue letter from the EEOC.  *Jorge v. Rumsfeld*, 404 F.3d 556, 564 (1st Cir. 2005) ("The employee may commence a civil action against [his] employer if, and only if, the EEOC has dismissed the administrative complaint or has itself failed to begin a civil action within 180 days of the original . . . filing").

As the First Circuit has explained, the administrative exhaustion requirement is crucial because "it gives notice to both the employer and the agency of an alleged violation and affords an opportunity to swiftly and informally take any corrective action necessary to reconcile the violation." *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 31 (1st Cir. 2009).  This also is true in situations where a plaintiff seeks preliminary injunctive relief – upon the filing of an administrative charge, the EEOC is empowered to "bring an action for appropriate temporary or preliminary relief pending final disposition of such charge." *See Bailey v. Delta Air Lines, Inc.*,

722 F.2d 942, 943 (1st Cir. 1983) (quoting 42 U.S.C. § 2000e-5(f)(2)).  As the District of Massachusetts has cautioned, allowing a plaintiff to seek a preliminary injunction before exhausting administrative remedies with the EEOC could potentially force employers to defend simultaneous preliminary injunctions by both the EEOC *and* the private plaintiff, and expose them to inconsistent obligations.  *See Hochstadt v. Worcester Found. For Experimental Biology, Inc.*, 425 F. Supp. 318, 323 (D. Mass. Jan. 5, 1976), *aff'd sub nom*, 545 F.2d 222 (1st Cir. 1976) (warning that allowing plaintiffs to seek injunctive relief before the EEOC has an opportunity to fulfill its administrative obligations will expose employers to a risk of incurring additional or inconsistent obligations if the EEOC also decides to seek preliminary relief).

While some, but not all, Plaintiffs filed a charge with the EEOC, none of them received a "right to sue" letter.  *See* Compl. ¶ 56.  The absence of a right-to-sue letter "effectively bars the courthouse door" to them.  *See Jorge*, 404 F.3d at 564; *Gregory v. YWCA Haverhill, Inc.*, No. CIV. 13-11342-FDS, 2014 WL 3798893, at *2-3 (D. Mass. July 30, 2014) (dismissing Title VII discrimination and retaliation claims where plaintiff failed to produce right-to-sue letter); *Harper v. Melendez*, 2019 WL 6307201, at *2-3 (D. Mass. Nov. 22, 2019) (same).  Any litigation of their claims is premature unless and until Plaintiffs fully exhaust their administrative remedies.

### 2.     Plaintiffs Cannot State A *Prima Facie* Case Of Race Discrimination.

Plaintiffs must first make a *prima facie* case of discrimination by showing that (1) they are members of a protected class; (2) they are qualified for their jobs; (3) the employer took adverse employment action against them; and (4) there is some evidence of a causal connection between their membership in a protected class and the adverse employment action.  *Bhatti v. Trustees of Bos. Univ.*, 659 F.3d 64, 70 (1st Cir. 2011).

a.    *Title VII's Employment Discrimination Laws Do Not Apply To Plaintiffs' Claims.*

Title VII prohibits employers from making employment decisions against an individual "because of" *that* individual's race:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, **because of such individual's race**, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, **because of such individual's race**, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a) (emphasis added).  "Title VII does not concern itself with everything that happens 'because of' [a protected characteristic]" but only imposes liability when employers "fail or refuse to hire," "discharge," or "otherwise . . . discriminate against" someone based on their race. *Bostock*, 140 S. Ct. at 1740.  As the Supreme Court instructed, the relevant inquiry is a "but for" test based on *that* individual's protected status – in this case, race. *Id.* at 1739-40 (explaining that discrimination is when an employer "intentionally treats a person worse *because of* sex [or race]" such as "by firing the person for actions or attributes it would tolerate in an individual *of another* sex [or race]").

Plaintiffs do not allege that Whole Foods is making employment decisions *because of* "such individual's race," nor could they do so truthfully.  On the contrary, Whole Foods has adopted a neutral rule, which Plaintiffs admit is enforced without regard to the race of the Team Members wearing BLM masks.  Accordingly, Plaintiffs cannot establish that Whole Foods' application of its dress code violates Title VII.

b.    *Plaintiffs Were Not Treated Less Favorably Than Employees Outside Their Protected Group.*

Plaintiffs cannot show (and indeed do not even argue) that they were treated less favorably than employees outside their race.  There is no evidence that other non-Black

