# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUVERINO FRITH, SAVANNAH KINZER, CEDRICK JUAREZ, FAITH WALSH, MACKENZIE SHANAHAN, COREY SAMUEL, JENNIFER OSAYANDE, BRITNEY IFEBOHR, KANAYA RYLAND, KIRBY BURT, LEAVER MICHEL, ABDULAI BARRY, LINDSAY VUONG, SAMANTHA BERIMBAU, SUEPRIYA ADHI, ALICE TISME, CAMILLE TUCKER-TOLBERT, CHARLES THOMPSON, ANA BELÉN DEL RIO-RAMIREZ, CASSIDY VISCO, LYLAH STYLES, KAYLA GREENE, SHARIE ROBINSON, KELLY RIGLER, JUSTINE O'NEILL, SARITA WILSON, and YURIN LONDON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WHOLE FOODS MARKET, INC., and AMAZON.COM, INC. <br><br> Defendants. | Case No. 20-cv-11358 |

# PLAINTIFFS' REPLY IN SUPPORT OF THEIR
# EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

0

I.  **INTRODUCTION**

Whole Foods' Opposition is premised on the argument that its ban on Black Lives Matter ("BLM") apparel, and its discipline of employees who have worn BLM gear to advocate for better treatment of Black employees in the workplace, has *nothing* to do with race.  See Dkt. 18 at 1.  Whole Foods goes so far as to suggest that the company was unaware that its employees' continued insistence on wearing the BLM mask was in opposition to discrimination. E.g., Dkt. 26 ¶ 15.  This suggestion is untrue, see infra pp. 4 & note 10.  This case is not about whether Whole Foods has the right to maintain a facially neutral dress code policy.  Rather, this case focuses on: (1) whether Title VII permits Whole Foods to selectively target, discipline, and terminate Black employees and those who associate with them in advocating for better treatment of Black employees, see 42 U.S.C. § 2000e-2(a)(1); and (2) whether Title VII permits Whole Foods to retaliate against employees who stand in opposition to its discriminatory enforcement of its facially neutral dress code, see 42 U.S.C. § 2000e-3(a).  Title VII plainly forbids this conduct.

Congress has already determined that Whole Foods' ongoing violation of Title VII constitutes irreparable harm, Dkt. 3 at 16, and Plaintiffs' experiences bear this out.  Not only do all the other named plaintiffs and potential class members face the risk of imminent termination if they continue to speak out against discrimination and retaliation by wearing BLM masks, but Plaintiff Kinzer has already been fired for organizing employees at her location to wear the masks, and Plaintiff Evans was fired the day after she joined this action, for the sole infraction of wearing her BLM mask to work.[1]  Plaintiff Kinzer is white and Plaintiff Evans is Black. Kinzer Aff. (Dkt. 3-2) ¶ 3; Evans Aff. ¶ 2. Whole Foods submits that because it has disciplined employees of multiple races for wearing BLM gear, and standing up in support of Black employees, that the company is absolved of any wrongdoing. Dkt. 18 at 2.  But, as the Supreme Court made clear in

---

[1] Supp. Affidavit of Savannah Kinzer ¶¶ 19-20 (Ex. 1); Affidavit of Haley Evans ¶¶ 28-32 (Ex. 2).

Bostock v. Clayton County, Georgia, 140 S. Ct. 1731, 1741 (2020), when an employer fires a man *and* a woman *because* of sex, "[i]nstead of avoiding Title VII exposure, th[e] employer doubles it."  Whole Foods has simply doubled its exposure here.  In defending itself, Whole Foods twists facts, see Part II, and misconstrues the legal arguments, see Part III, by ignoring Plaintiffs' theory of associational discrimination and direct evidence of racial animus and retaliation.  Instead, Whole Foods resorts to a naked policy argument that allowing employees to wear BLM masks will require Whole Foods to allow *any* messaging in the workplace, including for example "All Lives Matter" or "Blue Lives Matter". Dkt. 18 at 2.  However, guidance from the Office of Special Counsel rejects this slippery slope argument.  The federal government has determined that "Black Lives Matter" is not a political statement and thus can be worn by federal employees, whereas statements such as "Make America Great Again" is a political statement that cannot be worn by federal employees.[2]  Thus, lines have and can be drawn.  But, here, the Court is not being asked to decide where the line is to be drawn; having permitted employees to wear other messaging in the workplace with impunity, in violation of its previously laxly enforced dress code, Whole Foods cannot lawfully begin strictly enforcing its dress code because its employees have chosen to speak out against racial discrimination and retaliation against employees who have taken this stand.

