# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUVERINO FRITH, SAVANNAH KINZER, CEDRICK JUAREZ, FAITH WALSH, MACKENZIE SHANAHAN, COREY SAMUEL, JENNIFER OSAYANDE, BRITNEY IFEBOHR, KANAYA RYLAND, KIRBY BURT, LEAVER MICHEL, ABDULAI BARRY, LINDSAY VUONG, SAMANTHA BERIMBAU, SUEPRIYA ADHI, ALICE TISME, CAMILLE TUCKER-TOLBERT, CHARLES THOMPSON, ANA BELÉN DEL RIO-RAMIREZ, LYLAH STYLES, KAYLA GREENE, SHARIE ROBINSON, KELLY RIGLER, JUSTINE O'NEILL, SARITA WILSON, and YURIN LONDON, individually and on behalf of all others similarly situated, | CIVIL ACTION NO. 1:20-cv-11358-ADB |

      Plaintiffs,

v.

WHOLE FOODS MARKET, INC. and
AMAZON.COM, INC.,

                        Defendants.

# DEFENDANT WHOLE FOODS MARKET, INC.'S MEMORANDUM OF LAW
# IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS'
# <u>AMENDED CLASS ACTION COMPLAINT</u>

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS AND PROCEDURAL BACKGROUND........................... 3

    A.   The Parties ................................................................................................ 3

    B.   Whole Foods' Dress Code Policy Prohibiting Outside Slogans, Messages, Logos, Or Advertising On Work Apparel.   .................................................. 3

    C.   Plaintiffs' Wearing Of Noncompliant Face Masks To Work And Whole Foods' Neutral Enforcement Of Its Dress Code Policy.   .................................... 3

    D.   Relevant Procedural Background ................................................................ 4

III.  ARGUMENT ...................................................................................................... 4

    A.   The Court Should Dismiss The Complaint Because Plaintiffs Have Failed To Exhaust Their Administrative Remedies And Thus Cannot Pursue Their Title VII Claims In Court.   .......................................................... 4

    B.   Plaintiffs Have Failed To Allege Any Cognizable Title VII Discrimination or Retaliation Claims.   ........................................................................... 5

        1.   Title VII Prohibits Employment Discrimination, Not Dress Code Policies ...................................................................................... 6

            a.   Plaintiffs fail to allege any disparate treatment or impact related to race ............................................................ 7

            b.   Plaintiffs cannot maintain an associational discrimination claim .................................................................................. 10

        2.   Plaintiffs Have Failed to Allege Cognizable Claims for Retaliation ....... 11

            a.   Engaging in speech about social injustice or other political issues does not constitute protected activity under Title VII....... 11

            b.   Knowingly violating Whole Foods' policy does not constitute protected activity under Title VII............................... 14

IV.   CONCLUSION................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................6

*Bostock v. Clayton City, Georgia*,
    140 S. Ct. 1731 (2020).............................................................................7

*Cherkaoui v. City of Quincy*,
    877 F.3d 14 (1st Cir. 2017).....................................................................11

*Dixon v. Bryson*,
    No. 4:10-CV-00072-SEB, 2013 WL 1137506 (S.D. Ind. Mar. 18, 2013)................8

*Dixon v. Pritzker*,
    560 F. App'x 592 (7th Cir. 2014) ............................................................8

*EEOC v. Steamship Clerks Union, Local 1066*,
    48 F.3d 594 (1st Cir. 1995).....................................................................8, 9

*Franceschi v. U.S. Dept. of Veteran Affairs*,
    514 F.3d 81 (1st Cir. 2008).....................................................................5

*Gallo v. W.B. Mason Co.*,
    No. CIV.A. 10-10618-RWZ, 2010 WL 4721064 (D. Mass. Nov. 15, 2010) ................10, 11

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006).................................................................................12

*Gregory v. YWCA Haverhill, Inc.*,
    No. CIV. 13-11342-FDS, 2014 WL 3798893 (D. Mass. July 30, 2014)..................5

*Harper v. Melendez*,
    2019 WL 6307201 (D. Mass. Nov. 22, 2019) .........................................5

*Hazel v. U.S. Postmaster Gen.*,
    7 F.3d 1 (1st Cir. 1993)...........................................................................14, 15

*Hochstadt v. Worcester Foundation for Experimental Biology*,
    545 F.2d 222 (1st Cir. 1976)...................................................................14

