**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SUVERINO FRITH, SAVANNAH KINZER, CEDRICK JUAREZ, FAITH WALSH, MACKENZIE SHANAHAN, COREY SAMUEL, JENNIFER OSAYANDE, BRITNEY IFEBOHR, KANAYA RYLAND, KIRBY BURT, LEAVER MICHEL, ABDULAI BARRY, LINDSAY VUONG, SAMANTHA BERIMBAU, SUEPRIYA ADHI, ALICE TISME, CAMILLE TUCKER-TOLBERT, CHARLES THOMPSON, ANA BELÉN DEL RIO-RAMIREZ, CASSIDY VISCO, LYLAH STYLES, KAYLA GREENE, SHARIE ROBINSON, KELLY RIGLER, JUSTINE O'NEILL, SARITA WILSON, and YURIN LONDON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br> v. <br> WHOLE FOODS MARKET, INC. and AMAZON.COM, INC., <br><br> Defendants | Case No. 20-cv-11358-ADB |

**PLAINTIFFS' OPPOSITION TO WHOLE FOODS' MOTION TO DISMISS**
**AMENDED CLASS ACTION COMPLAINT**

## I.       INTRODUCTION

Defendant Whole Foods Market, Inc. ("Whole Foods") attempts to strip from this case the obvious racial implications of having selectively banned "Black Lives Matter" ("BLM") messaging from its workplace.  Whole Foods instead attempts to reframe the case as focused on whether maintaining a facially neutral dress code policy runs afoul of Title VII. Dkt. 32 at 1-2.  However, Plaintiffs have not alleged that Whole Foods' dress code _on its face_ violates Title VII; rather, Plaintiffs have alleged that Whole Foods has _selectively enforced_ the dress code to target and suppress BLM messaging in the workplace, thereby discriminating against its Black employees and employees of other races who associate with them and advocate for them, is in violation of Title VII.  Dkt. 11 ¶ 2.  In other words, Plaintiffs allege that Whole Foods is distinguishing between dress-code violations – and therefore taking disciplinary actions, including terminating employees – based on race.  For example Whole Foods has distinguished between shows of support for LGBTQ+ employees, which it has deemed acceptable even when such demonstrations violate the dress code, and shows of support for Black employees, which it has deemed worthy of progressive disciplinary action. Dkt. 11 ¶ 44.

This race-based selective enforcement of the dress code plainly constitutes a "racial situation in which Plaintiff[s] became involved" that confers protected status on the Plaintiffs, including non-Black employees who have banded together with Black coworkers in to wear the BLM apparel in a show of support, under a theory of associational discrimination.. See Johnson v. University of Cincinnati, 215 F. 3d 561, 575 (6th Cir. 2000) (holding that advocacy on behalf of women and minorities was sufficient to confer protected status upon plaintiff under associational discrimination).

Whole Foods cannot abstract race from the equation: such discrimination plainly falls within the intended protections of Title VII. Id. at 573-74 (Title VII was "triggered by a Nation's concern over centuries of racial injustice", and specifically by anti-Black racism in America) (citing United Steelworkers of Am. v. Kaiser Aluminum & Chemical Corp., 443 U.S. 193, 201 (1979) (citing 110 Cong. Rec. 6548 (1964) (remarks of Sen. Humphrey)).  As Plaintiffs set forth previously, the Office of Special Counsel has acknowledged that Black Lives Matter is a not a political statement but is focused on promoting the right of Black people to live free from violence and oppression.[1]  It is impossible to divorce a discriminatory ban on BLM from racial injustice, which Title VII is designed to protect against in the workplace. Plaintiffs have sufficiently stated a claim under Title VII, 42 U.S.C. § 2000e-2(a)(1), based on these facts. See Part III(A).

In addition, Plaintiffs have sufficiently alleged that Whole Foods violated Title VII, 42 U.S.C. § 2000e-3(a), by retaliating against employees who have continued to wear BLM messaging in an explicit stand against Whole Foods' discriminatory enforcement of the dress code policy. See Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 94 (1st Cir. 2018).  Wearing the BLM masks and apparel despite progressive discipline and protesting outside Whole Foods locations certainly constitutes protected activity within the meaning of Title VII's opposition clause, because these actions reasonably communicated to Whole Foods that Plaintiffs and similarly situated employees believed that the ban of BLM messaging constituted discrimination. Crawford v. Metropolitan Government of Nashville and Davidson County, Tenn., 555 U.S. 271, 276 (2009)

---

[1]    Compare *Black Lives Matter and the Hatch Act*, U.S. Office of Special Counsel (dated July 14, 2020) (Dkt. 3-23), with *Clarification of November 27, 2018 email*, U.S. Office of Special Counsel (dated Nov. 30, 2018) (Dkt 28-3).

("[w]hen an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity.") (internal citations omitted). Whole Foods' continued discipline of Plaintiffs and similarly situated employees after such oppositional conduct constitutes retaliation. See Part III(B).

