UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SUVERINO FRITH, *et al.*, individually and on behalf of all others similarly situated, | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 20-cv-11358-ADB |
| WHOLE FOODS MARKET, INC., and AMAZON.COM, INC., | * * * | |
| Defendants. | * * | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

BURROUGHS, D.J.

Plaintiffs,[1] representing a putative class of current and former employees of Defendant

Whole Foods Market, Inc. ("Whole Foods") or of Amazon.com, Inc. ("Amazon," and, together

with Whole Foods, "Defendants"), allege that Defendants have violated Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") by discriminating and retaliating

against employees for wearing Black Lives Matter ("BLM") masks and other attire.  See [ECF

No. 11 ("Am. Compl.")].  Currently before the Court are Defendants' respective motions to

dismiss.  [ECF Nos. 31 (Whole Foods), 49 (Amazon)].  For the reasons set forth below,

Amazon's motion is GRANTED in its entirety and Whole Foods' motion is GRANTED in part.

---

[1] There are twenty-eight named plaintiffs: Suepriya Adhi, Abdulai Barry, Samantha Berimbau, Kirby Burt, Ana Belen Del Rio-Ramirez, Haley Evans, Suverino Frith, Kayla Greene, Britney Ifebohr, Cedrick Juarez, Savannah Kinzer, Yurin London, Leaver Michel, Justine O'Neill, Jennifer Osayande, Kelly Rigler, Sharie Robinson, Kanaya Ryland, Corey Samuel, Mackenzie Shanahan, Lylah Styles, Charles Thompson, Alice Tisme, Camille Tucker-Tolbert, Cassidy Visco, Lindsay Vuong, Faith Walsh, and Sarita Wilson (collectively, "Plaintiffs").  If reference to an individual plaintiff is necessary, the Court will use the construction "Plaintiff [last name]."

## I.   BACKGROUND

### A.   Factual Background

For purposes of the instant motions to dismiss, the Court, as it must, "accept[s] as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013).

Whole Foods is a corporation headquartered in Austin, Texas that operates hundreds of grocery stores throughout the United States.  [Am. Compl. ¶ 36.  Amazon, Whole Foods' corporate parent, is headquartered in Seattle, Washington and, as is relevant here, employs "Prime Shoppers" at Whole Foods stores to fulfill grocery delivery orders placed online.  [Id. ¶¶ 36–37].

In the wake of George Floyd's killing and nation-wide protests against racial injustice and police brutality, people around the country have been showing their support for the BLM movement.  [Am. Compl. ¶ 1].  Since approximately June 2020, Plaintiffs have demonstrated their support for the BLM movement by, among other things, wearing facial masks and other attire with BLM messaging to work.[2]  [Id. ¶¶ 1, 49].  As grocery store employees, they are required to wear facial masks to work because of the global COVID-19 pandemic.  [Id. ¶ 1].

Notwithstanding Whole Foods' public support for the BLM movement, [Am. Compl. ¶ 51], it began disciplining Plaintiffs and other employees in a variety of ways for wearing BLM

---

[2] Each plaintiff works for Whole Foods except Plaintiff Tisme, who works for Amazon as a Prime Shopper at a Whole Foods store in Cambridge, Massachusetts.  [Am. Compl. ¶ 81].  The others work at Whole Foods stores in California, Georgia, Indiana, Massachusetts, New Hampshire, New Jersey, Pennsylvania, Virginia, and Washington but seek to represent employees of Whole Foods or Amazon in other states as well.  See [id. ¶¶ 7–34, 82].

masks and/or other BLM items, [id. ¶ 2].[3]  For instance, at its store on River Street in Cambridge, Massachusetts, Whole Foods sent Plaintiffs Frith, Kinzer, Juarez, Walsh, Shanahan, Samuel, Osayande, Ifebohr, Ryland, Burt, and Michel (along with other employees) home because they reported for work wearing BLM masks.  [Id. ¶ 54].  The sent-home employees received no pay and were given disciplinary "points," which accumulate over time and can result in termination.  [Id.].  Plaintiff Kinzer was terminated, in part, because of the "points" she had accumulated as a result of wearing a BLM mask.[4]  [Id. ¶ 75].  Even if an employee has not accumulated enough "points" to merit termination, any employee with "points" at the time of an annual review is ineligible to receive the maximum performance-based annual increase in wages. [Id. ¶ 55].  In Seattle, Washington, Whole Foods also sent employees, including Plaintiffs Tucker-Talbot and Thompson, home from stores for wearing BLM masks and placed employees, including Plaintiff Tucker-Talbot, on a "corrective action pathway" that requires employees to undergo additional training.  [Id. ¶ 57].  In California, Whole Foods has sent employees, including Plaintiffs Del-Rio Ramirez and Visco, home from its Berkeley and Petaluma stores for