11

employees who had the same problems with repeated absenteeism, insubordination, or refusal to comply or cure violations of Whole Foods' Dress Code Policy were not disciplined.  Indeed, the very opposite is true.  Plaintiffs' own submitted evidence – that White, Black, Latinx, and Asian employees were disciplined for refusing to comply with Whole Foods' Dress Code Policy – establishes that there was no disparate treatment ***because of*** Plaintiffs' races.  *See Bostock*, 140 S. Ct. at 1739; *see also, e.g.*, *Salamo Martinez v. Celulares Telefonica, Inc*., 272 F. Supp. 2d 144, 151 (D.P.R. 2003) (finding no discrimination where plaintiff "was fired because he contravened established standard company policy" and company fired other employees outside protected class "under identical circumstances"); *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 560 (S.D.N.Y. 2005) (granting employer summary judgment where "the undisputed evidence demonstrates that [manager] has fired white as well as black employees for similar infractions"); *Mathis v. Wachovia*, 509 F. Supp. 2d 1125, 1136-37 (N.D. Fla. 2007) (no race discrimination where a white coworker was less severely disciplined for violating dress code policy, because the coworker changed to comply with the policy upon request, while the plaintiff did not).

### 3. Plaintiffs Cannot State A *Prima Facie* Case Of Retaliation.

To establish a *prima facie* case of retaliation, Plaintiffs must show: (1) they "undertook protected conduct"; (2) they "suffered an adverse employment action"; and (3) "the two were causally linked."  *Cherkaoui*, 877 F.3d at 28.

#### a. *Whole Foods Has A Broad Degree Of Control Over Its Employees' Words And Conduct In The Workplace.*

Plaintiffs' claims are based on their desire to express their support for the Black Lives Matter social movement.  They do not allege that Whole Foods discriminated against or retaliated against Team Members because they are Black, or because they were opposing

unlawful employment discrimination against Black employees.[9]

The wearing of BLM masks presents an issue of speech in the workplace – it does not create a new protected class of individuals under Title VII, *i.e.*, race, gender, religion, wearers of a BLM mask, etc., or a new protected activity.  The Supreme Court repeatedly has held that Title VII does not protect workplace speech about political issues like this, and that private employers like Whole Foods "need a significant degree of control over their employees' words and actions," which is crucial to the employer's objectives in maintaining an efficient and productive work environment.  *See Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).  Accordingly, Plaintiffs have not engaged in any actionable, protected activity by wearing BLM masks.

>    b.    *Plaintiffs' Knowing Violations Of Whole Foods Policy Is Not Protected Activity Under Title VII.*

The EEOC's guidance on Title VII's anti-retaliation provision clearly provides that employees are only engaged in protected activity if they oppose perceived employment discrimination "*in a reasonable manner*," and instructs courts to balance the employee's rights against the employer's need for a stable and productive work environment .[10]  While Title VII does not protect freedom of speech and mask-wearing in this context, even if it did, the First Circuit explained that, "the right to oppose discrimination is not a right to refuse to work on account of discrimination."  *Hazel v. U.S. Postmaster Gen.*, 7 F.3d 1, 4 (1st Cir. 1993) (affirming judgment on plaintiff's retaliation claim where, in opposition to alleged discrimination, the

---

[9] Plaintiffs' reliance on the U.S. Office of Special Counsel's July 14, 2020 opinion letter analyzing the BLM movement under the Hatch Act has no bearing here.  Rather, the letter only finds, for purposes of the Hatch Act, that BLM-related activity is not "***political activity***" that is "directed toward the success or failure of a ***political party, candidate for partisan political office, or partisan political group***."  *See* Dkt. 3-23 (emphasis added).  Indeed, the opinion letter expressly says it relates only to the Hatch Act and is inapplicable regarding any other law.
[10] Enforcement Guidance on Retaliation and Related Issues, EEOC (Aug. 25, 2016) (emphasis added), https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues.

plaintiff failed to report to work).  "[A] plaintiff goes 'beyond the scope of protected opposition'
when he 'damages the basic goals and interests' of the employer, who has a 'legitimate interest
in seeing that its employees perform their work well.'"  *Id.* at 4 (citing *Hochstadt*, 545 F.2d at
233).[11]  As the First Circuit recognized, an employee can continue working under the employer's
conditions "under protest while pursuing his remedies."  *Id.* at 5.  Accordingly, the First Circuit
affirmed the district court's finding that there was no liability for retaliation because the
employer lawfully terminated the plaintiff's employment based on his insubordination, despite
its connection with his purported protected activity.  *Id.* at 4.