      The Court should grant the preliminary injunction.  Whole Foods will not be harmed in the interim and, as Starbucks has shown in its response to similar employee organizing, see Dkt. 3 at 19, could well benefit from its support for racial justice and refraining from retaliating against employees promoting racial justice in the workplace.

---

[2]    Compare *Black Lives Matter and the Hatch Act*, U.S. Office of Special Counsel (dated July 14, 2020) (Dkt. 3-23), with *Clarification of November 27, 2018 email*, U.S. Office of Special Counsel (dated Nov. 30, 2018) (Ex. 3).

## II. SUPPLEMENTAL FACTUAL BACKGROUND[3]

**First**, Whole Foods has *not* consistently enforced its dress code. Contrast Opp. at 4-5.  For years, Whole Foods has allowed its employees to wear various slogans, logos, and messaging, without consequence,[4] including non-sponsored messages of LGBTQ+ support.[5]  Since the onset of the pandemic, Whole Foods has specifically allowed employees to wear masks with various slogans, logos, and messaging, including with local sports team logos (which obviously fall outside "the limited timeframe of a playoff week", Dkt. 18 at 4).[6]

**Second**, only *after* employees began wearing Black Lives Matter masks, did Whole Foods explicitly apply its dress code policy to the facemasks, in order to effectuate the ban on BLM masks and apparel.[7]

---

[3]   Plaintiffs include this section to refute factual inaccuracies and mischaracterizations in the Opposition. Affidavits submitted on reply are routinely allowed when the proffered evidence is responsive to Defendant's submission.  See, e.g., Giglio Sub S.N.C. v. Carnival Corp., 2012 WL 4477504, *2 (S.D. Fla. Sept. 26, 2012). Perkins v. Southern New England Telephone, 669 F.Supp.2d 212, 226-227 (D. Conn. 2009). Further, the facts in this case are quickly developing, as evidenced by Plaintiff Haley Evans being fired only *after* Plaintiffs' motion for a preliminary injunction.  See Evans Aff. ¶¶ 30–31.

[4]   Interestingly, Whole Foods justifies its failure to penalize non-BLM dress code infractions on the ground that they were "accidental"; in making this argument, Whole Foods effectively admits that it has selectively enforced its dress code policy, adjudging non-racial messaging infractions to be innocuous, whereas those that advocate for Black employees (and protest Whole Foods' discriminatory enforcement of its dress code policy) constitute "insubordination." Dkt. 18 at 14; Dkt. 21 ¶ 10, Dkt. 22 ¶ 8, Dkt. 23 ¶ 10, Dkt. 24 ¶ 8, Dkt. 25 ¶ 10 (declarations of Store Leaders).  Indeed, incidents of Whole Foods' lax enforcement of its dress code policy (until employees began wearing BLM apparel) abound. See Affidavit of Corey Samuel ¶¶ 12-14 (Ex. 4); Affidavits of Leavar Michel ¶¶ 14-17 (Ex. 5); Affidavit of Jennifer Osayande ¶ 13 (Ex. 6); Affidavit of Kanaya Ryland ¶ 15 (Ex. 7); Affidavit of Britney Ifebhor ¶ 11 (Ex. 8); Affidavit of Kirby Burt ¶ 18 (Ex. 9) (attesting to wearing "Lock Him Up" pin); Affidavit of Justine O'Neill ¶¶ 12-14 (Ex. 10) (attesting to wearing "Nasty Woman" pin); Affidavit of Kelly Rigler ¶¶ 14-16 (attesting to wearing non-sponsored pins) (Ex. 11); Affidavit of Sarita Wilson ¶ 10 (same) (Ex. 12); Affidavit of Cassidy Visco ¶ 20 (Ex. 13); cf. Affidavit of Alice Tisme ¶¶ 5-8 (Ex. 19).

[5]   E.g., Wilson Aff. ¶ 10 (attesting to being told by store leadership that she could wear her "EQUALITY" rainbow shirt but not her BLM shirt).

[6]   See e.g., Dkt. 3 at 6–7 n.9, 10.  Evans Aff. ¶ 16; Affidavit of Charles Thompson ¶ 23 (Ex. 14) (also attesting to a coworker wearing a mask with the American flag); Affidavit of Yuri London ¶ 18 (Ex. 15) (attesting to coworker wearing mask with writing); Affidavit of Tammi Gindle ¶ 8 (Ex. 16) (attesting to notifying leadership of and wearing her Pride mask for one week without discipline); cf. Affidavit of Suepriya Adhikari ¶ 11 (Ex. 17) (attesting to Whole Foods location allowing security guard to wear a mask with a flag and thin blue line but sending her home for wearing a BLM mask).