*Jorge v. Rumsfeld*,
    404 F.3d 556 (1st Cir. 2005)............................................................4, 5

*Mercedes v. Holder*,
    No. 13-CV-12043-LTS, 2014 WL 2998988 (D. Mass. July 1, 2014) ....................................14

*Mompoint v. Dep't of Elementary & Secondary Educ.*,
    No. 18-CV-11094-DJC, 2019 WL 1921631 (D. Mass. Apr. 30, 2019).....................................9

*Ngomba v. Olee*,
    2019 WL 1119588 (D. Mass. Mar. 11, 2019)...........................................................5

*Ocasio-Hernandez v. Fortuno-Burset*,
    640 F.3d 1 (1st Cir. 2011)...........................................................................6

*Oliveras-Sifre v. Puerto Rico Dept. of Health*,
    214 F.3d 23 (1st Cir. 2000)........................................................................11

*Otero-Garcia v. Puerto Rico*,
    No. CV 06-1200 (SEC), 2007 WL 9761401 (D.P.R. June 27, 2007).....................................10

*Ray v. Ropes & Gray LLP*,
    961 F. Supp. 2d 344 (D. Mass. 2013), aff'd, 799 F.3d 99 (1st Cir. 2015)............................13

*Rodriguez v. United States*,
    852 F.3d 67 (1st Cir. 2017)........................................................................5

*Unt v. Aerospace Corp.*,
    765 F.2d 1440 (9th Cir. 1985) .....................................................................14

*Wong v. Resolve Tech.*,
    Civ. A. No. 10-11642-DJC, 2011 WL 3157198 (D. Mass. July 25, 2011) ...............................9

**STATUTES**

42 U.S.C. § 2000e-2(a) ...............................................................................6, 7

42 U.S.C. § 2000e-2(k) ................................................................................8

42 U.S.C. § 2000e-3(a) ...............................................................................13

F.R.C.P. 12(b)(6) .....................................................................................5

**OTHER AUTHORITIES**

https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-
    related-issues....................................................................................14

I.     **INTRODUCTION**

Plaintiffs are current or former employees of Defendant Whole Foods Market, Inc.[1] ("Defendant," "Whole Foods," or "the Company").[2]  They contend that Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits Whole Foods from enforcing a facially-neutral dress code policy.  Specifically, they complain that the policy interferes with the desire of some employees to express support for Black Lives Matter.  Plaintiffs wrongfully presume that Title VII, which addresses discrimination on account of an employee's race, entitles them to display messages on their masks or clothing in the workplace.  Their claims fail for two reasons.

First, Plaintiffs acknowledge in their Amended Complaint that they failed to exhaust their administrative remedies with the U.S. Equal Employment Opportunity Commission ("EEOC") by filing charges of discrimination and receiving "right to sue" letters before commencing this civil lawsuit.  In fact, most of the named Plaintiffs do not allege they have filed any charges of discrimination.  Title VII, however, authorizes private litigation only by complainants who have exhausted the mandatory administrative process.  Plaintiffs' failure to receive "right to sue" letters and in some instances even to invoke the administrative process precludes them from pursuing claims before this Court.

Second, Plaintiffs fail to state a cognizable claim for relief.  According to Plaintiffs, they intentionally violated Whole Foods' dress code policy in order to express support for the Black Lives Matter movement.  But Title VII does not provide a platform for socially-conscious speech.  On the contrary, the statute prohibits discrimination against an employee on account of

---

[1]     For the purposes of this Motion only, Plaintiffs' well-pled allegations are accepted as true, but Plaintiffs incorrectly named Whole Foods Market, Inc. as a defendant in this case.  That entity did not employ any of the Plaintiffs.

[2]     Defendant Amazon.com, Inc. ("Amazon") has not been served with the Summons or Complaint.  Claims against Amazon, therefore, are not addressed in the instant Motion.

his or her race.  That is not what Plaintiffs are alleging.  They acknowledge that the dress code

was uniformly enforced as to both Black and non-Black employees, and they do not aver that

any employment decisions were based on the race of the employee wearing any particular

clothing item.  Thus, their discrimination claim fails as a matter of law.

Any attempt by Plaintiffs to rely on a theory of "associational" discrimination – *i.e.*, that

Plaintiffs were subjected to discrimination because they associated with Black employees – fares

no better.  Legitimate associational discrimination claims are premised upon allegations that an

employee was subjected to discrimination because of his or her association with someone from

another racial group.  Plaintiffs do not allege, however, that they were mistreated because of their

association with members of a different racial group.  Rather, they contend that they were

subjected to discipline because of their identification with a cause that is supported by many

people of different races, including co-workers.