Finally, Plaintiffs may proceed immediately in court on their claims in order to move for a preliminary injunction. See Bailey v. Delta Air Lines, Inc., 722 F.2d 942, 944 (1st Cir. 1983) ("[W]e cannot say that Congress clearly intended to divest the district courts entirely of their customary equitable authority to grant preliminary relief in appropriate cases."). Plaintiffs originally filed their complaint along with an emergency motion for preliminary injunction. Although they have now decided not to seek the preliminary injunction on an emergency basis, in light of the Court's comments at the recent status conference (in which the Court questioned the emergency nature of their request) and have instead agreed to participate first in discovery, as Whole Foods had urged, Plaintiffs intend to re-new their request for a preliminary injunction. See Dkt. 38. Plaintiffs should therefore be permitted to proceed in court, so that they may appeal to this Court's inherent equitable power in order to provide prompt relief. As the situation stands, Plaintiffs and other employees are forced to choose between escalating discipline and possible termination, and engaging in protected activity -- expressing support for Black employees and opposing what they reasonably believe is discrimination and retaliation -- in their workplace.

For these reasons, and as set forth further below, Whole Foods' motion to dismiss (Dkt. 32) should be denied.

## II.      FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs have brought this claim on behalf of themselves and similarly situated Whole Foods and Amazon employees across the country who have been subject to Whole Foods' discriminatory and retaliatory policy of not allowing its employees to wear Black Lives Matter masks and related apparel at work. Dkt. 11 ¶¶ 6, 35.

On the heels of George Floyd's death and in conjunction with the demonstrations springing up around the country, protesting police violence and other discrimination against Blacks, Whole Foods employees began wearing BLM masks in order to express solidarity and support of their Black coworkers. Id. ¶¶ 48-50.  Plaintiffs did not think that wearing BLM masks would result in serious discipline, because the dress code (particularly as to masks) had previously gone largely unenforced. Id. ¶ 47 (citing examples of various masks with images and writing being allowed).   Indeed, Plaintiffs anticipated Whole Foods and Amazon would cheer this show of support for Black employees, in light of the companies' public statements professing solidarity with the movement and espousing a message of inclusivity, and Whole Foods' previous practice of allowing its employees to express support for their LGBTQ+ coworkers, even when such expressions (such as wearing a Pride flag) violated the dress code. See id. ¶¶ 50-52.  However, instead of cheers, Plaintiffs were met with harsh discipline.

Plaintiffs work (or worked) at various Whole Foods locations across the county, including locations in Massachusetts, California, New Hampshire, Pennsylvania, New Jersey, Virginia, Georgia, Indiana, and Washington. Dkt. 11 ¶¶ 7-34 (Plaintiff Tisme, a Prime Shopper, is directly employed by Amazon, while all other Plaintiffs are directly

employed by Whole Foods).[2]  All have been subject to discipline for wearing BLM masks and apparel (such as pins and tee-shirts), including but not limited to being sent home without pay, id. ¶¶ 54, 57-62; accumulating disciplinary points for being sent home, id. ¶¶ 54, 60; been issued written warnings, id. ¶ 59; being placed on corrective action pathways, id. ¶ 57; and being terminated, id. ¶¶ 74-75.  Plaintiffs and other employees have made clear that wearing the Black Lives Matter masks constitutes a demand for better treatment of Black employees in the workplace by linking the BLM message and symbolism with demands for a release of racial demographic data and removal of armed guards from store locations. Id. ¶ 69.  Further, that the BLM message is a show of support for Black employees should be plain on its face, particularly during this pandemic, where Black workers are "overrepresented among COVID-19 frontline essential workers," where the virus has had a disproportionate impact on the Black community, and where Black workers continue to face persistent pay gaps.[3]

Further, as the BLM protests at Whole Foods proceeded, the protests transformed into being more directed toward opposing Whole Foods' discipline of employees for wearing the BLM masks; employees continued to wear the masks (and protest outside the stores) to challenge what they perceive to be racism and discrimination by Whole Foods for not allowing employees to wear the masks. Id. ¶ 70.

---

[2]     Whole Foods' contends "Whole Foods Market, Inc." is not Plaintiffs' employer. See Dkt. 32 at 1 n. 1.  Plaintiffs included "Whole Foods Market" based on the company logo included in the handbook.  If discovery confirms that a different entity should be named as defendant, Plaintiffs may amend to substitute a different corporate entity.

[3]     Molly Kinder & Tiffany Ford, *Black essential workers' lives matter. They deserve real change, not just lip service*, The Brookings Institute, June 24, 2020, https://tinyurl.com/yyufy5fd. ("For millions of Black workers, pay and benefits weren't enough even before the pandemic. Now, Black workers face persistent and stark wage gaps compared to white workers and are less likely to have access to benefits such as paid sick leave, health insurance, and the ability to work from home. Far too many Black workers are in unstable jobs with few advancement opportunities and too many instances of disrespect.").

Plaintiffs do not contend that the facially neutral dress code in itself is discriminatory; rather, it is Whole Foods' selective enforcement of the dress code that is discriminatory. Whereas in the past, Whole Foods has turned a blind eye to all sorts of non-compliant dress, including political statements and shows of LGBTQ+ coworker support, only after employees began wearing BLM masks and apparel in support of their Black co-workers, did Whole Foods crack down on enforcing the dress code.  Id. ¶ 73.  In retaliation, Whole Foods has continued to discipline these employees, including Plaintiff Savannah Kinzer, who was terminated on July 18, 2020, due to her accumulation of points related to wearing the BLM mask. Id. ¶¶ 74-75.  Indeed, as the record will show, Whole Foods has known that Plaintiff Kinzer has been a leader in organizing employees to wear the Black Lives Matter masks and has led a number of protests outside Whole Foods stores, challenging the company's policy of not allowing employees to wear the masks.