---

[3] Although the operative complaint contains no allegations regarding specific plaintiffs' races, it makes clear that Plaintiffs come from a variety of racial backgrounds.  See [Am. Compl. ¶ 49 ("many Black Whole Foods employees and their non-Black coworkers began wearing [BLM] masks"); id. ¶ 68 ("Whole Foods' policy . . . is discriminatory, both against Black employees . . . and against other employees who are associating with and advocating for Black Whole Foods employees . . . by wearing the masks"); id. ¶ 82 (Plaintiffs' proposed class includes "all Whole Foods and Amazon employees" and does not mention race)].  The fact that Plaintiffs are of multiple races is confirmed by filings made in connection with Plaintiffs' since-withdrawn request for a preliminary injunction.  See [ECF No. 3-1 ¶ 3; ECF No. 3-2 ¶ 3; ECF No. 3-4 ¶ 3; ECF No. 3-5 ¶ 2].  Plaintiffs do not allege that Whole Foods or Amazon treated Black employees who wore BLM masks any differently than non-Black employees who wore them.

[4] Plaintiff Kinzer alleges that she was terminated for the additional reason of "being a leader in organizing the employees to wear the masks and protesting the company's policy of disciplining employees for wearing the masks."  [Am. Compl. ¶ 75].  She alleges further that just before she was fired, she informed Whole Foods management that she had filed charges with the Equal Employment Opportunity Commission and the National Labor Relations Board.  [Id. ¶ 76].

wearing BLM masks and other paraphernalia (e.g., pins and tags), [id. ¶¶ 58–59], and took
similar actions against employees in New Hampshire, [id. ¶ 60], Pennsylvania, [id. ¶ 61],
Virginia, [id. ¶ 62], Georgia [id. ¶ 63], and Indiana, [id. ¶ 64].  Amazon has also disciplined at
least one employee for wearing BLM attire.  See [id. ¶ 81 ("Amazon Prime Shopper, Plaintiff []
Tisme, was sent home without pay for wearing her Black Lives Matter mask to work.")].[5]

In response to being disciplined, some plaintiffs quit, see [Am. Compl. ¶ 57 (Plaintiff
Tucker-Talbot)]; some acquiesced and stopped wearing BLM items, see [id. (Plaintiff
Thompson); id. ¶ 71 (Plaintiff Robinson)]; while others continued to wear the masks in protest,
see [id. ¶ 70].

At all relevant times, Whole Foods has maintained a company-wide dress code policy
(the "Policy"), which prohibits employees from wearing clothing with visible slogans, messages,
logos, and/or advertising that are not Whole Foods-related.  [Am. Compl. ¶ 42].  Until Plaintiffs
began wearing BLM masks and other attire in June 2020, however, the Policy was rarely
enforced: Whole Foods employees previously wore a variety of items that were violative of the
Policy and were not disciplined.  [Id. ¶¶ 43, 44].  For instance, employees wore items with
LGBTQ+ messaging, National Rifle Association ("NRA") messaging, the anarchist symbol, the
phrase "Lock Him Up," and other non-Whole Foods messaging.  [Id.].  Even in connection with
masks specifically, Whole Foods has not strictly enforced the Policy, permitting at least one
employee to wear a SpongeBob SquarePants mask.  [Id. ¶ 47].

Plaintiffs' managers have informed them that enforcement of the Policy and discipline in
connection with BLM attire are Whole Foods corporate directives and that store-level

---

[5] With regard to Amazon employees, Plaintiffs allege that Amazon did not require its employees
working in Whole Foods stores to comply with Whole Foods' dress code policy until employees
started wearing BLM attire.  [Am. Compl. ¶¶ 78–80].

management has little discretion.  [Am. Compl. ¶ 66].  Although Whole Foods regional managers visited with employees in Massachusetts and Washington to discuss the Policy as it pertained to BLM attire and told the employees that their concerns would be communicated upward, nothing changed.  [Id.].

Plaintiffs contend that wearing BLM attire is a demand for better treatment of Black employees.  [Am. Compl. ¶ 69].  Plaintiffs have also sought the release of racial demographic data for Whole Foods employees and management to assess whether Whole Foods' promotion practices are fair to Black employees and requested that armed guards be removed from Whole Foods stores to ensure that Black employees are comfortable at work.  [Id.].  As employees continue to be disciplined, Plaintiffs are wearing BLM masks for the added purpose of challenging "what they perceive to be racism and discrimination by Whole Foods for not allowing employees to wear [BLM] masks."  [Id. ¶ 70].

### B.    Procedural Background

Prior to filing their amended complaint, multiple plaintiffs filed complaints with the Equal Employment Opportunity Commission ("EEOC").  [Am. Compl. ¶ 84].  As of February 5, 2021, at least five plaintiffs have received EEOC "right to sue" letters.  [ECF Nos. 55-1 (Plaintiff Frith), 55-2 (Plaintiff Kinzer), 55-3 (Plaintiff Barry), 55-4 (Plaintiff Styles), 54-2 (Plaintiff Tisme)].