Plaintiffs' conduct here fares no better.  Their repeated dress code violations, which are
the direct cause of any disciplinary or adverse actions, are not based on any protected category
(or protected activity) under Title VII.  Rather, they are based on insubordination, absenteeism,
and disruptions to Whole Foods' ability to maintain a stable and productive work environment.
Accordingly, because Plaintiffs have failed to state a *prima facie* case of retaliation, they cannot
show a likelihood of success on this claim.

### 4.      Whole Foods Had Legitimate, Nondiscriminatory Reasons For Its Actions.

Even assuming that Plaintiffs can state a *prima facie* case of race discrimination or
retaliation, which they cannot, Whole Foods has articulated a legitimate nondiscriminatory
business reason for discharging Kinzer and issuing disciplinary notices to the other Plaintiffs for
their policy violations.  Whole Foods' actions were dictated by its facially neutral Dress Code
Policy and corrective discipline procedures, which were applied consistently to all employees

---

[11] *See also Unt v. Aerospace Corp.*, 765 F.2d 1440, 1446 (9th Cir. 1985) ("An employee is not
protected by Title VII when he . . . knowingly disobeys company orders, disrupts the work
environment of his employer, or willfully interferes with the attainment of the employer's
goals.").

regardless of their race.  Plaintiffs' contention that Whole Foods' enforcement of its neutral

policy to employees of different races would be akin to "fir[ing] both members of an interracial

relationship," (Mot. at 12), is wholly misplaced.  Whole Foods has disciplined employees

because of their insistence on wearing non-compliant masks bearing messages, not because of

the race of the employees wearing the masks or their association with Black employees.  Using

Plaintiffs' analogy, the mere fact that two employees happen to be in an interracial relationship

does not insulate them from discipline if they violate company policies.  Indeed, the Supreme

Court's decision in *Bostock* that Plaintiffs cite makes clear that an employer is liable only if it

"discriminates against both men and women ***because of sex***."  Mot. at 12, n.34 (citing *Bostock*,

140 S. Ct. at 1741) (emphasis added).

### 5.    Plaintiffs Cannot Show Evidence Of Pretext.

Finally, Plaintiffs cannot show that Whole Foods's enforcement of its Dress Code Policy

was a pretext for discriminating against employees because of their race.  To defeat Whole

Foods' nondiscriminatory reasons, a plaintiff "has to clear two significant hurdles before [s]he is

able to show pretext."  *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 105 (1st Cir. 2005).  First,

Plaintiffs must refute the clear evidence Whole Foods put forward that it was Plaintiffs' violation

of Whole Foods' policies, continued refusals to comply, and insubordination – and not race –

that constituted the real reasons for the adverse actions.  *Id.*  Second, Plaintiffs "must advance

evidence of [their] *own showing* that [the employer's] asserted reason was a pretext for hiding

discrimination."  *Id.* (emphasis added).  In other words, Plaintiffs must point to evidence from

which a jury could reasonably find that "the reason[s] given . . . were both a sham, but a sham

intended to cover up the employer's real motive."  *Id.*; *Cherkaoui*, 877 F.3d at 27 (plaintiff "must

proffer specific facts . . . to conclude that the employer's reason for [its decision] was a 'sham'

intended to cover up the employer's true motive").  In weighing whether an employer's stated

reason for an adverse action was a pretext for discrimination, a court should "not sit as a super-personnel department that reexamines an entity's business decisions." *Espinal*, 693 F.3d at 35. Instead, a court's role is to determine if the employer "believed in the accuracy of the reason given" for the adverse action. *Id*.

Plaintiffs do not present any evidence showing that Whole Foods' enforcement of its Dress Code Policy is pretext for race discrimination or retaliation. As detailed above, Whole Foods followed its standard procedure for disciplining employees who fail to comply with its Dress Code Policy, and its enforcement of that policy applied equally to all Plaintiffs, regardless of their race. Moreover, Whole Foods' enforcement of the Dress Code Policy does not evidence a "sham" covering up a true motive of discrimination because Whole Foods does not discipline employees for expressing support for the Black Lives Matter movement in ways that do not violate the Dress Code Policy. *See, e.g.*, Dkt. 3-11 ¶ 8; Brown Decl. ¶ 15; Williford Decl. ¶ 9.