[7]   Whole Foods' declarations suggest others, see, e.g., Dkt. 26 at ¶¶ 10–11, but Plaintiffs' affidavits make clear that any "mask" policy was not imposed until *after* the BLM advocacy began. See Dkt. 3-10 ¶ ; Dkt. 3-11 at ¶ 6; Gindle Aff. ¶¶ 7–11 (attesting to wearing non-sponsored Pride mask without discipline the week before Plaintiff Rigler wore her BLM mask).

3

**Third**, Whole Foods' Store Leaders and corporate management _were_ aware that employees were wearing the BLM masks to advocate for better treatment of Black employees at Whole Foods and (subsequently) to oppose discriminatory enforcement of the dress code.  For example, Plaintiffs at the River Street, Cambridge, Massachusetts, and the Seattle, Washington, locations each met with their respective Regional Managers and presented specific demands, such as the release of Whole Foods' racial demographic data and the removal of armed guards, who made Black employees feel uncomfortable and intimidated.[8]  Whole Foods was inevitably aware that employees' insistence on wearing BLM gear _after_ other employees (or they themselves) had been disciplined, was meant to communicate opposition to the discriminatory enforcement of the dress code.  Many Whole Foods employees began wearing the BLM mask after learning of other employees being disciplined[9]; it stretches credulity to think that Whole Foods was unaware that its employees were banding together nationally (or their reasons for doing so).  The media has covered the employees' movement, and reasons for it, extensively. See, e.g., Mot. at 5 n. 11-12.  Further, Store Leaders were _explicitly_ told by employees wearing BLM apparel that they were doing it to protest Whole Foods' discrimination and in order to express support for Black employees; indeed, Store Leaders watched Black employees cry upon being told they were not allowed to wear BLM in the workplace.[10]  Any protestations now from Whole Foods that it is was unaware its employees considered the selective enforcement of the dress code to be discriminatory should be readily dismissed.

---

Further, Whole Foods' declarations namely attest to dress code enforcement in June and July, e.g., near the time of the BLM protests. See, e.g. Dkt. 23 ¶ 12.

[8]   See Kinzer Supp. Aff. ¶¶ 8-10; see Supp. Aff. of Camille Tucker-Tolbert (Ex. 18).

[9]   River Street employees began protesting upon learning of discrimination at the Bedford, New Hampshire, location. See e.g., Dkt. 3-1 ¶ 5; 3-2 ¶¶ 5–6; 3-3 ¶¶ 6–7; Ifebhor Aff. ¶ 5; Michel Aff. ¶ 6.  Additional employees joined the protest after seeing coworkers disciplined. E.g. Osayande Aff. ¶¶ 7–8. Fresh Pond employees joined thereafter. Adhikari Aff. ¶ 5.

[10]  London Aff. ¶ 9-10; Thompson Aff. ¶ 9; Wilson Aff. ¶ 10; Evans Aff. ¶¶ 11-15; see also Kinzer Supp. Aff. ¶¶ 4-7, 12; "Unsatisfactory Work Warning", Suverino Frith, Whole Foods (dated July 14, 2020) (Ex. 20) (Team Leader and Store/Facility Team Leader signing and initialing warning, in which Frith wrote the statement: "I am very disappointed by WFM's decision to discipline me **for supporting my black coworkers**. I received this for several days of being sent home for wearing a black lives matter mask and that is not ok.") (emphasis supplied).

## III. LEGAL ARGUMENT

### A. This Court Has the Authority to Issue the Requested Injunction

District courts are empowered to issue a class-wide injunction based on their inherent equitable powers, when "necessary to forestall harm to putative class members that is likely to transpire before the parties can litigate a motion for class certification". Chhoeun v. Marin, 306 F. Supp. 3d 1147, 1164 (C.D. Cal. 2018) (quoted in Doe v. Trump, 418 F. Supp. 3d 573, 603-04 (D. Or. 2019) (collecting case where class-wide injunctions have issued prior to class certification). At most, this Court need only determine the *likelihood of success* of Plaintiffs in certifying the putative class.[11]

A class-wide preliminary injunction is necessary here because Plaintiffs *and potential class members* face immediate risk of termination, making cases cited by Whole Foods inapposite.[12] Further, the putative class cannot await a delay pending investigation by the EEOC. Already two Plaintiffs have been fired since this action was initiated, and potentially dozens more Whole Foods employees risk termination or constructive discharge if Plaintiffs are made to wait for the EEOC to issue a right to sue letter (or, alternatively, Plaintiffs and potential class members will be required to stop engaging in legally protected activity in order to save their jobs). Under these circumstances, this Court can and should exercise its equitable power to prevent