The question posed by this Motion and in this case generally is not whether support for

Black Lives Matter is important and laudable.  It is, as Whole Foods has recognized publicly.

The question is whether Title VII nullifies a facially neutral dress code policy that prohibits the

wearing of slogans and messages on clothing in the workplace, regardless of the social utility

underlying those messages.  The answer to that question is simple and easily discerned from the

plain language of the statute and controlling case law.

For these reasons, as set forth in greater detail below, Defendants' Motion should be

granted and the Amended Complaint dismissed in its entirety.

## II.    STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

### A.    The Parties

Whole Foods is a leading chain of natural and organic food supermarkets, and operates approximately 500 retail stores throughout the United States.  *See* Compl. ¶ 36.

Plaintiffs, with the exception of Alice Tisme, are alleged to be current or former employees of Whole Foods who worked at stores in Massachusetts, California, Washington, New Hampshire, Pennsylvania, New Jersey, Virginia, Georgia, or Indiana.  *Id.* ¶¶ 7-34.  The Complaint does not allege Plaintiffs' races, but it is apparent from declarations filed in support of the preliminary injunction motion that the case is brought by Black, White, Asian and Latinx employees.[3]

### B.    Whole Foods' Dress Code Policy Prohibiting Outside Slogans, Messages, Logos, Or Advertising On Work Apparel.

Whole Foods has a dress code policy for employees ("Team Members") who work in its stores.  *Id.* ¶ 42.  The policy prohibits Team Members from wearing masks and clothing with visible slogans, messages, logos, or advertising that are not related to Whole Foods.  *Id.*

### C.    Plaintiffs' Wearing Of Noncompliant Face Masks To Work And Whole Foods' Neutral Enforcement Of Its Dress Code Policy.

Plaintiffs allege that they were disciplined for wearing Black Lives Matter face masks ("BLM masks") or other apparel in the stores where they worked.  *Id.* ¶ 53.  They contend that their managers told them that the apparel violated Whole Foods' dress code policy, and asked them to change their masks.  *Id.* ¶¶ 57, 60-62.  When Plaintiffs refused, they received progressive disciplinary action, including "points" on their records for each dress code violation.  *Id.* ¶¶ 54,

---

[3]    According to Plaintiffs' affidavits submitted in support of their emergency motion for a preliminary injunction, the named Plaintiffs in the originally-filed complaint come from a variety of racial backgrounds, including White, Black, Latinx, and Asian.  *See* Dkt. No. 3-1 ¶ 2; 3-2 ¶ 3; 3-3 ¶ 2; 3-4 ¶ 3; 3-5 ¶ 2; 3-6 ¶ 2; 3-7 ¶ 2; 3-8 ¶ 2; 3-9 ¶ 2; 3-10 ¶ 2; 3-11 ¶ 2; 3-12 ¶ 2; 3-13 ¶ 2.

56-64.  Some of the Plaintiffs ignored the instructions and continued to wear non-compliant

masks, and were therefore subjected to progressive disciplinary action or an accumulation of

additional "points."  *Id.* ¶ 53, 55, 57, 59, 61.  Plaintiff Kinzer's employment was terminated due

to an accumulation of disciplinary "points," including points that were unrelated to her wearing a

BLM mask.  *Id.* ¶ 75.

> **D.**     **Relevant Procedural Background.**

Plaintiffs Frith, Kinzer, Del-Rio Ramirez, and Tucker-Tolbert filed administrative

charges of discrimination with the EEOC alleging race discrimination and retaliation in violation

of Title VII.  *Id.* ¶ 84.  No other Plaintiffs are alleged to have filed a charge with the EEOC.  The

EEOC has not acted on the charges of discrimination, let alone issued "right to sue" letters

authorizing Frith, Kinzer, Del-Rio Ramirez and Tucker-Tolbert to file civil actions.

Nevertheless, on July 20, 2020, Plaintiffs filed a putative class action complaint against Whole

Foods.  *See* Dkt Nos. 1-3.  On July 31, 2020, Plaintiffs filed an Amended Complaint, adding new

Plaintiffs and naming Amazon as a defendant.  Dkt No. 11.  Plaintiffs concede that, at the time

they filed their initial and amended pleadings, none of them had received a right-to-sue letter

from the EEOC.  Compl. ¶ 84.