Just before being fired, Plaintiff Kinzer informed her manager that she had filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the National Labor Relations Board ("NLRB"). Id. ¶ 76.  Plaintiffs Frith, Del-Rio Ramirez, and Tucker-Tolbert, also filed EEOC charges prior to the filing of the instant action. Id. ¶ 84.  Copies of the EEOC charges are **attached hereto as Exhibits A-D**.[4]  In addition, Plaintiffs Barry, Visco, Evans, O'Neill, Styles, Wilson, and London (who were added as named plaintiffs in the Amended Complaint) have filed charges with the EEOC.  These charges were filed as class charges of discrimination.  Greene v. City of Boston, 204 F.Supp.2d 239, 242 (D. Mass. 2002) (discussing "permitting piggy-backing on a timely-filed charge

---

[4]        Pursuant to the integral document doctrine, "the district court appropriately may consider the whole of a document integral to or explicitly relied upon in a complaint, even if that document is not annexed to the complaint." Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st Cir. 2005) (internal citation omitted) (considering correspondence between plaintiff's attorney and the EEOC pursuant to the integral document doctrine in order to evaluate exhaustion).

that 'gives the EEOC and employer adequate notice of allegations of class-wide
discrimination'") (quoting Basch v. Ground Round, Inc., 139 F. 3d 6, 9 (1st Cir. 1998).

### III.    ARGUMENT

"In resolving a motion to dismiss, a court should employ a two-pronged
approach." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).   At the
first step, the court parses out legal conclusions from factual statements. Id.  "Non-
conclusory factual allegations in the complaint must then be treated as true, even if
seemingly incredible," in determining whether the combined factual allegations state a
plausible legal claim. Id. (internal citations omitted).  At this early stage of litigation, the
court must "accept[] all well-pleaded factual allegations as true." Nieves Roman v.
Puerto Rico, 338 F. Supp.2d 264, 265 (D. P.R. 2004).  Further, the court "may not
disregard properly pled factual allegations… [n]or may a court attempt to forecast a
plaintiff's likelihood of success on the merits," Ocasio-Hernandez, 640 F.3d at 12-13
(internal citations omitted). In short, "a complaint may not be dismissed unless it
appears beyond doubt that plaintiff can prove no set of facts in support of his claim
which would entitle him to relief." Nieves Roman, 338 F. Supp.2d at 265.

### A.  Plaintiffs Have Stated a Title VII Discrimination and Associational Discrimination Claim

Title VII prohibits employers from discriminating against any individual "because
of such individual's race."  42 U.S.C. § 2000e-2(a)(1).  "[T]he ordinary meaning of
'because of' is 'by reason of' or 'on account of.'" University of Tex. Southwestern
Medical Center v. Nassar, 570 U.S. 338, 350 (2013) (citing Gross v. FBL Financial
Services, Inc., 557 U.S. 167, 176 (2009)) (quotation altered).

To establish Title VII liability, a plaintiff must demonstrate that the protected trait was "one but-for cause of [the adverse employment] decision". Bostock v. Clayton County, Georgia, 140 S. Ct. 1731, 1739 (2020) (explaining that the but-for standard encompasses mixed-motive cases, meaning, "a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision."). In addition, "under th[e] more forgiving [motivating factor] standard, liability can sometimes follow even if [the protected trait] *wasn't* a but-for cause of the employer's challenged decision." Id. at 1740. A plaintiff may establish Title VII liability under a but-for or mixed-motive theory of the case, through either circumstantial or direct evidence. Burns v. Johnson, 829 F.3d 1, 9 (1st Cir. 2016).

"In cases involving direct evidence of discriminatory motive, the burden of persuasion shifts from the employee to the employer, who must then affirmatively prove that it would have made the same decision even if it had not taken the protected characteristic into account." Ayala Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95-96 (1st Cir. 1996).[5] Discriminatory application of a facially neutral policy can be proven by direct evidence and has been held to run afoul of the Title VII, including in associational discrimination cases.[6]

---

[5]     Plaintiffs here have direct evidence of discrimination and retaliation. See Part III(A)(1). If the Court chooses, however, to apply the indirect evidence standard using the McDonnell Douglas burden-shifting framework, see Conward v. Cambridge School Committee, 141 F. 3d 12, 19 (1st Cir. 1999) (explaining framework), Plaintiffs will be able to satisfy a prima facie case in that: (1) they are members of a protected class, protected from discrimination and associational discrimination based on race; (2) they are qualified for their positions, as evidenced by successfully fulfilling the positions apart from the purported dress code violations; (3) they have been disciplined or subject to discipline; and (4) their positions have not been eliminated. Should Whole Foods argue that their violation of the dress code is the nondiscriminatory basis for their discipline, Plaintiffs may establish pretext by showing that employees who were not in protected classes were not disciplined for dress code violations.