Plaintiffs filed their operative, two-count complaint on July 31, 2020.  [Am. Compl.].  In Count One, Plaintiffs allege that Defendants' selective enforcement of the Policy constitutes unlawful racial discrimination in violation of Title VII because "the [P]olicy has both adversely affected Black employees and it has singled out for disfavored treatment advocacy and expression of support for Black employees, by both Black employees and their non-Black coworkers who have associated with them and shown support for them through wearing, or

5

attempting to wear, the [BLM] masks at work."  [Id. at 20].  In Count Two, Plaintiffs allege that

Defendants' "discipline of their employees for opposing their discriminatory policy in not

allowing employees to wear [BLM] masks while working at Whole Foods locations" is unlawful

retaliation in violation of Title VII.  [Id.].

On August 14, 2020, Whole Foods moved to dismiss the complaint for failure to state a

claim.  [ECF No. 31].  Plaintiffs opposed Whole Foods' motion on August 28, 2020, [ECF No.

42], and Whole Foods filed a reply on September 1, 2020, [ECF No. 43].

On September 9, 2020, Amazon also moved to dismiss the complaint for failure to state a

claim.  [ECF No. 49].  Plaintiffs opposed Amazon's motion and filed a notice of supplemental

authorities on September 23, 2020, [ECF Nos. 54, 55], and Amazon filed a reply on October 5,

2020, [ECF No. 58].

## II.     LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all

well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all

reasonable factual inferences in favor of the plaintiff.  See Gilbert v. City of Chicopee, 915 F.3d

74, 80 (1st Cir. 2019).  "[D]etailed factual allegations" are not required, but the complaint must

set forth "more than labels and conclusions."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007).  The alleged facts must be sufficient to "state a claim to relief that is plausible on its

face."  Id. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give

rise to more than a mere possibility of liability."  Grajales v. P.R. Ports Auth., 682 F.3d 40,

44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A determination of

plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.'"  Id. at 44 (quoting Iqbal, 556 U.S. at 679).  "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).  "The plausibility standard invites a two-step pavane."  Elsevier, 732 F.3d at 80 (citing Grajales, 682 F.3d at 45).  First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Morales-Cruz, 676 F.3d at 224).

Although a "complaint in an employment discrimination lawsuit [need not] contain specific facts establishing a prima facie case of discrimination" but rather "must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002) (quoting Fed. R. Civ. P. 8(a)(2)), the Court must dismiss a complaint if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45–46 (1957)).  The facts pled must "allow the Court to plausibly infer liability."  Sisco v. DLA Piper LLP, 833 F. Supp. 2d 133, 140 (D. Mass. 2011).

## III.   DISCUSSION

Before considering the parties' arguments, the Court will briefly examine which plaintiffs have asserted and can assert claims against which defendants.

Plaintiff Evans alleges only that she "resides in Sicklerville, New Jersey, and works for Whole Foods at the Rt. 73N location in Marlton, New Jersey."  [Am. Compl. ¶ 31].  She does not

allege that she wore any BLM clothing or was disciplined.  Although she makes such allegations in an affidavit she filed in support of Plaintiffs' now-withdrawn motion for a preliminary injunction, [ECF No. 28-2 ¶¶ 9, 14], courts "cannot consider affidavits and miscellaneous documents proffered by parties, *unless* such other materials are fairly incorporated within the complaint or are susceptible to judicial notice."  Goodall v. Worcester Sch. Comm., 405 F. Supp. 3d 253, 258 (D. Mass. 2019).  Here, because neither such circumstance exists, the amended complaint must be dismissed as to Plaintiff Evans for failure to state a claim.

Plaintiff Tisme alleges that she was an Amazon employee and that Amazon discriminated and/or retaliated against her.  [Am. Compl. ¶¶ 22, 81].  Because she has made no allegations regarding Whole Foods, Whole Foods' motion to dismiss, [ECF No. 31], must be granted as to Plaintiff Tisme.

Similarly, the remaining twenty-six named plaintiffs (the "Whole Foods Plaintiffs") allege that they were Whole Foods employees and that Whole Foods discriminated and/or retaliated against them.  See [Am. Compl.].  Because the Whole Foods Plaintiffs have made no allegations regarding Amazon, Amazon's motion to dismiss, [ECF No. 49], must be granted as to those plaintiffs.

In sum, both motions to dismiss, [ECF No. 31, 49], are GRANTED as to Plaintiff Evans, Whole Foods' motion to dismiss, [ECF No. 31], is GRANTED as to Plaintiff Tisme, and Amazon's motion to dismiss, [ECF No. 49], is GRANTED as to the Whole Foods Plaintiffs.

### A.      The Parties' Arguments

Whole Foods argues that Plaintiffs (1) are barred from pursuing their Title VII claims at this time because they have failed to exhaust their administrative remedies with the EEOC, [ECF No. 32 at 8–9]; (2) have failed to state a discrimination claim because they do not allege that Whole Foods disciplined or discharged any employees because of their race or applied the Policy

differently based on any employee's race, [id. at 9–15]; and (3) have failed to state a retaliation claim because they have not identified an actionable protected activity, [id. at 15–19].