### 6.   Plaintiffs Cannot Establish Disparate Impact Based On Their Race.

To the extent that Plaintiffs attempt to assert a disparate impact theory of discrimination, they must demonstrate a "facially neutral 'employment practice[] that *cause[s]* a disparate impact *on the basis of* race' unless those practices are justified by business necessity." *Luceus v. Rhode Island*, 923 F.3d 255, 257 (1st Cir. 2019) (citation omitted) (emphasis added). To show race-based disparate impact, Plaintiffs have the burden to show "there is 'a significant statistical disparity' between the employment outcomes for white and non-white employees." *Id*. (citation omitted). Such statistical evidence must be significant enough "to show that any disparities are unlikely to have occurred by chance.'" *Id.*

Here, Plaintiffs have not offered any evidence showing that Whole Foods' enforcement of its Dress Code Policy and implementation of disciplinary procedures for policy violations have resulted in a "significant statistical disparity" between Black and non-Black employees

16

sufficient to establish a disparate impact claim.  Rather, as Plaintiffs' own evidence

demonstrates, Whole Foods' policies and practices universally impact employees of all races

alike.  Accordingly, any disparate impact claim will fail.  *See id.* at 257-58 (failure "to

demonstrate 'a significant statistical disparity' on the basis of race . . . doom[ed] the disparate

impact claim").  In sum, Plaintiffs failed to show they likely will succeed on the merits of their

race discrimination and retaliation claims, and there is no basis to grant them injunctive relief.

     **D.**    **Plaintiffs Cannot Show Irreparable Injury.**

Irreparable injury exists "[w]here a plaintiff stands to suffer a substantial injury that

cannot adequately be compensated by an end-of-case award of money damages."  *Rosario-Urdaz*

*v. Rivera-Hernandez*, 350 F.3d 219, 222 (1st Cir. 2003) (citation omitted).  As the Supreme

Court has explained:

> The key word in this consideration is *irreparable*.  Mere injuries, however
> substantial, in terms of money, time and energy necessarily expended in the
> absence of a stay are not enough.  The possibility that adequate compensatory or
> other corrective relief will be available at a later date, in the ordinary course of
> litigation, weighs heavily against a claim of irreparable harm.

*Sampson v. Murray*, 415 U.S. 61, 90 (1974).  Here Plaintiffs cannot overcome the well-settled

principle that courts strongly disfavor granting preliminary injunctions in the employment

context, where other statutory remedies, such as back pay and front pay under Title VII, are

available.

     **1.**    **Income And Job Loss Do Not Constitute Irreparable Injury.**

Injunctive relief is rarely available in employment cases, because "the temporary loss of

income, ultimately to be recovered, does not usually constitute irreparable injury."  *Id*. at 90-91.

In their Motion, Plaintiffs assert their fear of loss of income, particularly the current pandemic, as

the basis of their argument that they will suffer irreparable injury.  *See* Mot. at 16-17.

The Supreme Court and the First Circuit, however, unambiguously have held that there can be no irreparable injury from the loss of income alone. *See Sampson*, 415 U.S. at 90-92 & n.68 (holding that "insufficiency of savings" or "difficulties in immediately obtaining other employment" are "external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself"); *Soldevila v. Sec'y of Agric.*, 512 F.2d 427, 430 (1st Cir. 1975) (reversing injunction against employee's termination where financial difficulties, inability to secure other employment, and psychological injury caused by discharge did not constitute irreparable injury). Plaintiffs' reliance on Second and Seventh Circuit and district court decisions that involve extreme circumstances, such as loss of sole businesses that are unrelated to wrongful discharge claims, are inapposite.

Moreover, the suggestion that all of the Plaintiffs are currently suffering financial loss is undermined by the facts. Eleven of the Plaintiffs remain gainfully employed by Whole Foods, and their speculative fear of *potential* future economic loss is insufficient to show irreparable injury. *Winter*, 555 U.S. at 22. Additionally, Plaintiffs Tucker-Tolbert and Del Rio-Ramirez voluntarily resigned from their positions with Whole Foods, and any financial distress they are suffering is attributable to their decision to leave their jobs. The only Plaintiff who was terminated is Kinzer, and her claim of potential financial instability is the type of "common external factor" that affects most discharged employees. *Sampson*, 415 U.S. at 90-91. Thus, Plaintiffs' claims of supposed economic distress are insufficient to establish irreparable injury.

### 2. A Hypothetical "Chilling Effect" On Other Individuals Is Insufficient To Show Irreparable Injury In Retaliation Claims.