---

[11]   Whole Foods fails to distinguish between Rule 23(b)(2) and Rule 23(b)(3) classes, apparently assuming this action only seeks the latter. However, as Plaintiffs' papers make clear, a Rule 23(b)(2) class may well be most appropriate here because Plaintiffs "seek chiefly injunctive relief." Donovan v. Philip Morris USA, Inc. 268 F.R.D. 1, 26-27 (D. Mass. 2020). Rule 23(b)(2) classes lend themselves more easily to injunctive relief prior to class certification. See Gomes v. DHS, 2020 WL 2113642 (D.N.H. May 4, 2020) (provisionally certifying Rule 23(b)(2) class as a form of preliminary and emergency relief). Due to space limitations, Plaintiffs will not address each of the Rule 23 factors but contend that the Court can readily discern from the record that class certification is likely here to challenge a policy that Plaintiffs have shown is being enforced at stores across the country and which Plaintiffs have already adduced significant evidence to show is being enforced in a discriminatory and retaliatory manner.

[12]   In Brown v. Trustees of Bos. Univ., 891 F.2d 337 (1st Cir. 1989), the injunction was overturned as overbroad because "[Plaintiff's] case established that she alone had been the victim of sex discrimination." Id. In contrast here, affidavits establish that Plaintiffs *and* other Whole Foods employees have been subject to Whole Foods' discriminatory and retaliatory policy. See, e.g. Rigler Aff. ¶ 6. Likewise, S. States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc., 2006 WL 8458453, at *2 (D. Mass. Mar. 24, 2006), is inapposite because there the court *did* order immediate relief requiring the defendant to "send correspondence to all of their 'non-responsive customers'" (e.g. putative class members) notifying them of the product's deficiencies), which partially obviated the relief that plaintiffs sought. Id., at *2.

irreparable harm to Plaintiffs and other Whole Foods employees wearing BLM apparel without awaiting issuance of right-to-sue letters. Compare Bailey v. Delta Air Lines, Inc., 722 F.2d 942, 944 (1st Cir. 1983); with Jorge v. Rumsfeld, 404 F.3d 556, 564-65 (1st Cir. 2005) (holding "a plaintiff's *unexcused* failure to exhaust administrative remedies effectively bars the courthouse door", where the plaintiff failed to file an EEOC charge citing Title VII, brought suit three years late, and did not seek a preliminary injunction).[13]

### B. Plaintiffs Have Established the Four Factors Required for a Preliminary Injunction

**First**, Plaintiffs have established a likelihood of success on the merits. Plaintiffs assert retaliation, as well as discrimination and associational discrimination, under Title VII. Associational discrimination protects "individuals who, though not members of a protected class, are 'victims of discriminatory animus toward [protected] third persons with whom the individuals associate." Barrett v. Whirlpool Corp., 556 F.3d 502, 512 (6th Cir. 2009) (quoting Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc., 173 F.3d 988, 994 (6th Cir.1999)); Persson v. Boston University, 2019 WL 917205 at *11 (D. Mass. Feb. 25, 2019) (citing Barrett). Here, Whole Foods is disciplining (and terminating) Black and non-Black employees alike based on its discriminatory animus towards Black employees, which Plaintiffs have presented *direct evidence* of, in the form of affidavits attesting to Whole Foods targeted enforcement of its dress code policy to silence the BLM message in the workplace.[14] This Court need not "sit as a super-personnel department" to determine that Whole Foods is using the dress code as a

---

[13] Whole Foods' citations to Gregory v. YWCA Haverhill, Inc., 2014 WL 3798893, at *2-3 (D. Mass. July 30, 2014), and Harper v. Melendez, 2019 WL 6307201, at *2-3 (D. Mass. Nov. 22, 2019), are inapposite, as neither case included a request for preliminary injunctive relief.

[14] Whole Foods ignores the direct evidence of race discrimination and retaliation and analyzes this case under McDonnell-Douglas burden-shifting. Even if the Court were to use this framework, Plaintiffs have clearly established a prima facie case. Dkt. 3 at 8-11 & n. 24. While Whole Foods claims that its dress code is a non-discriminatory reason for its actions, Plaintiffs have established likelihood of proving pretext through their extensive evidence that Whole Foods has not strictly enforced its dress code policy when employees have worn other messages (even political messages and messages of support for other groups, e.g. LGBTQ+ employees).