## III.     ARGUMENT

> **A.**     **The Court Should Dismiss The Complaint Because Plaintiffs Have Failed To Exhaust Their Administrative Remedies And Thus Cannot Pursue Their Title VII Claims In Court.**

Plaintiffs failed to exhaust their administrative remedies before the EEOC, and, therefore,

cannot pursue their Title VII claims before this Court.  "[J]udicial recourse under Title VII . . . is

not a remedy of first resort."  *Jorge v. Rumsfeld*, 404 F.3d 556, 564 (1st Cir. 2005) (internal

quotation marks omitted).  "The First Circuit has repeatedly held that 'a federal court will not

entertain employment discrimination claims brought under Title VII unless administrative

remedies have first been exhausted.'" *Ngomba v. Olee*, No. 18-11352-MPK, 2019 WL 1119588,

at *2 (D. Mass. Mar. 11, 2019) (quoting *Rodriguez v. United States*, 852 F.3d 67, 78 (1st Cir.

2017)).  Administrative exhaustion requires ***both*** (1) the timely filing of a charge with the EEOC,

and (2) the receipt of a right-to-sue letter.  *See Jorge*, 404 F.3d at 564 ("The employee may

commence a civil action against [his] employer if, and only if, the EEOC has dismissed the

administrative complaint or has itself failed to begin a civil action within 180 days of the original

. . . filing").

     According to the Complaint, only 4 of the 28 named Plaintiffs have filed an

administrative charge with the EEOC, and ***none*** received a right-to-sue letter.  *See* Compl. ¶ 84.

The absence of a right-to-sue letter "bars the courthouse door" to them.  *See Jorge*, 404 F.3d at

564; *Gregory v. YWCA Haverhill, Inc.*, No. CIV. 13-11342-FDS, 2014 WL 3798893, at *2-3 (D.

Mass. July 30, 2014) (dismissing Title VII discrimination and retaliation claims where plaintiff

failed to produce right-to-sue letter); *Harper v. Melendez*, No. 18-12137-FDS, 2019 WL

6307201, at *2-3 (D. Mass. Nov. 22, 2019) (same).  Further, because Plaintiffs have failed to

exhaust their administrative remedies with respect to their discrimination claim, any retaliation

claim based on their filing of an EEOC charge also must be dismissed.  *See Franceschi v. U.S.

Dept. of Veteran Affairs*, 514 F.3d 81, 87 (1st Cir. 2008) (holding that where "administrative

remedies have not been exhausted with respect to any of the other Title VII claims . . . there is

nothing properly before the court to which the retaliation claim may be bootstrapped" to avoid

dismissal).

**B.**     **Plaintiffs Have Failed To Allege Any Cognizable Title VII Discrimination or Retaliation Claims.**

     Plaintiffs have not asserted cognizable Title VII discrimination or retaliation claims.

Under Rule 12(b)(6), the Court must dismiss a pleading that fails to set forth "enough facts to

state a claim [for] relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Ashcroft*, 556 U.S. at 679.

### 1.    *Title VII Prohibits Employment Discrimination, Not Dress Code Policies.*

Title VII prohibits an employer from taking action against an individual "because of" that individual's race.  42 U.S.C. § 2000e-2(a).  Plaintiffs, who are of different races, do not contend that they were subjected to discipline or discharge because of their race, or that Whole Foods applied its dress code differently based on the race of the employees wearing masks.  Instead, Plaintiffs aver that (1) they were discriminated against and disparately treated for showing support for the BLM movement, and that (2) Whole Foods' facially neutral dress code somehow adversely impacted other, unidentified Black employees.  *See* Compl., Count I (alleging that compliance with "Whole Foods' policy . . . constitutes unlawful discrimination based on race, because the policy has both adversely affected Black employees and it has singled out for disfavored treatment advocacy and expression of support for Black employees").  As discussed below, this is plainly insufficient to state a Title VII claim.

### a.   Plaintiffs fail to allege any disparate treatment or impact related to race.

Title VII prohibits employers from making employment decisions against an individual "because of" *that* individual's race:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, ***because of such individual's race***, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, ***because of such individual's race***, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a) (emphasis added).   The statutory focus is squarely on the individual's protected characteristic.