[6]     See, e.g., Deffenbaugh-Williams v. Wal-Mart Stores, Inc., 156 F.3d 581, 589-90 (5th Cir. 1998), *vacated in part on other grounds by* Williams v. Wal-Mart Stores, Inc., 182 F.3d 333 (5th Cir. 1999) (upholding judgment for white employee (who was dating Black co-worker) who was

### 1. Plaintiffs have presented direct evidence of race-based discrimination

Plaintiffs have sufficiently alleged that Whole Foods' enforces its dress code

_based on race_, thereby inflicting adverse employment actions against Black employees

and those who associated with them and advocating for them.  Plaintiffs have alleged

that Whole Foods has not consistently enforced its facially neutral dress code and have

included several specific examples of it not disciplining violations where employees

wore express political and identity-based messages. Dkt. 11 at 7 ¶¶ 42-43 (Whole

Foods did not discipline expressions of LGBTQ+ support that violate the dress code

policy (e.g., Pride flags) or express political messages, such as employees donning the

anarchist symbol and pins stating "Lock Him Up").  Assuming, as this Court must, that

Whole Foods has selectively enforced its dress code to target expressions of support

for Black employees, the resulting discipline is "because of" race, within the ordinary

meaning of the words. Nassar, 570 U.S. at 350.  Plaintiffs' evidence of selective

enforcement of the dress code is direct evidence of discrimination.  Permitting this

selective enforcement of the dress code and resulting discipline of Black (and non-Black

employees who associate with them) who are advocating for racial justice in the

workplace flies in the face of Title VII's purpose.[7]

---

terminated for violating "no shopping on the clock" rule, where evidence showed that other employees were not disciplined for this violation).

[7]     "It is an established principle that Congress' primary concern in enacting the prohibition against racial discrimination in Title VII of the Civil Rights Act of 1964 was the plight of the African American in our economic society. See United Steelworkers of Am. v. Kaiser Aluminum & Chemical Corp., 443 U.S. 193, 201, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979) (citing 110 Cong. Rec. 6548 (1964) (remarks of Sen. Humphrey) (stating that Title VII was "triggered by a Nation's concern over centuries of racial injustice and intended to improve the lot of those who had 'been excluded from the American dream for so long' "))." Johnson v. University of Cincinnati, 215 F.3d 561, 573-74 (6th Cir. 2000).

Whole Foods' race-based policy of banning BLM-messaging is not saved by Whole Foods disciplining _both_ Black and non-Black employees.  As the Supreme Court recently made clear, when an employer fires a man _and_ a woman _because_ of sex, "[i]nstead of avoiding Title VII exposure, th[e] employer doubles it." Bostock, 140 S. Ct. at 1741.  If both Black and non-Black employees are being disciplined based on anti-Black enforcement of the dress code policy (e.g. _because_ of race), Whole Foods is simply doubling its Title VII liability – not mitigating it.  Language that Whole Foods quotes from Bostock, emphasizing the individual focus of Title VII's protection, is meant to illustrate the broad protections of Title VII (e.g., by barring sex-based discrimination against men _and_ women), not cabin its reach.  See Bostock, 140 S. Ct. at 1740-41 (partially quoted in Dkt. 32 at 7).

Whole Foods has offered up its dress code as its reason for disciplining Black employees and those who associate with them.  However, evidence of selective enforcement of the dress code undermines Whole Foods' defense.  Plaintiffs have alleged that Whole Foods has engaged in checkered enforcement of the dress code, compared to its strict enforcement in response to the BLM messaging.[8]  In light of its previous lax enforcement of the dress code, Whole Foods has essentially invented discipline for its Black and non-Black employees to bar the BLM message advocating for Black employees. See Alice, 19997 WL 271482, at *3, 4.

---

[8]     An ever-shifting explanation from Whole Foods of _why_ "BLM" violates the dress code but not, for example, or the message of LGBTQ+ positivity ("EQUALITY") or the image of a pride flag, Dkt. 11 ¶ 44, 50, would demonstrate Whole Foods' proffered reason for discipline – violation of the dress code – is pretextual. Dominguez-Cruz v. Suttle Caribe, Inc., 2020 F.3d 424, 432 (1st Cir. 2000).

**2.  Plaintiffs in this action are _all_ protected from Whole Foods' race-based discrimination because Title VII prohibits associational discrimination**

Whole Foods attempts to dismiss Plaintiffs' theory of associational discrimination, which extends protection to the non-Black Plaintiffs in this case, by arguing that associational discrimination claims hinge on Plaintiffs' _relationship_ with employees of another race and that Plaintiffs banding together with and advocating for their Black coworkers is insufficient to confer protected status on non-Black Plaintiffs. Dkt. 32 at 10. In other words, Whole Foods (1) attempts to erase the obvious organizing effort and workplace relationships between non-Black employees and their Black coworkers in this aciton, and (2) posits that advocacy in support of Black coworkers is never grounds for Title VII protection.  Both of these arguments are incorrect.