In response, Plaintiffs assert that (1) the administrative exhaustion requirement does not bar their claims because they initially sought, and still intend to seek, preliminary injunctive relief,[6] [ECF No. 42 at 19–21]; (2) by selectively enforcing the Policy to target and suppress BLM messaging, Whole Foods discriminated against Black employees, and other employees associating with and advocating for Black employees, in violation of Title VII, [id. at 8–14]; and (3) Whole Foods retaliated against employees for continuing to wear BLM apparel and otherwise protesting the Policy, which constitutes protected activity, [id. at 14–18].

Whole Foods responds that Plaintiffs' (1) withdrawal of their motion for preliminary injunctive relief undermines their arguments regarding administrative exhaustion, [ECF No. 43 at 2–3]; (2) failure to allege that Whole Foods took any particular action specifically because of the race of any particular employee is fatal to their discrimination claim, [id. at 3–5]; and (3) protesting was directed at a broad social injustice, not Whole Foods' enforcement of the Policy, and, therefore, was not a protected activity, [id. at 5–6].

Amazon largely echoes Whole Foods' arguments but focuses solely on Plaintiff Tisme, who is the only plaintiff who works for Amazon and who, at the time Amazon filed its brief, had not received a "right to sue" letter from the EEOC.  See [ECF No. 50].  According to Plaintiffs, Plaintiff Tisme's receipt of a "right to sue" letter after the amended complaint was filed cured any administrative exhaustion issue, [ECF No. 54-2], and Plaintiff Tisme states claims for discrimination and retaliation for the same reasons her co-workers do, noting specifically that

---

[6] Plaintiffs filed a motion for a preliminary injunction on July 20, 2020, [ECF No. 3], but withdrew it on August 25, 2020, see [ECF No. 44].

Amazon adopted the Policy in response to Whole Foods' employees wearing BLM masks and attire, [ECF No. 54 at 10–20].

### B.     Exhaustion of Administrative Remedies

Though the "First Circuit has repeatedly held that 'a federal court will not entertain employment discrimination claims brought under Title VII unless administrative remedies have first been exhausted,'" Ngomba v. Olee, No. 18-cv-11352, 2019 WL 1119588, at *2 (D. Mass. Mar. 11, 2019) (quoting Rodriguez v. United States, 852 F.3d 67, 78 (1st Cir. 2017)), it has also held that "while the right-to-sue-letter requirement remains, it is simply 'a precondition to bringing' suit, not a jurisdictional bar, and thus 'can be waived by the parties or the court.'" Martínez-Rivera v. Commonwealth of P.R., 812 F.3d 69, 78 (1st Cir. 2016) (quoting Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist., 180 F.3d 468, 474 (2d Cir. 1999)); see also Robertson v. Barber Foods, LLC, No. 19-cv-00455, 2020 WL 3104047, *4 (D. Me. June 11, 2020) (noting that requiring "a plaintiff to plead exhaustion in his complaint makes little sense when the exhaustion requirement can be waived by the parties or the court"); id. at *4 n.5 (collecting cases where, for various reasons, courts waived the administrative exhaustion requirement).  Waiver aside, courts have held that subsequent receipt of a "right to sue" letter cures any deficiency with an earlier, pre-letter filing.  See, e.g., Pinkard v. Pullman-Standard, a Div. of Pullman, Inc., 678 F.2d 1211, 1218 (5th Cir. 1982); Holmes v. PHI Serv. Co., 437 F. Supp. 2d 110, 123 (D.D.C. 2006) ("Thus . . . where a defendant moves to dismiss a plaintiff's Title VII action for failure to exhaust administrative remedies because the plaintiff did not receive a right-to-sue letter before filing suit, the court should not dismiss the claim if, after filing the complaint but before dismissal, the plaintiff receives a corresponding right-to-sue letter from the EEOC.").

As of February 5, 2021, at least five of the twenty-eight plaintiffs have received EEOC "right to sue" letters.  [ECF Nos. 55-1 (Plaintiff Frith), 55-2 (Plaintiff Kinzer), 55-3 (Plaintiff Barry), 55-4 (Plaintiff Styles), 54-2 (Plaintiff Tisme)].  Others have filed EEOC complaints and additional "right to sue" letters are likely.

Although the Court could dismiss the complaint as to the plaintiffs who have not yet received a "right to sue" letter and permit them to amend once they have received one, in the interest of efficiency, the Court will waive the administrative exhaustion requirement and adjudicate Defendants' motions to dismiss on the merits.  Additionally, as Plaintiffs note, the First Circuit has recognized that exhaustion of administrative remedies may be unnecessary when plaintiffs seek preliminary injunctive relief.  See Bailey v. Delta Air Lines, Inc., 722 F.2d 942, 944 (1st Cir. 1983).  Here, Plaintiffs sought a preliminary injunction when they filed the operative complaint.  The Court will not dismiss the complaint as premature simply because they have since withdrawn their motion.