Irreparable injury cannot be shown by claiming that a defendant's conduct will have a "chilling effect" on non-parties. *See DeNovellis v. Shalala*, 135 F.3d 58, 64 (1st Cir. 1998) ("It cannot be the rule that irreparable injury may be established simply by bringing a retaliation

claim and then saying that interim relief is necessary to prevent others from being intimidated from contributing to the plaintiff's case or from filing their own claims."). In *DeNovellis*, the First Circuit rejected the plaintiff's claim of irreparable injury based upon the "chilling effect on others who would understand this job action to be in retaliation for her complaints of discrimination." *Id.* at 63. As the Court pointed out, a "chilling effect argument may be made in *every* case alleging retaliation." *Id.* at 64 (emphasis added). But where the highly fact-specific inquiry demonstrates only a "hypothetical" chilling effect, it is "plainly inadequate." *Id.*

Plaintiffs' conclusory assertion that Whole Foods' enforcement of its Dress Code Policy will have a "chilling effect" on other employees' engagement in protected conduct is exactly the type of routine argument that the First Circuit found was "plainly inadequate." Plaintiffs fail to raise anything more than a "hypothetical," theoretical concern. In sum, Plaintiffs have made no showing of *irreparable* injury for their asserted claims of discrimination and retaliation to warrant extraordinary injunctive relief that is rarely available in wrongful termination claims.

### E.    The Balance Of Equities And Public Interest Weigh In Whole Foods' Favor.

Plaintiffs' inability to show irreparable injury or a likelihood of success on the merits of their claim forecloses their right to injunctive relief. However, even an examination of the balance of equities and the public interest show that injunctive relief is improper here. *See Winter*, 555 U.S. at 20 (party seeking preliminary injunction must demonstrate both "that the balance of equities tips in his favor, and that an injunction is in the public interest").

The balance-of-equities factor directs the Court to "balance the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief." *Id*. at 24. Here, given the absence of irreparable injury, the adequate remedies at law, and the lack of merit to Plaintiffs' claims, the balance of equities tips sharply in Whole Foods' favor, and Plaintiffs' demanded injunction fails to serve the public interest. Plaintiffs' request

for a blanket "obey the statute" injunction is disfavored and only would serve to continue to unnecessarily disrupt Whole Foods' business operations and its lawful and *status quo* enforcement of neutral dress code policies.  Plaintiffs' overbroad request to prohibit Whole Foods from enforcing its Dress Code Policy, managing its workforce, and operating its hundreds of stores nationwide will needlessly restrict Whole Foods from running its business and meeting its core purpose of service to customers.  Indeed, Plaintiffs' requested order would require Whole Foods to seek court intervention each time it needed to make a business decision related to a Team Member's non-compliance with the Dress Code Policy.  This type of court micromanagement of a business is untenable and unwarranted under the circumstances.

An injunction preventing Whole Foods from enforcing its Dress Code Policy also would not serve the public interest.  Whole Foods' policies are neutral and intended to be enforced in a neutral manner, regardless of the content of the non-compliant apparel.  The obvious danger of Plaintiffs' request is that Whole Foods likewise would have to permit employees to wear apparel containing messages with opposing viewpoints to the Black Lives Matter movement or any other social or political commentary, that not only would undermine Plaintiffs' objective but would create significant risks and threaten Whole Foods' ability to maintain a safe and respectful environment for its employees and customers.

Accordingly, the balance-of-equities and considerations of the public interest clearly are in Whole Foods' favor.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' Motion for a Preliminary Injunction in its entirety.

Dated: August 4, 2020         WHOLE FOODS MARKET, INC.
By counsel,

/s/ *Sarah J. Butson*

Sarah J. Butson, BBO# 703265
sarah.butson@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, Massachusetts 02119
Telephone: (617) 341-7277
Facsimile: (617) 341-7701

Anne Marie Estevez (*pro hac vice* pending)
annemarie.estevez@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
200 South Biscayne Boulevard, Suite 5300
Miami, Florida 33131
Telephone: (305) 415-3000
Facsimile: (305) 415-3001

Michael L. Banks (*pro hac vice* pending)
Julia S. Sturniolo (*pro hac vice* pending)
michael.banks@morganlewis.com
julia.sturniolo@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001

Terry D. Johnson (*pro hac vice* pending)
terry.johnson@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
502 Carnegie Center
Princeton, New Jersey
Telephone: (609) 919-6600
Facsimile: (609) 919-6701

*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2020, the foregoing document was served on counsel for Plaintiffs via email.  A paper copy will be served by first-class mail to:

Shannon Liss-Riordan
Anastasia Doherty
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116

*Attorneys for Plaintiffs*