cover to punish BLM advocacy.[15]  **Second**, Plaintiffs will face irreparable harm risking imminent termination based on racial animus and retaliation, during a global pandemic. Sampson v. Murray, 415 U.S. 61, 92 n. 68 (1974).[16]  Further, Plaintiffs have *attested to* (not hypothesized, contra Dkt. 18 at 18) a chilling effect on potential class members, as a number of employees have removed their masks in order to stay at work, earn wages, and avoid being fired.[17]  Plaintiffs have also amply demonstrated that the **third** and **fourth** factors weigh in their favor.  Whole Foods argues that an injunction would "restrict Whole Foods from running its business", Dkt 18 at 20, but this assertion is dispelled by the fact that Whole Foods has heretofore run its business with minimal enforcement of its dress code and its ban on the BLM mask has actually impaired its business, even leading to calls from customers to boycott the company.  See, e.g., Dkt. 3-20.  The public interest plainly favors enjoining Whole Foods' unlawful attempt to suppress a nationwide coalition of employees from advocating for racial equity and expressing support for Black employees.

## IV. CONCLUSION

For the reasons stated herein, this Court should grant Plaintiffs' motion.

---

[15]    In Espinal v. Nat. Grid NE Holdings, 693 F.3d 31, 35 (1st Cir. 2012), the Plaintiff had failed to respond to on-call pages and alleged his punishment for this failure was racially motivated (because others went unpunished).  The court found that "[f]ailure to respond to reported gas leaks, as [Plaintiff's] job required, is a serious matter, with considerable public safety ramifications," and refused to consider the reason pretext. Id. at 35-36.  It is absurd to argue that Whole Foods believed that Plaintiffs' BLM masks similar impaired their ability to work.
    In Hazel v. U.S. Postmaster Gen., 7 F.3d 1, 3-4 (1st Cir. 1993), the First Circuit determined that the plaintiffs – who never *attempted* to report to work after reassignment – had gone "beyond the scope of protected opposition". Id. at 4 (quoting Hochstadt v. Worcester Foundation for Experimental Biology, 545 F.2d 222, 233 (1st Cir.1976)).  In contrast, here, Plaintiffs have shown up to Whole Foods ready to work.

[16]    "We recognize that cases may arise in which the circumstances surrounding an employee's discharge, together with the resultant effect on the employee, may so far depart from the normal situation that irreparable injury might be found… [W]e do not wish to be understood as foreclosing relief in the genuinely extraordinary situation." 415 U.S. at 92 n. 68.

[17]    E.g., Rigler Aff. ¶ 6; Gindle Aff. ¶ 21. In DeNovellis v. Shalala, 135 F.3d 58, 64 (1st Cir. 1998), the First Circuit simply rejected Plaintiff "basically arguing for a per se rule that a conclusory assertion made by the plaintiff for the first time in appellate briefs is sufficient to establish a chilling effect and to obtain injunctive relief. ***We reject that notion and the notion that plaintiff need adduce no evidence on this point***. This is not to say that a retaliation claim may never give rise to a showing of irreparable injury, but only that it is a highly fact specific inquiry." Id. at 64 (footnote omitted) (emphasis supplied).  Plaintiffs have made that factual showing here.

Dated: August 11, 2020

        Respectfully submitted,

        SUVERINO FRITH, SAVANNAH KINZER, CEDRICK JUAREZ, FAITH WALSH, MACKENZIE SHANAHAN, COREY SAMUEL, JENNIFER OSAYANDE, BRITNEY IFEBOHR, KANAYA RYLAND, KIRBY BURT, LEAVER MICHEL, ABDULAI BARRY, LINDSAY VUONG, SAMANTHA BERIMBAU, SUEPRIYA ADHI, ALICE TISME, CAMILLE TUCKER-TOLBERT, CHARLES THOMPSON, ANA BELÉN DEL RIO-RAMIREZ, CASSIDY VISCO, LYLAH STYLES, KAYLA GREENE, SHARIE ROBINSON, KELLY RIGLER, JUSTINE O'NEILL, SARITA WILSON, and YURIN LONDON, individually and on behalf of all others similarly situated,

        By their attorneys,

        /s/ Shannon Liss-Riordan
        Shannon Liss-Riordan, BBO #640716
        Anastasia Doherty, BBO #705288
        LICHTEN & LISS-RIORDAN, P.C.
        729 Boylston Street, Suite 2000
        Boston, MA 02116
        (617) 994-5800
        Email: sliss@llrlaw.com, adoherty@llrlaw.com

## CERTIFICATE OF SERVICE

I, Shannon Liss-Riordan, hereby certify that a copy of this document has been served with counsel of record for Defendant Whole Foods Market, Inc., via electronic filing on August 11, 2020, and that a copy of the foregoing will be imminently served on Defendant Amazon.com, Inc.

        */s/ Shannon Liss-Riordan*
        Shannon Liss-Riordan, Esq