Less than two months ago, the Supreme Court held in *Bostock v. Clayton City, Georgia*, 140 S.Ct. 1731, 1739-40 (2020) that Title VII must be interpreted based on the plain words of the statute, and that the prohibitions mean no more, and no less, than as stated in the text.   As the Court explained, employment discrimination is when an employer "intentionally treats a person worse *because of* sex [or race]" such as "by firing the person for actions or attributes it would tolerate in an individual *of another* sex [or race]." *Id.*   The Court emphasized that the statute is quite clear:

> It tells us three times—including immediately after the words "discriminate against"—that our focus should be on individuals, not groups: Employers may not "fail or refuse to hire or . . . discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." §2000e–2(a)(1) (emphasis added).   And the meaning of "individual" was as uncontroversial in 1964 as it is today: "A particular being as distinguished from a class, species, or collection." Webster's New International Dictionary, at 1267.

*Id.* at 1740.

Similarly, actionable disparate impact claims must involve discrimination "on the basis of" the plaintiff's race (or another protected characteristic):

> (1) (A) An unlawful employment practice based on disparate impact is established under this subchapter only if-
>
>> (i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact *on the basis of race*, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity;

42 U.S.C. § 2000e-2(k) (emphasis added); *EEOC v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 601 (1st Cir. 1995) (recognizing that to maintain a disparate impact claim, "plaintiff must demonstrate a disparate impact on a group characteristic, such as race, that falls within the protective ambit of Title VII"); *Dixon v. Bryson*, No. 4:10-CV-00072-SEB, 2013 WL 1137506, at *11 (S.D. Ind. Mar. 18, 2013) ("A plaintiff must be a member of the protected class before he can bring a disparate impact claim."), aff'd sub nom. *Dixon v. Pritzker*, 560 F. App'x 592 (7th Cir. 2014).

Plaintiffs do not allege that Whole Foods disciplined them "because of" *their race*, or that any policy or decision adversely impacted any employee "on the basis" of that person's race.  On the contrary, the Complaint does not even identify the race of the Plaintiffs.  Instead, the claims are based on Plaintiffs' desire to wear a slogan on their masks, and their belief that Whole Foods should allow this kind of expression.  Plaintiffs candidly admit that Whole Foods applies its policy without regard to the race of the employees seeking to convey their messages.  They state that "many Black Whole Foods employees *and their non-Black coworkers* began wearing masks with the message Black Lives Matter," and that by enforcing Whole Foods' dress code, the Company is "discriminating against Black employees *and other employees* for showing support of Black employees."  Compl. ¶¶ 4, 49 (emphasis added).  Notably, their proposed class

consists of all employees who wore Black Lives Matter masks at work, again, without regard to the race of the employees:

> [A]ll Whole Foods and Amazon employees who have been subjected to Whole Foods' and Amazon's policy of not allowing employees to wear Black Lives Matter masks while working at Whole Foods locations, including employees who have been disciplined or subject to adverse employment action for wearing the masks or for opposing Whole Foods' and Amazon's practice of disciplining employees for wearing Black Lives Matter masks.

*Id.* ¶ 82.

Plaintiffs attempt to overcome this shortcoming by alleging that the Whole Foods facially neutral policy was not consistently enforced, and that in some instances, employees were allowed to wear non-conforming articles of clothing. Yet again, however, they do not aver that the policy was enforced differently *because of* the race of the affected employees, or enforced *more* stringently against Black employees. *See Mompoint v. Dep't of Elementary & Secondary Educ.*, No. 18-CV-11094-DJC, 2019 WL 1921631, at *3 (D. Mass. Apr. 30, 2019) (recognizing that to allege a *prima facie* case of disparate impact under Title VII, "a plaintiff must demonstrate a disparate impact on a group characteristic, such as race, that falls within the protective ambit of Title VII," and that "the employee is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities" (internal quotation marks omitted)); *EEOC v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 601 (1st Cir. 1995) (same).

Simply stated, the Complaint is devoid of any facts suggesting that Plaintiffs were treated adversely "because of" or "on the basis of" their race. Therefore, the case should be dismissed. *See Mompoint*, 2019 WL 1921631, at *3 (granting motion to dismiss Title VII discrimination because complaint failed to "'pinpoint" a policy or practice that has a disparate impact on black employees or job applicants"); *Wong v. Resolve Tech.*, No. 10-11642-DJC, 2011 WL 3157198,

at *8 (D. Mass. July 25, 2011) (same where plaintiff failed to identify a practice that had a

disparate impact on a particular class); *Otero-Garcia v. Puerto Rico*, No. CV 06-1200 (SEC),

2007 WL 9761401, at *3 (D.P.R. June 27, 2007) (dismissing disparate treatment claim because

plaintiff failed to allege discrimination on basis of protected characteristic and instead contained

"allegations of political discrimination," which did "not state a claim for relief under Title VII").