First, associational discrimination broadly protects "individuals who, though not members of a protected class, are 'victims of discriminatory animus toward [protected] third persons with whom the individuals associate." Barrett v. Whirlpool Corp., 556 F.3d 502, 512 (6th Cir. 2009) (quoting Tetro v. Popham, 173 F. 3d 988, 994 (6th Cir. 1999)); Persson v. Boston University, 2019 WL 917205 at *11 (D. Mass. Feb. 25, 2019) (citing Barrett).  The protection does not hinge on the intimacy of the interracial relationship. As the Sixth Circuit explained in Barrett, the degree of the association is irrelevant and not be the focal point of the court's inquiry, 556 F.3d at 513; instead, "the key inquiries should be whether the employee has been discriminated against and whether that discrimination was 'because of' the employee's race." Id. at 512 (quoting Drake v. 3M, 134 F.3d 878, 884 (7th Cir.1998) (friendship with protected employee was sufficient)).

Further, the associational discrimination doctrine _does_ protect employees advocating in the workplace on behalf of protected employees.  In Johnson v. University

11

of Cincinnati, 215 F. 3d 561 (6th Cir. 2000), the Sixth Circuit directly addressed this

question.  There, the plaintiff "allege[d] that Defendants discriminated against him

because of his efforts to insure that the University complied with its affirmative action

policies, and because of his advocacy on behalf of women and minorities." Id. at 572.

The district court granted summary judgment to the defendant on the grounds that the

plaintiff had failed to show he was a member of a protected group. Id. at 573.  The Sixth

Circuit reversed, holding that:

> Plaintiff need not have alleged discrimination based upon his race as an African American in order to satisfy the protected status requirement of his claims. Indeed, in light of this Court's holding in [Tetro v. Popham, 173 F. 3d 988, 994 (6th Cir. 1999)] and [Winston v. Lear-Siegler, Inc., 558 F.2d 1266, 1270 (6th Cir. 1977)], the fact that Plaintiff has not alleged discrimination because of *his* race is of no moment inasmuch as it was a racial situation in which Plaintiff became involved—Plaintiff's advocacy on behalf of women and minorities in relation to Defendant's alleged discriminatory hiring practices—that resulted in Plaintiff's discharge from employment…. [I]t is clear that a Caucasian high-level affirmative action official could bring a claim under [] § 2000e–2(a) for discrimination based upon his advocacy on behalf of minorities because the discrimination would be "because of such individual's race," where the race of the minorities for which he was advocating would be "imputed" if you will to the Caucasian high-level affirmative action official. See Tetro, 173 F.3d at 995.

Id. at 575.  Here, the race of Black employees is "imputed" to non-Black employees who

are advocating on behalf of and associating with Black employees through wearing the

BLM gear – the donning of which indisputably introduces a "racial situation" into the

workplace.  Cases cited by Whole Foods in an attempt to argue that such advocacy is

inadequate are inapposite. In Gallo v. W.B. Mason Co., Inc., 2010 WL 4721064, at *1

(D. Mass. Nov. 15, 2010), the district court granted a motion to dismiss plaintiff's Title

VII discrimination claim because Plaintiff had failed to *at all* allege that he associated

with the female employees.  That case is therefore easily distinguishable from this

matter, where employees have explicitly (and symbolically) banded together.[9]  The

decision in Oliveras-Sifre v. Puerto Rico Dept. of Health, 214 F.3d 23, 26 (1st Cir. 2000)

(affirming motion to dismiss) (cited Dkt. 32 at 11), turned on the specific legislative

history of the Americans With Disability Act (ADA), inapplicable here.[10]  Here, Whole

Foods is disciplining (and terminating) Black and non-Black employees alike based on

race – specifically its intolerance of advocacy on behalf of Black workers, in contrast to

its tolerance for advocacy on behalf of other groups and messages.

### B.  Plaintiffs Have Stated a Title VII Retaliation Claim

Title VII's opposition clause sweeps "broadly and protects an employee for more

informally opposing an employment activity that might violate Title VII." Ray v. Ropes &

Gray, LLP, 799 F.3d 99, 108 (1st Cir. 2015); see 42 U.S.C. § 2000e-3(a).  The conduct

opposed need not in actuality run afoul of Title VII; it is sufficient that the employee "had

a good faith, reasonable belief that the underlying challenged actions of the employer

violated the law."  Fantini v. Salem State College, 557 F.3d 22, 32 (1st Cir. 2009)

(internal citations omitted).  Plaintiffs may establish retaliation by showing that: (1) they

engaged in protected conduct; (2) they were subjected to an adverse employment

action; and (3) the adverse employment action is causally linked to the protected

conduct.  Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 94 (1st Cir. 2018).

---

[9]     In opposing the motion to dismiss, the plaintiff in Gallo merely argued that he was "present on several occasions" for the harassment and "resisted" and "requested that [the manager of the Defendant] refrain from using [] offensive language." Gallo, 2010 WL 11071978. There is no discussion at all of the plaintiff joining with his female employees to protest the harassment.

[10]     Notably, Plaintiffs in that action had not even pled a theory of associational discrimination.  In contrast here, Plaintiffs have pled the count with specificity and bring their claim under Title VII, the legislative history of which evidences a broader intent to remedy racial injustice.