Accordingly, the Court waives Title VII's administrative exhaustion requirement for those plaintiffs who have not yet received a "right to sue" letter.

### C.   Title VII Claims

#### 1.   Discrimination

Title VII makes it unlawful for any employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's race*, color, religion, sex, or national origin" or "limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, *because of such individual's race*, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a) (emphasis

added).  "These two proscriptions, often referred to as the 'disparate treatment' (or 'intentional discrimination') provision and the 'disparate impact' provision, are the only causes of action under Title VII."  EEOC v. Abercrombie & Fitch Stores, Inc., 135 S. Ct. 2028, 2032 (2015).

> To establish a prima facie case of disparate treatment discrimination, a plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for his position; (3) his employer took an adverse employment action against him; and (4) some evidence of a causal link between his protected status and the adverse employment action.

Mason v. Cent. Mass Transit Mgmt./Worcester Reg'l Transit Auth., 394 F. Supp. 3d 166, 173 (D. Mass 2019) (citing Bhatti v. Trs. of Bos. Univ., 659 F.3d 64, 70 (1st Cir. 2011)).

> To state a prima facie case of disparate impact under Title VII, a plaintiff must first "identify the challenged employment practice or policy and pinpoint the defendant's use of it.  Second, the plaintiff must demonstrate a disparate impact on a group characteristic, such as race, that falls within the protective ambit of Title VII.  Third, the plaintiff must demonstrate a causal relationship between the identified practice and the disparate impact."

Mompoint v. Dep't of Elementary and Secondary Educ., No. 18-cv-11094, 2019 WL 1921631, at *3 (D. Mass. Apr. 30, 2019) (internal citations omitted) (quoting EEOC v. S.S. Clerks Union, Local 1066, 48 F.3d 594, 601 (1st Cir. 1995)).

For purposes of this case, Title VII prohibits race-based discrimination.  Here, the Plaintiffs, who do not allege any facts regarding their own races, have failed to adequately allege a Title VII violation under either a disparate treatment or disparate impact theory.  They do not allege that Defendants disciplined them because of their race or applied the Policy differently based on the race of employees violating it, or that Defendants' application of the Policy had a disproportionate impact on employees of any particular race.  Rather, they allege that Defendants disciplined employees, regardless of race, for wearing BLM clothing and that the discipline was content-based and intended to suppress BLM messaging.  Putting aside the wisdom or fairness of Defendants' decision to aggressively discipline employees for wearing BLM attire, particularly

when Defendants purportedly allowed employees to wear clothing with other messaging,

inconsistent enforcement of a dress code does not constitute a Title VII violation because it is not

race-based discrimination and because Title VII does not protect free speech in a private

workplace.

In Bostock v. Clayton County, the Supreme Court addressed a Title VII claim based on

alleged sex discrimination.  140 S. Ct. 1731, 1738 (2020).  In that case, the court reinforced what

the plain language of the statute makes clear: that the proper focus is on the protected

characteristic of the individual employee bringing the claim.  Id. at 1740–41.  "[A]n employer

who intentionally treats a person worse because of sex—such as by firing the person for actions

or attributes it would tolerate in an individual of another sex—discriminates against that person

in violation of Title VII."  Id. at 1740.  Put another way, "if changing the employee's sex would

have yielded a different choice by the employer—a statutory violation has occurred."  Id. at

1741.  A straightforward application of Bostock's rationale to this case leads to the conclusion

that Plaintiffs have failed to state a claim for Title VII discrimination.  They have not alleged that

Defendants would have treated any individual plaintiff differently if that plaintiff were of a

different race.  To the contrary, their allegations demonstrate that Defendants treated all

employees wearing BLM attire equally, regardless of race, see [Am. Compl. ¶¶ 4, 49], which

demonstrates that the race of the individual employee subject to discipline was *not* a motivating

factor in Defendants' decision.  Further, Plaintiffs' proposed class, "all Whole Foods and

Amazon employee who have been subject to Whole Foods' and Amazon's policy of not allowing

employees to wear Black Lives Matter masks while working at Whole Foods locations," [id.

¶ 82], reinforces the fact that the race of the individual employee subject to discipline is

irrelevant to Plaintiffs' claims.  Even assuming that Defendants failed to discipline employees for

violating the Policy by wearing non-BLM attire, [id. ¶¶ 44–45], this still does not suggest that any employee was treated differently "because of such individual's race."  42 U.S.C. § 2000e-2(a).