>     **b.      Plaintiffs cannot maintain an associational discrimination claim.**

Any attempt by Plaintiffs to salvage their disparate treatment claim by couching it as a

claim for "associational" discrimination also fails.  Such claims are actionable "when a person of

one race associates with third persons of another race and is therefore subjected to discriminatory

animus."  *Gallo v. W.B. Mason Co.*, No. CIV.A. 10-10618-RWZ, 2010 WL 4721064, at *1 (D.

Mass. Nov. 15, 2010).  Under those circumstances, the alleged "conduct falls within Title VII's

prohibition of racial discrimination because the difference in race between the Title VII plaintiff

and the third persons is the motivation for the discrimination."  *Id.*  As the First Circuit has

recognized, the prohibition against association-based discrimination is intended to protect

employees from "adverse job actions based on 'unfounded stereotypes and assumptions' arising

from the employees' relationships with [members of a protected class]."  *Id.* at 26.

Plaintiffs do not allege, however, that they were subjected to discrimination based on

unfounded stereotypes or assumptions about their relationship with employees of another race.

Again, Plaintiffs do no not even allege that they are a member of a particular race.  Rather,

Plaintiffs aver that they were purportedly mistreated because of their advocacy for "Black Whole

Foods employees."[4]  *See, e.g.*, Compl. ¶ 68 ("Whole Foods' policy of not allowing its employees

---

[4]      To the extent Plaintiffs contend that these allegations implicate their Title VII retaliation
claim, that claim should be dismissed for the reasons stated in Section III.B.2, *infra*.

to wear Black Lives Matter masks is discriminatory . . . against other employees who are associating with and advocating for Black Whole Foods employees and protesting racism and discrimination in the workplace . . . ."); *id.*, Count I (same).  This is not a recognized theory of "associational" discrimination and should be rejected.  *See Gollo*, 2010 WL 4721064, at *1 (granting motion to dismiss Title VII associational discrimination claim because complaint alleged that plaintiff "was fired because he protested discrimination against female employees, not because he was a male associating with females"); *Oliveras-Sifre v. Puerto Rico Dept. of Health*, 214 F.3d 23, 26 (1st Cir. 2000) (rejecting associational discrimination theory under ADA because plaintiffs did "not allege a specific association with a disabled individual" but rather "that they were punished for their advocacy on behalf of individuals with AIDS").

### 2.   *Plaintiffs Have Failed to Allege Cognizable Claims for Retaliation.*

Plaintiffs' Title VII retaliation claim fares no better.  To state a *prima facie* case of retaliation, plaintiffs must allege that: (1) they "undertook protected conduct"; (2) they "suffered an adverse employment action"; and (3) "the two were causally linked."  *Cherkaoui v. City of Quincy*, 877 F.3d 14, 28 (1st Cir. 2017).  Plaintiffs do not allege that they engaged in any actionable protected activity, and their retaliation claim should therefore be dismissed.

### a.   **Engaging in speech about social injustice or other political issues does not constitute protected activity under Title VII.**

As demonstrated above, Plaintiffs' claims are based on their desire to express their support for the Black Lives Matter social movement by wearing politically expressive masks. They do not allege that Whole Foods discriminated against or retaliated against Team Members because they are Black, or because they were opposing unlawful employment discrimination

11

against Black employees.[5]

The wearing of BLM masks presents an issue of speech in a private workplace – it does not create a new protected class of individuals under Title VII, *i.e.*, race, gender, religion, wearers of a BLM mask, etc., nor does it give rise to a new form of protected activity.  The Supreme Court has held consistently that Title VII does not protect workplace speech about political issues, and that private employers like Whole Foods "need a significant degree of control over their employees' words and actions," which is crucial to the employer's objectives in maintaining an efficient and productive work environment.  *See Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).