The Amended Complaint clearly alleges that Plaintiffs engaged in protected activity by continuing to wear their BLM masks and apparel *despite* and *because of* Whole Foods' disciplining employees for wearing the masks.  Their protected activity consisted of both taking a stand against anti-Black discrimination in the workplace *and* opposing Whole Foods' discipline of employees for standing up against this discrimination. See, e.g., Dkt. 11 ¶¶ 54 (describing progressive discipline at Whole Foods on River St., in Cambridge, MA, and citing to news coverage of resulting protests explicitly taking aim at Whole Foods' discriminatory enforcement of the dress code). Whole Foods attempts to argue that its employees' insistent donning of the BLM masks and apparel in the face of progressive discipline is not protected conduct but merely presents an "issue of speech in a private workplace." Dkt. 32 at 12.  Not so.[11]  News coverage and interviews with the Plaintiffs, cited in the Amended Complaint, make clear that the commonsense viewpoint of Plaintiffs, as well as the public, is that Whole Foods' extremely harsh discipline of employees wearing BLM gear (from being sent home with no pay, to termination) constitutes race-based discrimination and its discipline of employees constitutes retaliation. See id. ¶¶ 54, n. 2, 57 n. 3, 60 n. 4 (citing to articles covering employee protests outside store locations).[12]  The protests alone

---

[11]      Whole Foods cites to Garcetti v. Ceballos, 547 U.S. 410, 418 (2006), for the proposition that private employers, like itself, "need a significant degree of control over their employees' words and actions."  Ironically, Garcetti focused on a *public* employer's need to control its employees' words and actions, illustrating Plaintiffs' point that the opinion letter authored by the U.S. Office of Special Counsel ("OSC") is relevant in evaluating Whole Foods need (or, more properly, its ability) to selectively regulate its employees' speech. See *Black Lives Matter and the Hatch Act*, U.S. Office of Special Counsel (dated July 14, 2020).

[12]      See *Customers, Employees Boycott Cambridge Whole Foods Over BLM Mask Ban*, July 12, 2020, https://www.msn.com/en-us/news/us/customers-employees-boycott-cambridge-whole-foods-over-blm-mask-ban/ar-BB16CL3V?ocid=uxcntrlbingtab; Abigail Feldman, *Boycott Continues Against Cambridge Whole Foods that Sent Employees Home for Black Lives Matter Masks*, Boston Globe July 5, 2020, https://www.bostonglobe.com/2020/07/05/metro/boycott-continues-against-cambridge-whole-foods-that-sent-employees-home-black-lives-matter-masks/; Joshua Rhett Miller, *Call for Whole Foods Boycott Grow After Employees Wearing BLM*

communicated to Whole Foods its employees' impression of the dress code enforcement as discriminatory.  See Ray v. Ropes & Gray, LLP, 799 F.3d 99, 108 (1st Cir. 2015) (protected opposition activity includes "picketing and boycotting an employer").  Further, as Whole Foods acknowledges, Plaintiffs linked the wearing of the masks to specific demands for increased racial equity at Whole Foods.  See Dkt. 11 ¶ 69 (demanding racial demographic data and changes in store security).

Whole Foods counters that (1) Plaintiffs did not sufficiently allege that Whole Foods' discrimination prompted these demands; and (2) even if Plaintiffs' actions are oppositional, Plaintiffs were not disciplined for *these demands*, but rather for the dress code violations.  First, Whole Foods' attempt to arbitrarily divorce the demands from the BLM masks should be rejected.  Wearing the BLM mask is itself a show of support for Black employees, and the specific demands arose out of the BLM protests. Dkt. 11 ¶ 69.  Second, Whole Foods' argument that demanding the release of racial data fails to allege discrimination, because they did not also specifically allege failure to hire and promote Black employees prompted this demand, stretches credulity and thus fails at the motion to dismiss stage.  See Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998) (where the Court must draw all reasonable inferences in favor of the Plaintiffs).  Release of racial demographic data is widely acknowledged as a tactic to

---

*Masks Are Sent Home*, NY Post, July 6, 2020, https://nypost.com/2020/07/06/protesters-boycott-whole-foods-over-black-lives-matter-mask-policy/; Fernando Martinez, *Whole Foods Employee Told Not to Wear 'Controversial' Black Lives Matter Mask, Protest Scheduled*, SFGate, July 17, 2020, https://www.sfgate.com/news/article/Whole-Foods-Gilman-Berkeley-employee-BLM-mask-15416626.php ; Frances Dinkelspiel, *Hundreds in Berkeley Protest Whole Foods' Ban on Wearing Branded ;Black Lives Matter'*, Berkeleyside Nosh, July 17, 2020, https://www.berkeleyside.com/2020/07/17/berkeley-ca-whole-foods-black-lives-matter-protest (describing protest of 200).

promote racial justice and address racial disparity in the workplace; a call for its release cannot be divorced from concerns of racial inequity in the workplace.