Plaintiffs attempt to bypass the plain language of Title VII by advancing an associational discrimination theory, but that fails as well.  Although the parties cite no controlling First Circuit cases regarding associational discrimination under Title VII and the Court has not found any, federal courts of appeals that have considered the issue have held that Title VII prohibits associational discrimination.  See, e.g., Holcomb v. Iona Coll., 521 F.3d 130 (2d Cir. 2008); Johnson v. Univ. of Cincinnati, 215 F.3d 561 (6th Cir. 2000); Deffenbaugh-Williams v. Wal-mart Stores, Inc., 156 F.3d 581 (5th Cir. 1998), vacated in part on other grounds sub nom. Williams v. Wal-Mart Stores, Inc., 182 F.3d 333 (5th Cir. 1999); Drake v. Minnesota Mining & Mfg. Co., 134 F.3d 878 (7th Cir. 1998); Parr v. Woodmen of the World Life Ins. Co., 791 F.2d 888 (11th Cir. 1986).  Moreover, multiple courts within this district have acknowledged the theoretical availability of associational discrimination claims under Title VII.  Baer v. Montachusett Reg. Tech. Sch. Dist., 380 F. Supp. 3d 143 (D. Mass. 2019); Persson v. Boston Univ., No. 15-cv-14037, 2019 WL 917205 (D. Mass. Feb. 25, 2019); Gallo v. W.B. Mason Co., No. 10-cv-10618, 2010 WL 4721064 (D. Mass. Nov. 15, 2010).  A plaintiff advancing an associational discrimination claim, however, still must allege that they were discriminated against on the basis of race, rather than on the basis of race-related messaging.

Typically, plaintiffs assert associational discrimination when they are subjected to discrimination for maintaining a relationship with a member of another race.  In that type of case, courts focus on the fact that when employers target employees for associating with members of a particular race, they are, in fact, discriminating on the basis of the employees' race.  See, e.g.,

Deffenbaugh-Williams, 156 F.3d at 589 ("[A] reasonable juror could find that Deffenbaugh was discriminated against because of her race (white), if that discrimination was premised on the fact that she, a white person, had a relationship with a black person."); Holcomb, 521 F.3d at 139 ("[W]here an employee is subjected to adverse action because an employer disapproves of interracial association, the employee suffers discrimination because of the employee's *own* race."); Baer, 380 F. Supp. 3d at 154 ("Thus, in cases of associational discrimination, the plaintiff is discriminated against because of his or her *own* race."); Gallo, 2010 WL 4721064, at *1 ("Title VII does prohibit associational discrimination on the basis of race, when a person of one race associates with third persons of another race and is therefore subjected to discriminatory animus.").

Here, Plaintiffs have not alleged facts suggesting that any individual plaintiff associated with any other employee of a different race or that Defendants disciplined any individual employee because of a difference in race between that employee and another employee. Rather, Plaintiffs allege that Defendants disciplined employees for wearing BLM attire, which, in their view, is a manner of advocating for and associating with all Black Whole Foods employees. [Am. Comp. ¶¶ 68–69]. Plaintiffs, however, have cited no case where a court sanctioned a Title VII claim premised on a similar factual scenario and the cases that Plaintiffs do cite are factually distinguishable. Again, Title VII prohibits discrimination based on race. It cannot be read expansively enough to extend its protections to employees who have been disciplined for wearing clothes that violate a company dress code, even if that clothing is associated with individuals of a particular race. As examples, Plaintiffs cite Barrett v. Whirlpool Corp., but in that case, the plaintiffs were white women who alleged that they were discriminated against because they defended and supported their Black co-workers, who, themselves, were being

subjected to race-based mistreatment (e.g., use of racial slurs, racial graffiti).  556 F.3d 502,

507–10 (6th Cir. 2009).  Similarly, in Johnson v. University of Cincinnati, the plaintiff, a former

Vice President of Human Resources at the University of Cincinnati alleged, among other things,

that he had been discriminated against in violation of Title VII because of his advocacy on behalf

of women and minorities, who, in his view, had been subjected to the university's discriminatory

hiring practices.  215 F.3d 561, 575 (6th Cir. 2000).  Here, Plaintiffs have not alleged that

Defendants were mistreating the Black employees on whose behalf Plaintiffs were allegedly

advocating because those employees were Black.  Contra id. at 574 (noting that "Title VII [was

designed] to protect individuals who are the victims of discriminatory animus towards third

persons with whom the individuals associate" (quoting Tetro v. Elliott Popham Pontiac,

Oldsmobile, Buick, and GMC Trucks, Inc., 173 F.3d 988, 994 (6th Cir. 1999) (alteration in

original)).  The closest Plaintiffs come is alleging that they have "asked for the release of racial

demographic data of Whole Foods employees and management, to help determine whether Black

employees are receiving promotions fairly," [Am. Compl. ¶ 69], which is not a concrete

allegation of discrimination.  Barrett and Johnson hold that an employee can state a Title VII

claim when they allege that they were discriminated against because they advocated for a victim

of racial discrimination.  They do not stand for the proposition that an employee generally

advocating for employees of a particular race can state an associational discrimination claim and

therefore do not support Plaintiffs' arguments.