In an apparent attempt to cure this defect and identify some connection between their political expression and race-related concerns in the workplace, Plaintiffs added an allegation to their amended pleading stating that:

> Whole Foods employees have also made clear that wearing the Black Lives Matter masks is a demand for better treatment of Black employees in the work place. As part of their protest in wearing the masks, Plaintiffs have, for example, asked for the release of racial demographic data of Whole Foods employees and management, to help determine whether Black employees are receiving promotions fairly, and they have asked for the removal of armed guards from Whole Foods stores in order to ensure Black employees are comfortable in their workplace.

Compl. ¶ 69.  This attempt to salvage the retaliation claims is unavailing for two reasons.

---

[5]     Plaintiffs have relied on a July 14, 2020 opinion letter from the U.S. Office of the Special Counsel ("OSC") to argue that "[t]he federal government has determined that 'Black Lives Matter' is not a political statement and thus can be worn by employees."  *See* Dkt. No. 28, at 2. However, the OSC's opinion letter is not relevant here because it merely concluded that "BLM terminology is not inherently political activity" under the Hatch Act, which generally prohibits federal employees from engaging in "political activity."  *See* Dkt. No. 3-23, at 1-2.  Thus, the OSC's letter does not address what constitutes protected activity under Title VII.  Nor does it dictate or suggest whether a public or private employer can adopt a dress code that prohibits certain attire.  Indeed, the OSC's letter expressly states that it "only relates to the Hatch Act and does not address any other laws, rules, or regulations that may apply to expressions of support for, or opposition to, BLM while on duty or in the workplace."  *Id.* at 6.

First, Plaintiffs' demands for demographic data and for limitations to Whole Foods' security measures—like the donning of politically expressive masks—do not constitute protected activity under Title VII.  Under Title VII, "activity is protected . . . only if the employee can demonstrate that he reasonably believed that his employer's actions amounted to discrimination." *Ray v. Ropes & Gray LLP*, 961 F. Supp. 2d 344, 358 (D. Mass. 2013), aff'd, 799 F.3d 99 (1st Cir. 2015); *see* 42 U.S.C. § 2000e-3(a) (Title VII protects employees who "oppose[] any practice made an unlawful employment practice" by Title VII).[6]  Plaintiffs contend only that they requested information from the Whole Foods, and not that the Company was discriminatorily failing to promote Black employees.  Nor do they aver that Whole Foods violated Title VII simply by stationing security guards at its stores.  Thus, any alleged conduct related to those issues is not protected by Title VII and cannot form the basis of a valid retaliation claim.

Second, even if Plaintiffs' purported demands for demographic data and the removal of security guards constituted protected activity under Title VII, any retaliation claim based on that conduct still should be dismissed because Plaintiffs do not allege that they suffered any adverse employment actions because of these demands.  Rather, Plaintiffs' claims of purported retaliation are limited to allegations that they were disciplined for wearing, or supporting others who wore, BLM masks, in violation of Whole Foods' neutral dress code policy and not for any other alleged protected activity.  *See, e.g.*, Compl. ¶ 2 (discipline for wearing masks), *id.* ¶ 54 (same),

---

[6]     In their Reply in support of their emergency motion for preliminary injunction, Plaintiffs attempt to shoehorn their claims into actionable retaliation by suggesting that the donning of BLM masks "was meant to communicate opposition to the discriminatory enforcement of the dress code."  Dkt. No. 28, at 4.  This circular theory—i.e., that Plaintiffs wore BLM masks to protest not being permitted to wear BLM masks—should not be considered because it appears only in Plaintiffs' motion papers and is not alleged in the Complaint.  In any event, such a theory is not actionable because it is implausible that Plaintiffs reasonably believed that Whole Foods' dress code was discriminatory when, as alleged, the policy was enforced "against Black employees **and other employees**," regardless of their race.  Compl. ¶¶ 4, 49 (emphasis added).

*id.* ¶¶ 58-60 (same), *id.* ¶¶ 64-65 (same), *id.* ¶¶ 70-72 (same), *id.* ¶ 75 (same).  For that reason as well, any retaliation claim based on these alleged demands should be dismissed.  *See Mercedes v. Holder*, No. 13-CV-12043-LTS, 2014 WL 2998988, at *2 (D. Mass. July 1, 2014) ("A plaintiff claiming retaliation in violation of Title VII must allege that he 'engaged in protected conduct,' 'was subject to an adverse employment action,' and that 'a causal connection existed' between his conduct and the action.").