Finally, Whole Foods attempts to argue that Plaintiffs' oppositional conduct is unprotected because it was not conducted "in a reasonable manner". Dkt. 32 at 14. Whole Foods attempts to portray Plaintiffs as refusing to work when Plaintiffs were actually denied the opportunity to work.  Cases cited by Whole Foods illustrate this point.  For example, in Hazel v. U.S. Postmaster Gen., 7 F.3d 1, 3-4 (1st Cir. 1993), the First Circuit determined that the plaintiffs – who never *attempted* to report to work after reassignment – had gone "beyond the scope of protected opposition". Id. at 4 (quoting Hochstadt v. Worcester Foundation for Experimental Biology, 545 F.2d 222, 233 (1st Cir.1976)).  In contrast, here, Plaintiffs repeatedly showed up to work, only to be summarily sent home if they refused to take off the BLM masks (which they contend is protected activity).  In Unt. V. Aerospace Corp, 765 F.2d 1440, 1443 (9th Cir. 1985), the plaintiff initiated an internal complaint of discrimination three times, and his charges were three times investigated and three times found unsubstantiated; the Ninth Circuit affirmed that district court's conclusion that the plaintiff's subsequent discharge was not retaliatory but rather due to plaintiff violating company orders and disrupting the workplace, because his internal complaints took an improper form and lobbed accusations against management some of which were unrelated to the alleged discrimination.  Id. at 1446.  Plaintiffs here have not in similarly disrespected or disrupted Whole Foods' workplace; Whole Foods' discipline of its employees has disrupted the workplace by leading to protests and boycotts. See supra note 13.[13]

---

[13]      To the extent that Whole Foods' argument is that employees wearing the BLM masks (as opposed to LGBTQ pride apparel for example) disrupts its workplace because the masks

In contrast, Whole Foods' actions in response to the oppositional conduct – of escalating discipline leading to termination – is extreme and certainly constitutes adverse action.  Certainly, "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. V. White, 548 U.S. 53, 68 (2006) (internal quotations omitted).  Indeed, Plaintiff Robinson has already been deterred from standing against discrimination in her workplace. Dkt. 11 ¶ 71 (removing her mask after witnessing her daughter being disciplined, because she could not afford to lose wages).  Plaintiff Kinzer lost her job for her oppositional conduct. Id. ¶¶ 74-75.  Plaintiffs and other employees are now presented with a choice: acquiesce to workplace discrimination and retaliation and remove the BLM mask and messaging so that they can continue working, or risk termination during a global pandemic, when jobs are scarce.  This choice is untenable – and illegal.  The entire purpose of Title VII's retaliation clause is to prevent employers from putting its employees' backs against the wall in this manner.  Plaintiffs should not be forced to cease their protected activity in order to keep their jobs.

---

may be upsetting or off-putting to customers, such an argument must fail, as the law is clear that employers cannot justify discrimination based upon discriminatory preferences of their customers.  See Chaney v. Plainfield Healthcare Center, 612 F.3d 908, 913 (7th Cir. 2010) (it is "widely accepted that a company's desire to cater to the perceived racial preferences of its customers is not a defense for treating employers differently based on race."); see also *Significant EEOC Race/Color Cases*, EEOC, https://tinyurl.com/y5zk5eqh (detailing similar customer preference cases brought by the EEOC).

Likewise, Whole Foods' argument that it should not be required to allow employees to wear BLM masks because that would require that it allow *any* messaging on employee apparel is not correct either.  As discussed here, the employees wearing the BLM masks were engaged in protected activity under Title VII.  The same could not be said of all other messaging.

## C.  Plaintiffs Should Be Permitted to Proceed Now in Court

Whole Foods also seeks to dismiss this case on the ground that Plaintiffs have not yet exhausted their remedies with the EEOC.  As noted above, Plaintiffs filed class charges of discrimination with the EEOC before this case was filed.  They have also requested right-to-sue letters from the EEOC.  They should be allowed to pursue their claims in court and not be delayed while waiting for the right-to-sue letters to be processed, since they initially requested preliminary injunctive relief, and still intend to pursue this relief, though they withdrew their motion to have this relief adjudicated as an emergency.

Under Bailey v. Delta Air Lines, Inc., 722 F.2d 942, 944 (1st Cir. 1983), Plaintiffs are permitted to proceed in court prior to receiving a right to sue letter from the EEOC if they are seeking a preliminary injunction pursuant to the court's inherent equitable powers.  While Plaintiffs have withdrawn their Emergency Motion for a Preliminary Injunction (Dkt. 3) (based upon this Court's stated concerns regarding the burden of adjudicating their request so quickly and belief that the situation did not present an emergency), Plaintiffs maintain that preliminary injunction relief is appropriate in this action and intend to renew their motion upon completion of, what they request to be expedited, discovery. See Dkt. 38.[14]  This case presents an appropriate situation for this Court to exercise its "customary equitable authority to grant preliminary relief" notwithstanding the lack of a right to sue letter, see Bailey, 722 F.2d at 944, because if

---

[14]     Thus, Plaintiffs have simply chosen not to pursue their request for preliminary injunctive relief on an *emergency* basis and, instead, have agreed to Whole Foods' original request to conduct some expedited discovery prior to the Court adjudicating their request for a preliminary injunction.   See Dkt. 8 at 4-5 (Whole Foods' proposed preliminary injunction briefing schedule, requesting expedited discovery to be completed within six weeks); Dkt. 38 (Plaintiffs' proposal for expedited discovery).