     To summarize, because no plaintiff alleges that he or she was discriminated against on

account of his or her race or that he or she was discriminated against for advocating on behalf of

a co-worker who had been subject to discrimination, Plaintiffs have failed to state a claim for

discrimination under Title VII and Defendants' motions to dismiss, [ECF Nos. 31 (Whole

Foods), 49 (Amazon)],[7] are GRANTED as to Count One of the Amended Complaint.

        2.    Retaliation

Title VII makes it unlawful "for an employer to discriminate against any of his

employees . . . because he has opposed any practice made an unlawful practice by this

subchapter, or because he has made a charge, testified, assisted, or participated in any manner in

an investigation proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "In

Title VII, 'oppose,' being left undefined by the statute, carries its ordinary meaning: to resist or

antagonize . . .; to contend against; to confront; resist; withstand." Rodríguez-Vives, 743 F.3d at

284 (some internal quotation marks omitted). "Under the opposition clause, an employee who

opposes employment discrimination 'need not prove that the conditions against which he

protested actually amounted to a violation of Title VII,' but must demonstrate that he held a

'good faith reasonable belief that the underlying challenged actions of the employer violated the

law.'" Ray v. Ropes & Gray LLP, 961 F. Supp. 2d 344, 358 (D. Mass. 2013) (quoting Fantini v.

Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009)), aff'd, 799 F.3d 99 (1st Cir. 2015)). "To

engage the gears of [the] statute, a plaintiff must show that (i) she undertook protected conduct,

(ii) she suffered an adverse employment action, and (iii) the two were causally linked." Noviello

---

[7] With regard to Amazon, Plaintiff Tisme alleges that: (1) Amazon employs Prime Shoppers at
Whole Foods stores; (2) she is a Prime Shopper at the Whole Foods store on River Street in
Cambridge, Massachusetts; (3) Amazon began requiring its Prime Shoppers to comply with the
Policy only after Whole Foods began disciplining employees for wearing BLM attire; and (4) she
was sent home without pay for wearing a BLM mask to work. [Am. Compl. ¶¶ 3, 22, 79–81].
Like the Whole Foods Plaintiffs, Plaintiff Tisme has failed to allege that she was subject to any
race-based discrimination, associational or otherwise. See generally [id.]. Thus, for the same
reasons the Whole Foods Plaintiffs have failed to state a claim for discrimination against Whole
Foods, Plaintiff Tisme has similarly failed to state a claim for discrimination against Amazon.

v. City of Boston, 398 F.3d 76, 88 (1st Cir. 2005); see Mercedes v. Holder, No. 13-cv-12043, 2014 WL 2998988, at *2 (D. Mass. July 1, 2014).

With the exception of Plaintiff Kinzer, Plaintiffs' retaliation claims fail.

Plaintiff Kinzer alleges three different potential protected activities that preceded her termination including leading employee protests in opposition to Whole Foods' enforcement of the Policy, which she perceived as discriminatory; wearing a BLM mask in opposition to Whole Foods' enforcement of the Policy; and filing charges with the EEOC and the NLRB, alleging discrimination and retaliation.  [Am. Compl. ¶¶ 75–76].  There is no dispute that termination is an adverse employment action.  See Ponte v. Steelcase, Inc., 741 F.3d 310, 321 (1st Cir. 2014) (noting that where employee alleging retaliation had been fired, "[t]here is no question that [she] suffered an adverse employment action").  Nor is there any debate that filing a formal complaint constitutes protected conduct under Title VII.  See 42 U.S.C. § 2000e-3(a) (making it unlawful "for an employer to discriminate against any of his employees . . . because he has made a charge . . . under this subchapter"); Cherkaoui v. City of Quincy, 877 F.3d 14, 28 (1st Cir. 2017); Noviello, 398 F.3d at 88.  Given her burden at this stage, Plaintiff Kinzer has alleged facts sufficient to plausibly infer that her termination was causally linked to protected activity.  See [Am. Compl. ¶ 76 (alleging that she was fired an hour after informing management that she had filed charges with the EEOC and NLRB)].  To prevail at summary judgment or at trial, she will have to prove that she would not have been terminated if she had not engaged in the protected conduct.

With respect to the remaining plaintiffs, they argue that wearing BLM attire is protected conduct under Title VII, [ECF No. 42 at 14–16], because they were doing so to protest racism and police violence against Black people and to show support for Black employees, [Am.

Compl. ¶ 1], and later to challenge perceived racism and discrimination based on Whole Foods

not allowing them to wear BLM masks, [id. ¶ 70 ("as the protest has proceeded . . . employees

are wearing the masks in order to challenge what they perceive to be racism and discrimination

by Whole Foods for not allowing employees to wear the [BLM] masks")].  First, wearing BLM

attire to protest racism and police violence against Blacks and to show support for Black

employees cannot support a Title VII retaliation claim because it is not done to oppose "any

practice made an unlawful employment practice" under Title VII.  42 U.S.C. § 2000e-3(a).