        **b.**      **Knowingly violating Whole Foods' policy does not constitute protected activity under Title VII.**

The EEOC's guidance on Title VII's anti-retaliation provision clearly provides that employees are only engaged in protected activity if they oppose perceived employment discrimination "*in a reasonable manner*," and instructs courts to balance the employee's rights against the employer's need for a stable and productive work environment.[7]  While Title VII does not protect freedom of speech and mask-wearing in this context, even if it did, the First Circuit has explained that, "the right to oppose discrimination is not a right to refuse to work on account of discrimination."  *Hazel v. U.S. Postmaster Gen.*, 7 F.3d 1, 4 (1st Cir. 1993) (affirming judgment on plaintiff's retaliation claim where, in opposition to alleged discrimination, the plaintiff failed to report to work).  "[A] plaintiff goes 'beyond the scope of protected opposition' when he 'damages the basic goals and interests' of the employer, who has a 'legitimate interest in seeing that its employees perform their work well.'"  *Id.* at 4 (citing *Hochstadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222, 233 (1st. Cir. 1976)).[8]  As the First Circuit

---

[7]     Enforcement Guidance on Retaliation and Related Issues, EEOC (Aug. 25, 2016) (emphasis added), https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and-related-issues.

[8]     *See also Unt v. Aerospace Corp.*, 765 F.2d 1440, 1446 (9th Cir. 1985) ("An employee is not protected by Title VII when he . . . knowingly disobeys company orders, disrupts the work

recognized, an employee can continue working under the employer's conditions "under protest while pursuing his remedies." *Id.* at 5.  Accordingly, the First Circuit affirmed the district court's finding that there was no liability for retaliation because the employer lawfully terminated the plaintiff's employment based on his insubordination, despite its connection with his purported protected activity.  *Id.* at 4.

The same rationale applies equally here.  Plaintiffs were instructed that their masks violated the Whole Foods dress code policy.  They refused to change their masks, however, and either chose to leave work early instead of finishing their shifts or continued to wear the non-compliant masks.  *See* Compl. ¶¶ 54, 56-64.  Their deliberate violations of the dress code were not based on their race or any activity protected by Title VII, and the discipline that ensued is not actionable as a matter of law.

In short, Plaintiffs have failed to meet their *prima facie* burden of alleging that they engaged in protected activity under Title VII, and their retaliation claims should be dismissed.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Whole Foods respectfully request that the Court grant the instant motion and dismiss the Amended Complaint in its entirety.

---

environment of his employer, or willfully interferes with the attainment of the employer's goals.").

Dated: August 14, 2020          WHOLE FOODS MARKET, INC.
                                By counsel,

                                /s/ *Sarah J. Butson*
                                Sarah J. Butson, BBO# 703265
                                sarah.butson@morganlewis.com
                                **MORGAN, LEWIS & BOCKIUS LLP**
                                One Federal Street
                                Boston, Massachusetts 02119
                                Telephone: (617) 341-7277
                                Facsimile: (617) 341-7701

                                Anne Marie Estevez (*pro hac vice*)
                                annemarie.estevez@morganlewis.com
                                **MORGAN, LEWIS & BOCKIUS LLP**
                                200 South Biscayne Boulevard, Suite 5300
                                Miami, Florida 33131
                                Telephone: (305) 415-3000
                                Facsimile: (305) 415-3001

                                Michael L. Banks (*pro hac vice*)
                                Julia S. Sturniolo (*pro hac vice*)
                                michael.banks@morganlewis.com
                                julia.sturniolo@morganlewis.com
                                **MORGAN, LEWIS & BOCKIUS LLP**
                                1701 Market Street
                                Philadelphia, Pennsylvania 19103
                                Telephone: (215) 963-5000
                                Facsimile: (215) 963-5001

                                Terry D. Johnson (*pro hac vice*)
                                terry.johnson@morganlewis.com
                                **MORGAN, LEWIS & BOCKIUS LLP**
                                502 Carnegie Center
                                Princeton, New Jersey
                                Telephone: (609) 919-6600
                                Facsimile: (609) 919-6701

                                *Attorneys for Defendant Whole Foods Market, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Sarah J. Butson, hereby certify that on the August 14, 2020, a true and correct copy of the foregoing Motion to Dismiss the Complaint was served via the Court's ECF filing system on the following:

Shannon Liss-Riordan
Anastasia Doherty
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116

*Attorneys for Plaintiffs*

/s/ *Sarah J. Butson*
Sarah J. Butson