Plaintiffs are correct that Whole Foods is violating Title VII by banning the Black Lives

Matter masks and disciplining its employees for protesting this ban, the passage of time

will effectively result in Whole Foods functionally prevailing in this action (as employees

seek to participate in and promote the BLM message _now_, in conjunction with

demonstrations continuing throughout the country, in order to force Whole Foods'

attention to the issue of racial injustice in its workplace).   Cases cited by Whole Foods

as "bar[ring] the courthouse door" are therefore inapposite because Plaintiffs here

continue to seek provisional relief; Plaintiffs have not let their claims merely languish.

See Jorge v. Rumsfeld, 404 F.3d 556, 564-65 (1st Cir. 2005) (holding "a plaintiff's

_unexcused_ failure to exhaust administrative remedies effectively bars the courthouse

door", where the plaintiff failed to file an EEOC charge citing Title VII, brought suit three

years late, and did not seek a preliminary injunction).[15]

Whole Foods further objects that only four of the named plaintiffs filed charges

with the EEOC. Dkt. 32 at 5.  This argument has no bearing on the exhaustion

requirement.  Plaintiffs need only file one EEOC charge in order to meet the

administrative exhaustion requirement if the charge is asserted on behalf of a broader

group of affected employees.  Greene v. City of Boston, 204 F.Supp.2d 239, 241 (D.

Mass. 2002) ("Under the single filing rule, also referred to as "piggybacking," similarly

situated plaintiffs, who have failed to file administrative  charges, or who have filed

untimely charges, are permitted to piggyback on a timely-filed charge that gives

the EEOC and the employer fair notice of allegations of class-wide discrimination.").

---

[15]    Whole Foods' citations to Gregory v. YWCA Haverhill, Inc.,  2014 WL 3798893, at *2-3 (D. Mass. July 30, 2014), and Harper v. Melendez, 2019 WL 6307201, at *2-3 (D. Mass. Nov. 22, 2019), are inapposite, as neither case included a request for preliminary injunctive relief.

Therefore, the charges filed by lead Plaintiffs Frith, Kinzer, Del-Rio Ramirez, and

Tucker-Tolbert, are sufficient.[16]

Finally, Whole Foods protests that, because Plaintiffs have not yet received a

right to sue letter on the discrimination claim, their retaliation claim is barred. See Dkt.

32 at 5.  However, Whole Foods misconstrues the cited case law.  Plaintiffs do not

allege retaliation for filing an administrative charge (other than Plaintiff Kinzer) but rather

retaliation for opposing Whole Foods' discrimination by virtue of continuing to wear the

BLM masks and apparel in the face of increasing discipline and threatened termination,

making Franchesi v. U.S. Dep't of Veteran Affairs, 514 F.3d 81, 85-87 (1st Cir. 2008),

inapplicable.  In any event, the law is clear that it is not necessary to file a separate

charge of retaliation, when the retaliation stems out of discrimination for which a charge

has already been filed.  Clockedile v. N.H. Dep't of Corr., 245 F.3d 1, 6 (1st Cir.2001).

## IV.    CONCLUSION

For the reasons discussed above, this Court should deny Whole Foods' motion

to dismiss (Dkt. 32) and allow this action to proceed. Plaintiffs have sufficiently stated

Title VII discrimination and retaliation claims, and intend to renew their request for

preliminary injunctive relief upon completion of expedited discovery, in order to protect

Plaintiffs' right to protest discrimination in their workplace (and keep their jobs) and to

stand up for Black Whole Foods employees, in solidarity with the greater BLM

movement.

---

[16]    In any event, Plaintiffs Barry, Visco, Evans, O'Neill, Styles, Wilson, and London, have also filed EEOC charges, representing each Whole Foods location where named Plaintiffs in this action worked.  Still further requiring each of the twenty-eight individual plaintiffs to file a charge would be unduly burdensome and unnecessary in light of the class nature of the claims.

Dated: August 28, 2020

Respectfully submitted,

SUVERINO FRITH, SAVANNAH KINZER, CEDRICK JUAREZ, FAITH WALSH, MACKENZIE SHANAHAN, COREY SAMUEL, JENNIFER OSAYANDE, BRITNEY IFEBOHR, KANAYA RYLAND, KIRBY BURT, LEAVER MICHEL, ABDULAI BARRY, LINDSAY VUONG, SAMANTHA BERIMBAU, SUEPRIYA ADHI, ALICE TISME, CAMILLE TUCKER-TOLBERT, CHARLES THOMPSON, ANA BELÉN DEL RIO-RAMIREZ, CASSIDY VISCO, LYLAH STYLES, KAYLA GREENE, SHARIE ROBINSON, KELLY RIGLER, JUSTINE O'NEILL, SARITA WILSON, and YURIN LONDON, individually and on behalf of all others similarly situated,

By their attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan, BBO #640716
Anastasia Doherty, BBO #705288
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com, adoherty@llrlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Shannon Liss-Riordan, hereby certify that a copy of this document, as filed on August 28, 2020, has been electronically served on the counsel for Defendant Whole Foods Market, Inc. and Amazon.com, Inc., via electronic the ECF electronic filing system.

*/s/ Shannon Liss-Riordan*
Shannon Liss-Riordan, Esq.