Nation-wide racism and police brutality are not proscribed by Title VII and, "show[ing] support

for Black employees," [Am. Compl. ¶ 1], is too vague to constitute actionable opposition to any

unlawful practice.  Second, wearing BLM attire to "challenge what they perceive to be racism

and discrimination . . . for not allowing employees to wear the [BLM] masks," [id. ¶ 70], is a

somewhat circular theory.  Essentially, Plaintiffs assert that they wore BLM masks to protest not

being permitted to wear those masks.  Even assuming that allegation is true, as the Court must at

this stage, it cannot save the remaining plaintiffs' retaliation claims.  For one, there is the issue of

timing.  The amended complaint contains only two dates: Plaintiffs began wearing BLM masks

to work "[a]round June 2020" and Plaintiff Kinzer was fired on July 18, 2020.  [Id. ¶¶ 49, 75].

To support Plaintiffs' retaliation theory, the sequence of events would have to be as follows:

(1) Whole Foods employees wore BLM masks, (2) Whole Foods disciplined them for wearing

BLM masks, (3) Plaintiffs formed a good faith, reasonable belief that this discipline was

unlawful discrimination under Title VII, (4) Plaintiffs continued to wear BLM masks in

"opposition" to the perceived discrimination, and (5) Whole Foods disciplined Plaintiffs again

for opposing the perceived discrimination.  In other words, to state a claim for retaliation, each

plaintiff must allege facts sufficient to suggest that he or she was disciplined *after* wearing the

BLM masks in opposition to what he or she believed to be unlawful discrimination, otherwise there could be no causal relationship between the protected activity and the discipline.  Posada v. ACP Facility Servs., Inc., 389 F. Supp. 3d 149, 158 (D. Mass. 2019) ("To prevail on a retaliation claim, the plaintiff must also establish a but-for causal connection between the protected activity and the adverse employment action." (citing Univ. of Tx. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013))).  Although each plaintiff has alleged that he or she wore a BLM mask and was disciplined for doing so, [Am. Compl. ¶¶ 54–64], the Amended Complaint does not provide enough information to support the inference that each individual plaintiff wore a BLM mask in "opposition" to perceived discrimination and was then disciplined for doing so.  Further, Plaintiffs face a more fundamental roadblock in that as Plaintiffs now admit and knew at the time, Defendants were disciplining any employee wearing BLM attire regardless of that employee's race.  The Court therefore finds that Plaintiffs could not have formed a good faith, reasonable belief that Defendants' conduct ran afoul of Title VII because Title VII forbids treating employees differently on the basis of race.[8]

Thus, other than Plaintiff Kinzer, Plaintiffs have failed to state a claim for retaliation under Title VII.

\*       \*       \*

It would, of course, be more honorable for Defendants to enforce their policies consistently and without regard for the messaging, particularly where the messaging selected for discipline conveys a basic truth.  Nevertheless, not all conduct that touches on race is actionable

---

[8] As to Amazon, the Amended Complaint does not provide enough information to support the inference that Plaintiff Tisme wore a BLM mask in "opposition" to perceived discrimination and was then disciplined for doing so.  Likewise, she cannot meet the good faith reasonable belief requirement discussed above.  Accordingly, her retaliation claim against Amazon fails as well.

under Title VII.  Here, even assuming the truth of the allegations in the complaint, Defendants did not discriminate on the basis of race.  Rather, at worst, they were selectively enforcing a dress code to suppress certain speech in the workplace.  However unappealing that might be, it is not conduct made unlawful by Title VII.  Title VII prohibits discrimination against a person because of race.  It does not protect one's right to associate with a given social cause, even a race-related one, in the workplace.[9]  Whole Foods employees that are not happy with the Policy can find someplace else to work, express themselves outside the workplace, work with Whole Foods to change the Policy, and/or publicize the Policy in an effort to get consumers to spend their dollars elsewhere, but, under the facts alleged here, their redress does not lie with Title VII.

## IV.    CONCLUSION

Accordingly, for the reasons set forth above, Amazon's motion to dismiss, [ECF No. 49], is <u>GRANTED</u> in its entirety.  Whole Foods' motion, [ECF No. 31], is <u>GRANTED</u> except as to Count II (retaliation) as alleged by Plaintiff Kinzer.

**SO ORDERED.**

February 5, 2021                                                    /s/ Allison D. Burroughs
                                                                           ALLISON D. BURROUGHS
                                                                           U.S. DISTRICT JUDGE

---

[9] At heart, this is a First Amendment claim that Plaintiffs are trying to shoehorn into Title VII in recognition of the fact that there is no right to free speech in a private workplace.  In this same vein, the case recently provided to the Court by Plaintiffs, <u>Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty</u>, No. 20-cv-01471, 2021 WL 164315 (W.D. Pa. Jan. 19, 2021), is inapposite because it concerns the First Amendment and speech in a public workplace.  There, the Court did not find, nor was it seemingly asked to find, that the policy against BLM masks was race-based discrimination.  The preliminary injunction in that case was awarded solely on the basis of an impermissible abridgement of speech, with no finding of discrimination.